**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:  INTEREST RATE SWAPS ANTITRUST LITIGATION | Case No.:  1:16-md-02704 (PAE) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

<u>**APPLICATION OF LD CONSTRUCTION, LLC, LDLJ ASSOCIATES, L.P., LAWRENCE W. GARDNER AND DAVID GARDNER TO APPOINT HAGENS BERMAN SOBOL SHAPIRO LLP TO THE PLAINTIFFS' COMMITTEE**</u>

Pursuant to this Court's July 18, 2016 Order No. 2,[1] Hagens Berman Sobol Shapiro, LLP (Hagens Berman) respectfully submits this application to be appointed to the Plaintiffs' Committee.[2] Hagens Berman, and its managing partner Steve Berman, are among the most respected plaintiff trial firms in the country, with extensive experience in complex antitrust class actions, and will provide valuable, competent, and efficient assistance to those firms the Court appoints as lead counsel.

## I.   INTRODUCTION

Since its founding in 1993, Hagens Berman has recovered billions of dollars for victims of antitrust violations, consumer fraud, and violations of the securities laws. As further discussed below, Hagens Berman has established itself as one of the nation's preeminent law firms representing plaintiffs in class actions, including complex antitrust class actions.

Depending on the number of firms/lawyers that submit applications to be appointed to a formal position here, the Court may be faced with having to make some difficult cuts. Each of the firms/lawyers likely to apply for a leadership position is qualified and possess many accomplishments. From the Court's perspective, it may be difficult to discern differences between the firms and their lawyers. However, we believe that Hagens Berman

---

[1]   ECF No. 54.

[2]   Hagens Berman's request to be appointed to the Plaintiffs' Committee is predicated on the Court's appointment of two firms as lead counsel, which is the proposal put forth by temporary lead counsel, and a proposal which Hagens Berman supports. However, should the Court decide it wishes to have more than two lead counsel firms, Hagens Berman's application should be considered as a request for a lead counsel position. Further, to the extent it is the Court's desire to appoint an individual lawyer, as opposed to a firm, Hagens Berman requests that the Court appoint Hagens Berman managing partner Steve Berman. Regardless of whether the Court appoints Hagens Berman or Mr. Berman individually, Mr. Berman will be primarily responsible for the deployment of Hagens Berman's resources in this case.

(and Steve Berman) possesses unique qualifications which most of the other applicants cannot claim. In particular, very few of the other applicants have been selected by Courts, *sua sponte* (as the Court did here by appointing Mr. Brockett as temporary lead counsel), to lead some of the largest and most complex class actions in history. Steve Berman has. Most recently, the Court's colleague, Judge Furman, *sua sponte* selected Steve Berman as one of three temporary co-lead counsel in one of the largest Multidistrict Litigations in the country – *In re General Motors LLC Ignition Switch Litigation.*[3] In that same case, after a lengthy hearing in which over 40 lawyers and law firms presented their application to be permanent class counsel, Judge Furman appointed Steve Berman as one of three permanent class counsel.

Further, in *In re Toyota Motor Corp. Unintended Acceleration Marketing Sales Practices & Products Liability Litigation,*[4] Judge James Selna of the Central District of California *sua sponte* appointed Steve Berman class counsel. The case settled in 2013 for $1.6 billion – then the largest settlement ever against an automotive company (the recently announced Volkswagen settlement, in which Steve Berman is also a member of the Court-appointed Executive Committee, will be larger if approved). That distinguished federal judges would entrust Steve Berman and Hagens Berman to shepherd these massive litigations on behalf of classes, sight unseen, speaks volumes about the firm's accomplishments and reputation. We invite the Court to speak to Judge Furman, Judge Selna, or any of the Judges who have appointed Hagens Berman or Steve Berman to a leadership position about their experience with us. We

---

[3]   1:14-MD-2543 (S.D.N.Y.) (J. Furman).

[4]   8:10-ML-2151 (C.D. Cal.).

