UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>INTEREST RATE SWAPS ANTITRUST LITIGATION<br><br>*This Document Relates To All Actions* | 16-MD-2704 (PAE) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT
LABATON SUCHAROW LLP AS INTERIM CO-LEAD COUNSEL,
OR, IN THE ALTERNATIVE, A MEMBER OF THE EXECUTIVE COMMITTEE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BRIEF SUMMARY OF CASE .................................................................................................. 4

    A.     The Parties ................................................................................................................ 4

    B.     The Alleged Conspiracy ........................................................................................... 4

ARGUMENT ............................................................................................................................. 6

I.     The Court Should Appoint Labaton Sucharow as Interim Co-Lead Counsel or Executive Committee Member ................................................................................ 6

    A.     Labaton Sucharow Has Performed Extensive Work Investigating the Claims in this Litigation ......................................................................................... 7

    B.     Labaton Sucharow Attorneys Are Highly Experienced in Handling Complex Class Action Litigations ........................................................................... 8

        1.     The Firm's Antitrust & Competition Practice Group ................................ 8

        2.     Specialized Expertise in Litigating Cases Involving Financial Markets ........................................................................................................ 11

        3.     Labaton Sucharow Attorneys .................................................................... 11

            (a)     Gregory S. Asciolla .......................................................................... 11

            (b)     Jay L. Himes .................................................................................... 12

    C.     Attorneys at Labaton Sucharow Are Knowledgeable of the Law ....................... 13

    D.     Labaton Sucharow Has the Resources to Effectively Represent the Best Interests of the Proposed Class ............................................................................. 13

CONCLUSION ........................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*In re Crude Oil Commodity Futures Litig.*,
    No. 11-cv-3600, 2012 WL 569195 (S.D.N.Y. Feb. 14, 2012) ................................................. 7

*In re HSBC Bank USA, N.A. Debit Card Overdraft Fee Litig.*,
    No. 13 MD 2451, 2013 WL 3816597 (E.D.N.Y. July 22, 2013) ............................................... 7

*Janbay v. Canadian Solar, Inc.*,
    272 F.R.D. 112 (S.D.N.Y. 2010) ................................................................................................ 7

*In re Mun. Derivatives Antitrust Litig.*,
    252 F.R.D. 184 (S.D.N.Y. 2008) ........................................................................................... 6, 13

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    301 F.R.D. 284 (N.D. Ill. 2014) ............................................................................................ 7, 13

**Rules**

Fed. R. Civ. 23(g) ............................................................................................................... 4, 6, 7

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION, FOURTH (2004) ...................................................................... 6

**Docketed Cases**

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
    No. 09-md-02007 (C.D. Cal.) .................................................................................................. 10

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-md-1775 (E.D.N.Y.) ............................................................................................ 2, 9, 11

*Alaska Elec. Pension Fund v. Bank of America, Corp., et al. ("ISDAfix")*,
    No. 14-cv-7126 (S.D.N.Y.) .............................................................................................. 3, 9, 11

*Boston Ret. Sys. v. Bank of Am., N.A., et al.*,
    No. 16-cv-3711 (S.D.N.Y.) ...................................................................................................... 10

*In re Credit Default Swaps Antitrust Litig.*,
    No. 13-md-2476 (S.D.N.Y.) ............................................................................................... 3, 7, 9

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
    No. 13-cv-07789 (S.D.N.Y.) ..................................................................................................... 9

*In re Monster Worldwide, Inc. Sec. Litig.*,
    No. 07-cv-2237 (S.D.N.Y.) .................................................................................................. 8

*In re Natural Gas Commodity Litig.*,
    No. 03-cv-06186 (S.D.N.Y.) ................................................................................................ 10

*In re Opana ER Antitrust Litig.*,
    No. 14-cv-10150 (N.D. Ill.) ................................................................................................. 10

*In re Platinum and Palladium Antitrust Litig.*,
    14-cv-09391 (S.D.N.Y.) ...................................................................................................... 10

*In re Treasury Sec. Auction Antitrust Litig.*,
    No. 15-md-2673 (S.D.N.Y.) ................................................................................................ 10

Plaintiff Genesee County Employees' Retirement System respectfully moves this Court for an order appointing Labaton Sucharow LLP as interim co-lead counsel or, in the alternative, a member of the executive committee, on behalf of the Class in this action.