- 2 -

believe the Court will be pleased with what it hears, and that it will give the Court confidence it is making an appropriate appointment here.

In addition to being appointed *sua sponte*, Hagens Berman and Steve Berman have been appointed as class counsel in other significant and complex class actions following a competitive application process in which many firms were vying for a lead counsel position. For example, in *In re Electronic Books Antitrust Litigation*,[5] a case before Judge Cote in the Southern District of New York, Hagens Berman was selected by Judge Cote following the submission of a applications from a large number of firms seeking to be lead counsel. In that case, Judge Cote initially appointed just Hagens Berman, but, at Hagens Berman's request, Judge Cote also appointed Cohen Milstein Sellers & Toll as co-lead counsel. As further discussed below, that partnership worked well. Nearly $560 million in settlements were achieved, providing aggrieved consumers with nearly twice their damages.

## II.     PLAINTIFFS' PROPOSED LEADERSHIP STRUCTURE

In his July 8, 2016 letter to the Court, Court-appointed temporary lead counsel (Mr. Brockett) proposed that the Court appoint two firms as co-lead counsel, as well as a "committee" of up to four firms.[6] We agree.

Federal Rule of Civil Procedure 23(g)(3) authorizes the Court to appoint interim counsel to act on behalf of a putative class before deciding class certification.[7] Where, as

---

[5]   1:11-MD-2293 (S.D.N.Y.)(Judge Cote).

[6]   ECF No. 51, at pp. 4-5. It is typical that such a "committee" be referred to as an "executive" committee or "steering" committee. It really does not matter what the "committee" is called, and the Court is free to use whatever terminology it believes is appropriate. For purposes of this application, we choose to use Plaintiffs' Committee.

[7]   Fed. R. Civ. P. 23(g)(3).

- 3 -

here, multiple class actions are pending, appointment of class counsel is necessary to protect the interests of class members.[8] In selecting lead or interim lead counsel, the Court is to consider the following factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.[9]

### A.      Quinn Emanuel and Cohen Milstein Should be Appointed Co-Lead Counsel

Respectfully, the Court should appoint Quinn Emanuel and Cohen Milstein Sellers & Toll as co-lead counsel. Both firms are highly qualified to act as co-lead counsel and easily meet the Rule 23(g)(3) criteria which the Court is to utilize in selecting lead counsel. In particular, we believe these two firms are the *only* firms seeking to be appointed lead counsel for which the first criterion of Rule 23(g)(3) is even applicable: the work counsel has done in identifying or investigating potential claims in the action. These two firms were the first firms to file this litigation. Importantly, these two firms did not simply rely on a government investigation in crafting their complaint, as to the best of our knowledge, there is no investigation of any kind ongoing in the interest rate swap industry. Their complaint was detailed, chock full of economic analysis and facts that they developed through their own hard work. Their complaint was the true fruit of their labor. Thus, appointing these firms as

---

[8]    *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56 (E.D.N.Y. 2006); *see also* Manual for Complex Litigation, Fourth § 21.11 (2004). The Court is exceptionally experienced in handling large, complex class action litigation, so we will not expend unnecessary pages to support the practice and need to appoint interim class counsel.

[9]    Fed. R. Civ. P. 23(g)(1)(A).

- 4 -

co-lead counsel is not only required under Rule 23(g)(3), in our view, it is also just the right thing to do.

It is possible that other plaintiff firms may try to claim that they also helped developed this case, or, independently had been looking at this case for many months or years before Quinn Emanuel and Cohen Milstein filed their initial complaint. While Hagens Berman has worked with and respects all of the firms representing plaintiffs in this case, such a claim would be inconsistent with the facts. The first complaint here was filed by Quinn Emanuel and Cohen Milstein on November 25, 2015.[10] It was not until February 18, 2016, almost three months later, when a second complaint was filed in another district (triggering the MDL).[11] That it took three months for another case to be filed suggests that no other firm was investigating the facts of this case, prior to Quinn Emanuel and Cohen Milstein's filing.