## PRELIMINARY STATEMENT

This is a large, complex antitrust class action naming 44 entities as defendants. It will require substantial resources and expertise to effectively litigate. Thus, appointment of a group of firms to lead the litigation is most appropriate in this case.

Labaton Sucharow proposes two organizational structures for the Court's consideration that would best serve the interests of the Class: (1) a co-lead counsel structure of three firms, together with a modest executive committee of three to four members; or (2) an executive committee composed of a chair and five other members. If the Court selects either of these proposed structures, or creates one of its own, Labaton Sucharow respectfully requests that the Court appoint it to a leadership position, either as interim co-lead counsel or as an executive committee member.

Both proposed leadership structures are modest in size and will allow for the efficient management of the case, while at the same time offering the substantial resources, expertise, and valuable perspectives needed to successfully litigate the action in the best interests of the Class, particularly when 15 large, well-resourced firms are representing defendants here. In addition, these structures are inclusive in that they would have as members highly capable firms from all, or nearly all, of the cases on file, many of which were brought on behalf of large, sophisticated investors such as Labaton Sucharow's client Genesee County Employees' Retirement System. And structures such as these can be easily managed by the leadership to avoid duplicative efforts.

Labaton Sucharow is well-qualified to serve in a leadership position in this case. The firm has the legal and industry expertise, required financial and personnel resources, professional

reputation and credibility, and firm commitment necessary to vigorously and effectively prosecute this action through trial. In addition, Labaton Sucharow has a proven track record of successfully litigating antitrust class actions on behalf of a diverse array of clients—from individual consumers to large companies, municipalities, and institutional investors.

Below is a summary of the factors that support appointing Labaton Sucharow as interim co-lead counsel or executive committee member.

***Work Investigating the Claims in this Litigation***: The firm spent considerable time conducting a thorough investigation of the facts and law surrounding defendants' alleged anticompetitive conduct. This includes: (1) consultations with various industry participants; (2) legal and fact research and development; and (3) analyses of industry reports, news articles, public filings, and other publicly available resources and data. The firm also worked with its client, Genesee, to identify additional facts necessary to prosecute the claims.

***Extensive Antitrust and Financial Products Experience***: Labaton Sucharow's Antitrust & Competition Practice Group has successfully prosecuted numerous antitrust class actions over the last 25 years, including one of the largest (*Air Cargo,* with settlements topping $1.2 billion). The firm has served as sole lead or co-lead counsel in many large, complex class actions resulting in billions of dollars recovered for injured class members. Notably, Labaton Sucharow has experience in litigating antitrust cases involving price-fixing and manipulation in financial markets, such as here. The firm currently serves as co-lead counsel or class counsel in numerous financial product cases involving, *e.g.*, platinum and palladium and related derivative financial products; foreign exchange; U.S. Treasuries; supranational, sub-sovereign, and agency bonds; and credit default swaps—all in the Southern District of New York. Indeed, this case involves interest rate swaps, and the firm also serves as class counsel in another matter involving

manipulation of interest rate swaps (*ISDAfix*).

***Knowledge of the Law***: Labaton Sucharow is highly knowledgeable in the law of antitrust and class action litigation with decades of experience in this practice area. The group is co-chaired by Gregory Asciolla, former trial attorney in the U.S. Department of Justice's Antitrust Division, and Jay Himes, former Chief of the Antitrust Bureau of the Office of the New York Attorney General. In addition, the firm will be able to draw from the experience and expertise of its nationally-recognized Securities Litigation Group, which can provide invaluable insight on the financial markets and product at issue here, as well as analysis from its data team.

***Resources***: The firm has ample financial and personnel resources to prosecute this case to its conclusion—including trial and appeal if necessary. Moreover, Labaton Sucharow has a proven ability to do so effectively and efficiently.