Therefore, Quinn Emanuel and Cohen Milstein should be appointed as co-lead counsel.

### B.      Hagens Berman or Steve Berman Should be Appointed to the Plaintiffs' Committee

In temporary lead counsel's July 8 letter to the Court, Mr. Brockett stated that if the Court were to appoint a two firm lead counsel structure, he would also support the appointment of a committee to assist lead counsel of no more than four firms.[12] Respectfully, Hagens Berman, or its managing partner Steve Berman, should be one of the

---

[10] *See Chicago Public School Teachers' Pension and Retirement Fund v. Bank of Am. Corp., et al.*, 1:15-CV-9319 (S.D.N.Y.), at ECF No. 1.

[11] *See Harrison Cty., Miss., et al. v. Bank of Am. Corp., et al.*, 1:16-CV-4561 (S.D.N.Y.)(PAE).

[12] ECF No. 51, at p. 5.

appointments to the Plaintiffs' Committee. As further detailed below, Hagens Berman and Steve Berman have been appointed to plaintiffs' leadership positions in dozens of cases, in this district and outside of this district, in antitrust cases as well as other types of cases. Hagens Berman has worked extensively and effectively with both Quinn Emanuel and Cohen Milstein in the past, and would do so here, although Hagens Berman would also work effectively with whomever the Court appoints as lead counsel.

1.    **Hagens Berman is One of the Most Experienced and Respected Trial Firms in the Country with Extensive Antitrust Experience**

Hagens Berman is a 70-lawyer firm, with offices in Berkeley, Los Angeles, Seattle, New York, Washington D.C., Boston, Phoenix, Chicago, San Diego, and Colorado. Since its founding in 1993, Hagens Berman has represented plaintiffs in a broad spectrum of complex, multi-party antitrust, securities, and consumer cases. The firm has been recognized by courts throughout the United States for its ability and experience in handling major complex litigation.[13]

a.    **Hagens Berman Has Been Recognized by Numerous National Publications for the Outstanding Work it Has Done in Class Actions**

Hagens Berman has been recognized by numerous national publications for its achievements, including *The National Law Journal's* "Hot List" in 2006-07, and every year from 2009 through 2015. In 2015, *The National Law Journal* also named Hagens Berman as one of the top 10 plaintiff's firms in the country. In 2014, *The National Law Journal* named Hagens Berman to its inaugural list of America's Elite Trial lawyers – a compilation of the nation's leading firms bringing about significant change and major plaintiffs' settlements in complex litigation.

---

[13] The firm's resume, along with short biographies of the firm's lawyers, are attached as Exhibit A.

**b.** **Hagens Berman Has the Requisite Experience – The Firm Has Been Appointed Lead Counsel in Dozens of Antitrust, Securities and Consumer Class Actions**

The recognition that Hagens Berman has received from the various publications discussed above was of course made possible by numerous courts, all across the United States. Each court recognized that Hagens Berman possesses the skill, tenacity, experience and resources, and appointing the firm as lead counsel in dozens of class actions. The following are but a few examples:

- *In re General Motors LLC Ignition Switch Litigation.* As noted above, Hagens Berman's Steve Berman was appointed by Judge Furman as one of three co-lead counsel in *In re General Motors LLC Ignition Switch Litigation,* in the Southern District of New York, a case which remains ongoing. In that case, Mr. Berman just successfully argued an appeal before the Second Circuit in which the Second Circuit held that General Motors could not use the bankruptcy laws to shield itself from liability arising from its deadly conduct which occurred prior to General Motors' reorganization.[14]

- *In re Electronic Books Antitrust Litigation.* Hagens Berman was appointed by Judge Cote as one of two lead counsel in *In re Electronic Books Antitrust Litigation,*[15] in the Southern District of New York. In that case, Hagens Berman, along with the United States and 33 Attorneys General, sued Apple and the major book publishers for conspiring to inflate the cost of electronic books in violation of the federal and state antitrust laws. The litigation was one of the largest collaborative public-private antitrust efforts in recent times. The plaintiffs recovered $560 million (which was distributed to consumers), and it is believed that consumers received *twice* their damages in settlement.