***Reputational Credibility***: The firm's reputation in the legal community provides the credibility required to successfully litigate against the nation's top defense firms. Labaton Sucharow has been recognized by its peers, adversaries, and clients as among the pioneers and leaders in the class action field, including premier rankings in *Chambers USA*, *Benchmark Plaintiff*, and *The Legal 500*, as well as *The National Law Journal* (recognizing Labaton Sucharow as one of the country's leading plaintiffs' class action firms for ten consecutive years) and *Law360* (Most Feared Plaintiffs' Firms; Practice Group of the Year-Class Action).

***Cooperation***: The firm has worked collaboratively and effectively with nearly all the firms that have filed actions here, including Quinn Emanuel in the recently-settled *Credit Default Swaps* litigation ($1.9 billion in total settlements in a case involving allegations similar to those advanced here) and *ISDAfix* litigation ($324 million in partial settlements in a case also involving manipulation of interest rate swaps). The firm's attorneys have also developed a reputation for

being collegial lawyers who work cooperatively and respectfully with both courts and opposing counsel. The Class will be greatly benefitted by these positive working relationships.

These factors are consistent with those generally considered by courts to determine the appointment of interim class counsel under Rule 23(g)(1)(A). Accordingly, for these reasons and as set forth more fully below, we respectfully request that the Court appoint Labaton Sucharow as interim co-lead counsel or executive committee member in this case.

**BRIEF SUMMARY OF CASE**

**A.     The Parties**

Labaton Sucharow represents Plaintiff Genesee County Employees' Retirement System in Flint, Michigan, a multiple-employer defined benefit pension plan with nearly half a billion dollars in assets under management.

The Dealer Defendants are the world's largest investment banks—major dealers in the interest rate swaps ("IR swaps") market—that, during the Class Period, directly transacted in IR swaps with class members, including Genesee. The non-bank defendants are owned or controlled by the Dealer Defendants.

**B.     The Alleged Conspiracy**

This case arises from Defendants' unlawful efforts to block the development of exchange-traded platforms for the trading of IR swaps in order to maintain their control over the IR swaps trading market, thus allowing them to maintain supracompetitive prices for IR swaps transactions. Generally, an IR swap is an agreement between two parties to exchange interest-rate cash flows on a specific notional amount of principal for a fixed period of time. Over the past decade, many IR swaps have become standardized instruments and thus readily suited for anonymous, exchange-like trading that would bring greater price competition and transparency to buy-side investors, such as pension funds, asset managers, corporations, and municipalities.

Yet buy-side investors remain stuck trading IR swaps in the over-the-counter ("OTC") market, an inefficient and antiquated market dominated by the Dealer Defendants. Historically, in the OTC market, investors submitted a request for a quote ("RFQ") from one or more of the Dealer Defendants. While investors could obtain buy ("bid") and sell ("ask") quotes from multiple dealers, they could only negotiate a final price one dealer at a time. As a result, bid-ask spreads in the dealer-to-customer ("D2C") segment remained considerably wider and less competitive than bid-ask spreads seen in equity or commodities markets, both of which are subject to extensive exchange-trading.

In contrast to the OTC trading in the D2C segment, the Dealer Defendants trade IR swaps *with each other* on electronic, exchange-like platforms. Exchange-trading of IR swaps in the dealer-to-dealer ("D2D") segment enabled the Dealer Defendants to trade at comparatively tighter bid-ask spreads than that observed in the D2C segment. As a result, during the Class Period, the IR swaps market was effectively bifurcated: the D2D segment traded IR swaps at tighter, more competitive bid-ask spreads, while the D2C segment traded at wider, less competitive bid-ask spreads.

This bifurcation was the result of a conspiracy among the Dealer Defendants to work together to maintain the bifurcated market for trading IR swaps and to ensure that they were the only ones allowed to trade IR swaps on these platforms. Since at least 2008, the Dealer Defendants have jointly threatened, boycotted, coerced, or otherwise eliminated any entity or practice that had the potential to bring the benefits of exchange trading to buy-side investors in the IR swaps market, including preventing the Non-Bank Defendants from operating in the D2C market; boycotting certain Swap Execution Facilities ("SEFs") that favored all-to-all anonymous trading of IR swaps; discouraging their customers from using exchanges or exchange-like trading

platforms; withholding services (including clearing services) to their buy-side customers who attempt to trade on anonymous all-to-all SEFs; insisting on post-trade disclosure practices to discourage exchange-like trading; and imposing certain penalties against their customers in an attempt to discourage future transgressions. These acts, which the Dealer Defendants have done in concert, are designed to make exchange trading unattractive to customers and, in some cases, to scare them from attempting to disrupt the OTC market.