---

[14] The Second Circuit decision can be found at No. 15-CV-2844, 2016 WL 3766237 (2d. Cir. July 13, 2016).

[15] 1:11-MD-2293 (S.D.N.Y.)(Judge Cote).

- ***In re Optical Disk Drives Antitrust Litigation.*** Hagens Berman was appointed as sole lead counsel in *In re Optical Disk Drives Antitrust Litigation*[16] in the Northern District of California. Hagens Berman represents a class of indirect purchasers who allege that the manufacturers of optical disk drives (used in computers, DVD players, etc.) conspired to inflate the price of these products in violation of the antitrust laws. The case remains ongoing as to several defendants, and to date Hagens Berman has recovered approximately $125 million and recently had their class certified. In contrast, the direct purchaser plaintiff class recovered $75 million, and their case has concluded after failing to receive class certification.

- ***In re Charles Schwab Corp. Secs. Litigation.***[17] In this case, Hagens Berman was appointed as sole lead counsel. Hagens Berman was selected as lead counsel by the lead plaintiffs after Judge Alsup ordered that the lead plaintiffs must conduct due diligence on potential lead counsel firms. The lead plaintiffs accepted applications from 15 firms, interviewing each one. And, as a result of that process, Hagens Berman was selected and appointed lead counsel. Ultimately, Hagens Berman recovered $235 million. In awarding Hagens Berman attorneys' fees, Judge Alsup noted, "Class counsel did a good job persistently advocating for the best interests of the class members, and obtained a very good result for the class . . . ."[18]

- ***In re Visa Check/ MasterCard Antitrust Litigation.***[19] Hagens Berman was appointed co-lead counsel, in this antitrust class action against Visa and MasterCard alleging that certain of their rules that they imposed on merchants violated the

---

[16] 3:10-MD-2143 (N.D. Cal.)(Judge Seeborg).

[17] 3:08-CV-1510 (N.D. Cal.)(Judge Alsup).

[18] *Id.,* at ECF No. 1101, at p. 12.

[19] 1:96-CV-05238 (E.D.N.Y.)(Judge Gleeson).

antitrust laws. The case settled for over $3 billion in cash and over $20 billion in injunctive relief, making it the largest antitrust settlement in history at the time.

- ***In re National Collegiate Athletic Association Athletic Grant-In-Aid Cap Antitrust Litigation***.[20] In this case, Hagens Berman was appointed co-lead counsel. Plaintiffs allege that the NCAA and its member conferences and schools, illegally conspired to cap the value of student-athletes athletic scholarships, at a level far below the actual cost of attending school, and below what the free market would bear, all in violation of the antitrust laws. The case remains ongoing, and in 2015, Hagens Berman was successful in obtaining a Rule 23(b)(2) class certification.

This is just a small sampling of the cases in which Hagens Berman has been appointed lead counsel. A more comprehensive listing can be found in the Firm Resume (attached), or on the firm's website (www.hbsslaw.com). Of course, should the Court wish to receive further information, we would be pleased to provide it.

c.      **Hagens Berman Gets Results**

Being appointed lead counsel, and having your firm's achievements recognized by a court, is of course an honor. However, simply being appointed lead counsel is only half the story. The other half of the story is what you make of your appointment and what you deliver to the class you represent. And in this regard, Hagens Berman, again, stands out above the rest. Hagens Berman proffers a few examples of the vigor with which the firm garners large recoveries measured as a percentage of alleged damage. In the *In re Pharmaceutical Industry Average Wholesale Price Litigation*,[21] Hagens Berman was instrumental in obtaining over $340 million in recoveries for the class, after successfully winning a "test-class" trial against three of the defendants. In settlements with AstraZeneca, and with several defendants included in the "Track Two" tranche of the litigation, consumer members of the

---

[20] 4:14-MD-02541 (N.D. Cal.)(Judge Wilken).