Currently, the Dealer Defendants continue to account for most IR swaps dealing, and continue to earn extraordinary profits in their OTC-like trading with the buy-side in IR swaps trades. As a result of the conspiracy, it is virtually impossible for a class member to trade directly with another buy-side class member.

## ARGUMENT

**I.     The Court Should Appoint Labaton Sucharow as Interim Co-Lead Counsel or Executive Committee Member**

Pursuant to Federal Rule of Civil Procedure 23(g), this Court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." The Advisory Committee Notes to Rule 23 explain that the rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class." Fed. R. Civ. P. 23 Advisory Committee's Notes. *See also* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.11 (2004) (designation "clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.").

"When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A)." *In re Mun. Derivatives*

6

*Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (citing *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006)). *See also In re Crude Oil Commodity Futures Litig.*, No. 11-cv-3600, 2012 WL 569195, at *1 (S.D.N.Y. Feb. 14, 2012).

Rule 23(g)(1)(A) provides that the Court consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

In addition to the Rule 23(g) factors, a court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. 23(g)(1)(B); *Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 288 (N.D. Ill. 2014).

As demonstrated below, Labaton Sucharow satisfies all of the Rule 23(g) requirements and is best able to represent the interests of the Class. Accordingly, the Court should appoint Labaton Sucharow as co-lead counsel or as an executive committee member in this case.[1]

### A.   Labaton Sucharow Has Performed Extensive Work Investigating the Claims in this Litigation

Labaton Sucharow has spent a significant amount of time and resources investigating the claims in this case, including a thorough investigation of Defendants' alleged wrongdoing. *See In re HSBC Bank USA, N.A. Debit Card Overdraft Fee Litig.*, No. 13 MD 2451, 2013 WL 3816597, at *10-11 (E.D.N.Y. July 22, 2013) (time and resources spent investigating complaint is a substantial factor in appointing interim class counsel); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 121 (S.D.N.Y. 2010) (appointing counsel who had done "considerable work to

---

[1] Labaton Sucharow also supports the application of Quinn Emanuel Urquhart & Sullivan, LLP and Cohen Milstein Sellers & Toll P.L.L.C. for leadership positions. The firm has worked closely and cooperatively with these firms on other matters involving the financial markets, including the *Credit Default Swaps*, *ISDAfix*, and *U.S. Treasuries* cases.

7

identify and investigate potential claims"). This investigation includes (1) consultations with various industry participants; (2) legal and fact research and development by attorneys, investigators, and data analysts; and (3) review and analysis of industry reports and news articles, public filings with federal regulators, including the U.S. Securities and Exchange Commission; and other publicly available resources and data.

Labaton Sucharow also actively worked with its client, Genesee, a sophisticated investor, as well as its own in-house financial analysts, to identify additional facts necessary to prosecute the claims. Labaton Sucharow continues to work vigorously to further develop this case for the benefit of the Class.

### B. Labaton Sucharow Attorneys Are Highly Experienced in Handling Complex Class Action Litigations

Labaton Sucharow is a highly-regarded plaintiffs' class action firm, particularly within the antitrust bar. Attorneys at Labaton Sucharow have decades of antitrust and class action experience, particularly involving the financial products industry, the focus of this case.

#### 1. The Firm's Antitrust & Competition Practice Group

Labaton Sucharow, recently having celebrated its 50th anniversary, has earned its reputation as a leading, highly respected plaintiffs' class action law firm in antitrust, securities, commodities, consumer, and shareholder rights litigation. It has achieved this distinction based on its vigorous efforts in representing a wide variety of plaintiffs in complex class action cases, from large institutional investors (such as pension funds, hedge funds, and asset managers), municipalities, insurers, and corporations to small businesses and individual consumers.