[21] MDL No. 1456 (D. Mass.).

classes received *three times* the actual damages incurred during the heart of the liability period. In the settlement with defendant Bristol-Myers Squibb, consumer members of the classes received *double* their actual damages during that same period. In addition, by making substantial efforts to obtain relevant data from the Centers for Medicare and Medicaid Services, we ensured that most members of the consumer classes received their recovery with little inconvenience. The Medicare consumer classes were required to do nothing more than sign and return a simple claim card attesting to the fact that they made a percentage co-pay not covered by insurance for the drugs at issue, after which a check was sent for payment amounts automatically calculated by the claims administrator.

In addition, in *Charles Schwab Corp. Securities Litigation*, Hagens Berman recovered approximately 42% percent of the Federal Class' recognized losses and 82% of the California class. In addition, we instituted a payment system so that checks were sent directly to most class members without the need to complete a claim form of any kind. As a result, 97% of the fund was dispersed during the initial distribution, a nearly unheard-of statistic in the annals of large class action settlement administrations. Finally, as noted above, in *In re Electronic Books Antitrust Litigation*, the class received about twice their actual damages.

2.     **The Hagens Berman Attorneys Primarily Responsible for This Case**

Steve Berman would be the partner primarily responsible for Hagens Berman's involvement in this case. Mr. Berman would be assisted by, as necessary, partners Jason A. Zweig and Ivy Arai Tabbara, as well as associate Kiersten A. Taylor. A brief background on these attorneys follows.

- 10 -

**Steve W. Berman**

Mr. Berman, the founding and managing partner of Hagens Berman, has served as lead or co-lead counsel in antitrust, securities, consumer, products liability, and employment class actions, and complex litigations throughout the country. For example, Mr. Berman was the lead trial lawyer in *In re Pharmaceuticals Industry Average Wholesale Price Litigation*, MDL No. 1456 (D. Mass.). He tried the class case against four manufacturers and successfully argued the appeal from the trial before the First Circuit. Mr. Berman was also the lead counsel in *New England Carpenters v. First DataBank, et al.*, No. 05-11148-PBS (D. Mass.), on behalf of a nationwide class of private payors that purchased prescription brand name drugs. Hagens Berman achieved a $350 million settlement eleven days before trial was scheduled to start. Mr. Berman was also lead counsel in *In re Charles Schwab Corp. Securities Litigation*, No. 3:08-cv-01510 (N.D. Cal.)(mentioned above), a securities class action before the Hon. William Alsup, that settled during arguments on *in limine* motions for approximately $235 million, once again on the eve of trial. Recently, in *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, No. 8:10-md-2151 (C.D. Cal.), Judge James V. Selna *sua sponte* identified Mr. Berman as a presumptive co-lead counsel when Judge Selna was assigned the *Toyota* MDL. Perhaps most notable is Mr. Berman's role as a special assistant attorney general for the states of Washington, Arizona, Illinois, Indiana, New York, Alaska, Idaho, Ohio, Oregon, Nevada, Montana, Vermont, and Rhode Island in the landmark *Tobacco Litigation.* That case resulted in the largest settlement in history, a settlement that occurred while Mr. Berman was in trial in *State of Washington v. Philip Morris, et al.*

**Jason A. Zweig**

Mr. Zweig is a Hagens Berman partner in its New York and Chicago offices. Mr. Zweig joined Hagens Berman from Kaplan Fox & Kilsheimer in New York, where he was a partner. Prior to that, he was a litigation associate at Proskauer Rose LLP in New York. During law school at Columbia Law School in New York, Mr. Zweig was a judicial intern to the Honorable Jed S. Rakoff.