Labaton Sucharow prides itself on results. Its accomplishments led one federal judge to comment, "[The Labaton Sucharow Firm is very well known to the Courts for the excellence of its representation." *In re Monster Worldwide, Inc. Sec. Litig.*, No. 07-cv-2237 (S.D.N.Y.); *see*

*also In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (E.D.N.Y.) (noting Labaton Sucharow's "tireless work" in an "irrefutably complex" case).

Regularly serving as sole lead or co-lead counsel, its Antitrust Practice Group has achieved many outstanding results in antitrust class actions throughout the country involving price-fixing, monopolization, and commodity price manipulation, recovering over $2 billion on behalf of injured consumers. These accomplishments are derived from the early work the firm does in extensively and thoroughly investigating the facts and claims prior to filing a potential matter. In several instances involving the financial markets, such as platinum and palladium, U.S. Treasuries, and supranational, sub-sovereign and agency bonds, the firm's investigations led to filing the first cases in the nation.

Labaton Sucharow has led the charge in some of the most significant private antitrust and commodities litigation in the last several decades, including many of the recent cases involving price-fixing and price manipulation in the financial industry. Below is a sampling of Labaton Sucharow's significant representations:

**Cases With Settlements:**

- *In re Air Cargo Shipping Services Antitrust Litigation*, **MDL No. 1775 (E.D.N.Y.)**: The firm served as co-lead counsel from 2006–2013 in a case alleging that over 40 international airlines participated in a global conspiracy to increase prices for air cargo shipping services. Plaintiffs obtained over $1.2 billion in total settlements.

- *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, **No. 13-cv-07789 (S.D.N.Y.)**: The firm serves as class counsel in an action alleging that dealer banks, as the major foreign exchange dealers, conspired to manipulate the price FX transactions. Plaintiffs have secured over $2 billion in partial settlements to date.

- *In re Credit Default Swaps Antitrust Litigation*, **No. 13-md-2476 (S.D.N.Y.)**: The firm served as class counsel in an action that alleged dealer banks conspired to prevent price transparency and blocked competition in the market for credit default swaps. Plaintiffs secured nearly $1.9 billion in settlements.

- *Alaska Electrical Pension Fund v. Bank of America, Corp., et al. ("ISDAfix")*, **No. 14-cv-7126 (S.D.N.Y.)**: The firm serves as class counsel in a case alleging that major

9

banks conspired to manipulate ISDAfix, a key benchmark for valuing various interest rate derivatives (including swaps and swaptions). Plaintiffs have secured $324 million in partial settlements to date.

- *In re Natural Gas Commodity Litigation*, **No. 03-cv-06186 (S.D.N.Y.)**: The firm served as co-lead counsel in a case involving claims of price manipulation for natural gas, resulting in the second largest class action recovery in the history of the Commodity Exchange Act—over $100 million for the class.

- *In re Aftermarket Automotive Lighting Products Antitrust Litigation*, **No. 09-md-02007 (C.D. Cal.)**: The firm served as co-lead counsel and obtained more than $50 million in settlements resolving claims that several manufacturers conspired to fix the prices of aftermarket auto lights sold throughout the United States.

**On-Going Cases:**

- *In re Platinum and Palladium Antitrust Litigation*, **14-cv-09391 (S.D.N.Y.)**: The firm serves as co-lead counsel in a case alleging that the world's major platinum and palladium dealers conspired to fix the prices of these precious metals and financial products derived from them.

- *In re Opana ER Antitrust Litigation*, **No. 14-cv-10150 (N.D. Ill.)**: The firm serves as co-lead counsel in a case alleging a conspiracy between branded and generic pharmaceutical companies to restrain competition via a "pay for delay" patent litigation settlement involving the drug Opana.

- *In re Treasury Securities Auction Antitrust Litigation*, **No. 15-md-2673 (S.D.N.Y.)**: The firm serves as class counsel and filed the first complaint in the nation alleging that primary dealers of U.S. Treasury securities manipulated the markets for U.S. Treasuries and Treasuries-linked derivatives.