Mr. Zweig has nearly 15 years of antitrust experience, and 18 years of complex litigation experience. Mr. Zweig was a member of the trial team in *High Fructose Corn Syrup Antitrust Litigation*, MDL No. 1087 (C.D. Ill.) ($531 million settlement on the eve of trial). Mr. Zweig also played significant roles in the following antitrust litigations: *Hydrogen Peroxide Antitrust Litigation*, MDL No. 1682 (E.D. Pa.) (nearly $100 million recovered); *Plastics Additives Antitrust Litigation*, No. 2:03-CV-2038 (E.D. Pa.) ($46.8 million recovered); *NBR Antitrust Litigation*, No. 2:03-CV-1898 (W.D. Pa.) (recovered $34.3 million); and *In re: Linens Antitrust Litigation*, No. 1:03-CV-7823 (S.D.N.Y.) (recovered approx. $11 million). Mr. Zweig also recently headed the firm's representation of several large merchants, including American Airlines, Southwest Airlines, Alaska Airlines and FedEx, with respect to their opt-out claims in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*[22] These entities resolved their claims last year on confidential terms. Currently, Mr. Zweig is involved in, among other cases, *In re LIBOR-Based Financial Instruments Antitrust Litigation*[23] before Judge Buchwald, in which Hagens Berman represents a class of those who purchased LIBOR-linked derivative instruments from certain non-defendant banks. Mr. Zweig is also one of two lead counsel in *Emilio v. Sprint Spectrum, L.P.*[24] before Judge Oetken, a consumer class action alleging Sprint imposed a deceptive line item charge on its New York customers.

**Ivy Arai Tabbara**

Ms. Tabbara is a Hagens Berman partner located in its Seattle office. Ms. Tabbara is a 2000 graduate of Georgetown University Law Center, and 1997 graduate of Princeton University. Ms. Tabbara has been engaged in wide variety of complex class actions while at Hagens Berman. She is currently involved in the *Domestic Drywall Antitrust Litigation*, representing purchasers of drywall who allege that drywall manufacturers illegally conspired

---

[22] 1:14-MD-1720 (E.D.N.Y.)(Judge Gleeson).

[23] 1:11-MD-2262 (S.D.N.Y.).

[24] 1:11-CV-3041 (S.D.N.Y.)(Judge Oetken).

to inflate the price of drywall in violation of the antitrust laws. And she is presently working on the *In re Checking Account Overdraft* cases pending against many of the country's largest banks. Ms. Tabbara was also a key member of the firm's team involved in *Baby Products Antitrust Litigation*, in which the firm secured a settlement of $35 million. Ms. Tabbara also helped the firm's efforts in in *In re Optical Disk Drives Antitrust Litigation*, and *DRAM Antitrust Litigation*. In addition to antitrust cases, Ms. Tabbara is also involved in the firm's intellectual property practice, where she represents inventors whose patents have been infringed by others.

### Kiersten A. Taylor

Ms. Taylor is a Hagens Berman associate in its Boston office, where she has worked since early 2016. Ms. Taylor is a 2011 graduate of Harvard Law School and received her undergraduate degree in English Language and Literature from Yale University in 2008. Her practice focuses on nationwide complex class action litigation, including antitrust litigation. Prior to joining Hagens Berman, Ms. Taylor served as an associate in the corporate restructuring department at Brown Rudnick LLP, a large Boston-based law firm, where her practice included all areas of in-court and out-of-court restructuring, including related mass tort multi-district litigation.

### III.    CONCLUSION

Hagens Berman respectfully requests that the Court appoint it to the Plaintiffs' Committee.

Dated: July 22, 2016

HAGENS BERMAN SOBOL SHAPIRO LLP

By    */s/ Steve W. Berman*
      Steve W. Berman (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Jason A. Zweig (JZ-8107)
555 Fifth Avenue, Suite 1700
New York, NY 10017
Telephone: (212) 856-7227
Fax: (917) 210-3980
jasonz@hbsslaw.com

*Attorneys for Plaintiffs LD Construction, LLC, LDLJ*
*Associates, L.P., Lawrence W. Gardner and David*
*Gardner*

010565-11  886905 V1