- *Boston Retirement System v. Bank of America, N.A., et al.*, **No. 16-cv-3711 (S.D.N.Y.)**: The firm serves as class counsel and filed the first complaint in the nation alleging that dealer banks colluded to fix the prices of supranational, sub-sovereign, and agency bonds.

Labaton Sucharow has a nationally-recognized Antitrust & Competition Litigation Practice that has earned the highest ratings from the premier legal ranking organizations, including *Chambers USA*, *Benchmark Plaintiff*, and *The Legal 500*. In addition, Labaton Sucharow has been selected by *The National Law Journal* as one of the leading plaintiffs' class action firms in the country for nine consecutive years; *Law360* Most Feared Plaintiffs' Firms; and *Law360* Practice Group of the Year–Class Action.

### 2. Specialized Expertise in Litigating Cases Involving Financial Markets

Labaton Sucharow has developed expertise in investigating, developing, and litigating anticompetitive conduct in the global financial markets, including price-fixing and manipulation of complex financial products and benchmarks such as U.S. Treasuries, supranational, sub-sovereign and agency bonds, foreign exchange, credit default swaps, and precious metals and related derivative products (see cases summaries above). Indeed, the firm has particular experience in the interest rate swaps market—the market at issue here—by serving as class counsel in the *ISDAfix* case, which alleges manipulation of prices of interest rate swap products.

These cases involve many complex issues and require a keen understanding of how various financial products and markets operate in order to effectively prosecute unlawful conduct. The firm, acting as co-lead or class counsel in these matters, has honed its skills to allow it to more effectively and efficiently litigate against many of the same defendants on similar issues that arise in these types of cases. The firm will be able to draw from this experience to the benefit of the Class.

### 3. Labaton Sucharow Attorneys

Labaton Sucharow's Antitrust Group is led by co-chairs Gregory Asciolla and Jay Himes.

#### (a) Gregory S. Asciolla

Mr. Asciolla is a seasoned antitrust practitioner with over two decades of wide-ranging experience. Since joining Labaton Sucharow, Mr. Asciolla has obtained many significant victories as co-lead counsel in antitrust class actions, including *In re Air Cargo Shipping Services Antitrust Litigation* (over $1.2 billion million in settlements). Mr. Asciolla began his career at the Department of Justice's Antitrust Division, where, as a trial attorney in the Healthcare Task Force, he focused on prosecuting anticompetitive conduct in the healthcare industry, including taking two cases to trial. Under Mr. Asciolla's stewardship, Labaton

Sucharow has spearheaded the group's litigation against major financial institutions for their alleged manipulation of various financial benchmarks and products. He currently serves as class counsel in several major antitrust and commodities class actions relating to financial benchmarks and products, including cases involving price-fixing and manipulation in the markets for interest rate swaps (ISDAfix benchmark), foreign exchange, U.S. Treasuries, and supranational, sub-sovereign and agency bonds (the latter two resulting in the first filed cases in the nation).

Mr. Asciolla was recently named "Titan of the Plaintiffs Bar" by *Law 360*, and he was recommended by *The Legal 500* for being "very effective plaintiffs' counsel" and for "always act[ing] with a good degree of professionalism."

### (b)    Jay L. Himes

Mr. Himes has over 40 years of experience handling antitrust and other complex litigations for both plaintiffs and defendants. Before joining the firm in 2008, Mr. Himes served for nearly eight years as Chief of the Antitrust Bureau of the Office of the New York Attorney General, widely recognized as one of the leading State antitrust enforcers. In that capacity, Mr. Himes was the principal state negotiator in the 2001 settlement of the *Microsoft* case, as well as one of the leaders in the multi-year enforcement effort.

A well-respected antitrust practitioner, Mr. Himes was selected by the Honorable William H. Orrick III as monitoring trustee in the DOJ's merger victory after trial in *United States v. Bazaarvoice, Inc.*, No. 13-cv-00133 (N.D. Cal.).  In that capacity, Mr. Himes is responsible for monitoring Bazaarvoice's compliance with its obligations during the final judgment's four-year term. Mr. Himes is also a past chair of the Antitrust Section of the New York State Bar Association and received the group's 2014 award for distinguished service to the section and the legal profession. Mr. Himes has lectured and presented on panels covering antitrust and class actions not only in the United States, but also in Geneva, Hanoi, Lisbon, Sao

Paolo, Vienna, and Zurich. Recently, *Chambers USA* reports that sources described Mr. Himes as an "aggressive litigator with a broad knowledge of the law," and *The Legal 500*'s sources called him "a very solid and highly experienced antitrust lawyer."

The Firm's Antitrust Practice Group has an experienced and dedicated team of Of Counsel and Associate attorneys as well, all of whom have substantial antitrust experience and have come from top defense firms and government agencies. In addition, the firm will be able to draw from the experience and expertise of its nationally-recognized Securities Litigation Group, which can provide invaluable insight on the financial markets and products at issue here, as well as analysis from its data team. With this wealth of experience in complex actions in diverse substantive practice areas, Labaton Sucharow is well-positioned to best serve the interests of the Class as a court-appointed lead counsel.

### C. Attorneys at Labaton Sucharow Are Knowledgeable of the Law

As illustrated above, attorneys at Labaton Sucharow have decades of experience prosecuting complex antitrust and commodities class actions, particularly those involving price manipulation of financial products. They have acquired an extensive knowledge of the applicable substantive and procedural laws over the course of their careers. This acquired knowledge and experience, which ranges from investigation to trial and appeal, will greatly benefit the Class.

### D. Labaton Sucharow Has the Resources to Effectively Represent the Best Interests of the Proposed Class

Courts examine the resources of counsel seeking appointment as lead counsel, particularly when the defendants are large corporations with financial and legal resources. *Mun. Derivatives*, 252 F.R.D. at 186-87. This Court must satisfy itself that lead counsel "will commit sufficient attorney time and financial resources to vigorously prosecute the putative class claims." *Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. at 289; *Mun. Derivatives*, 252

F.R.D. at 186-87 (appointing firms that were capable of committing considerable resources when representing the plaintiffs).

Labaton Sucharow is prepared to commit the considerable financial and personnel resources necessary to effectively prosecute this litigation on behalf of the proposed Class. The best proof of their resources and capabilities is in their track record: in the decades that the firm has been prosecuting complex actions that have required tremendous financial resources, it has consistently advanced litigation costs in other matters of equal or greater size than the present case, and in doing so, has successfully litigated matters through settlements, trials, and appeals.

As to personnel, Labaton Sucharow has ample, experienced attorneys with antitrust and complex class action litigation experience to effectively and efficiently prosecute the action. Supporting the firm's attorneys are experienced investigators, data analysts, in-house forensic accountants, paralegals, and professional staff.

Finally, and importantly, Labaton Sucharow will strictly manage the time spent and the costs incurred in litigating this matter. The firm will immediately draft guidelines as to time and expenses for all counsel working on the matter, and regularly monitor such time and expenses to ensure the case is being litigated efficiently. In doing so, Labaton Sucharow recognizes that it has a duty to efficiently and cost-effectively manage the case, thus ultimately maximizing the potential recovery for the proposed Class.

## CONCLUSION

For the reasons set forth above, Plaintiff Genesee respectfully requests that the Court appoint Labaton Sucharow as interim co-lead counsel or as executive committee member in this action.

15

| | |
|---|---|
| Dated: July 22, 2016 | **LABATON SUCHAROW LLP**<br><br>/s/ Gregory S. Asciolla<br>GREGORY S. ASCIOLLA<br>JAY L. HIMES<br>DAVID J. GOLDSMITH<br>KARIN E. GARVEY<br>ROBIN A. VAN DER MEULEN<br>MATTHEW J. PEREZ<br>140 Broadway<br>New York, NY 10005<br>Tel: (212) 907-0700<br>Fax: (212) 818-0477<br>gasciolla@labaton.com<br>jhimes@labaton.com<br>dgoldsmith@labtaon.com<br>kgarvey@labaton.com<br>rvandermeulen@labaton.com<br>mperez@labaton.com<br><br>*Counsel for Plaintiff Genesee County Employees' Retirement System and the Proposed Class* |