**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                        :
                                        :
IN RE INTEREST RATE SWAPS               :
ANTITRUST LITIGATION                    :        16 MD 2704 (PAE)
                                        :
This Document Relates To: ALL CASES     :
                                        :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**DEFENDANTS HSBC BANK PLC, HSBC BANK USA, N.A.,**
**AND HSBC SECURITIES (USA) INC.'S**
**SUPPLEMENTAL MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINTS**


Dated: January 20, 2017

# TABLE OF CONTENTS

Table of Authorities .............................................................................................................................. ii

Background ............................................................................................................................................1

Argument ...............................................................................................................................................3

    A.   A Section 1 complaint must offer allegations of specific conduct by
        specific defendants, consisting of more than opportunities to conspire ..........................3

    B.   The Complaints lack specific allegations supporting a plausible
        inference that HSBC joined a conspiracy .......................................................................4

Conclusion .............................................................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................................1, 3

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................................1, 3, 4, 8, 9

*In re Elevator Antitrust Litig.,*
    502 F.3d 47 (2d Cir. 2007)....................................................................................3, 6, 9

*Hinds County, Miss. v. Wachovia Bank N.A.,*
    790 F. Supp. 2d 106 (S.D.N.Y. 2011).........................................................................4

*Hinds County, Miss. v. Wachovia Bank, N.A.,*
    708 F. Supp. 2d 348 (S.D.N.Y. 2010).........................................................................5

*Mayor of Balt. v. Citigroup, Inc.,*
    709 F.3d 129 (2d Cir. 2013).........................................................................................8

*In re Parcel Tanker Shipping Servs. Antitrust Litig.,*
    541 F. Supp. 2d 487 (D. Conn. 2008).......................................................................4, 9

*Robbins v. Oklahoma,*
    519 F.3d 1242 (10th Cir. 2008) ...................................................................................4

*Sky Angel v. Nat'l Cable Satellite Corp.,*
    947 F. Supp. 2d 88 (D.D.C. 2013) ...............................................................................4

*Two Old Hippies, LLC v. Catch the Bus, LLC,*
    784 F. Supp. 2d 1200 (D.N.M. 2011) .........................................................................4

*In re Zinc Antitrust Litig.,*
    155 F. Supp. 3d 337 (S.D.N.Y. 2016).........................................................................3

Defendants HSBC Bank PLC, HSBC Bank USA, N.A., and HSBC Securities (USA) Inc. (collectively, "HSBC") respectfully move for an order dismissing them from these lawsuits. For all of the reasons presented in the Dealer Defendants' Memorandum in Support of Their Renewed Joint Motion To Dismiss All Claims ("Joint Mem."), the Consolidated Second Amended Class Action Complaint ("SCAC") and Javelin and TeraExchange's Consolidated Second Amended Complaint ("SJTC," and collectively with the SCAC, "the Complaints") fail to state a claim against any of the Dealer Defendants.

As against HSBC, which was not named as a party defendant until after the initial pleadings were filed, the Complaints are especially lacking. Most notably, they do not allege that HSBC owned or controlled Tradeweb Markets, LLC ("Tradeweb"), what the Complaint calls the "principal forum" through which the Dealer Defendants purportedly "colluded to coordinate their efforts to control the IRS market." SCAC ¶ 151; SJTC ¶ 320. The Complaints otherwise allege next to nothing specifically about HSBC—and the vague allegations they do offer up fall distantly "short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

## BACKGROUND

The Complaints allege a conspiracy to inflate bid-ask spreads by blocking competitive trading of interest rate swaps (IRS) in violation of Section 1 of the Sherman Act, New York's Donnelly Act, N.Y. Gen. Bus. Law § 340, *et seq*., and other state laws. SCAC ¶¶ 395-405; SJTC ¶¶ 400-15. Plaintiffs assert that the Dealer Defendants, comprising at least 39 different entities (SCAC ¶¶ 40-64; SJTC ¶¶ 33-57), "joined together as a cartel to protect their privileged position as dealers in the IRS market." SCAC ¶ 4; *see also* SJTC ¶ 6. This conspiracy was carried out, the Complaints theorize, through the Dealer Defendants' "so-called 'strategic investment' units"— which, notably, HSBC is not alleged to have had—"comprised of personnel who considered it their

job to work with their counterparts at other banks … to neutralize threats to the banks' dominance." SCAC ¶ 5; *see also id*. ¶¶ 100-09.

In support of this theory, the Complaints assert that the Dealer Defendants owned and dominated a number of industry organizations with influence over the swaps market. In Plaintiffs' telling, the Dealer Defendants "used these mechanisms and forums for collusion to conspire in the IRS market." SCAC ¶ 21; *see also* SJTC ¶ 320. More specifically, Plaintiffs allege that the Dealer Defendants:

- launched their conspiracy in 2007 by co-opting Tradeweb through "tak[ing] control of Tradeweb's IRS business" and then "us[ing] Tradeweb as a forum to coordinate their efforts to maintain control of the IRS market" (SCAC ¶ 14; *see also* SJTC ¶ 23);

- held board positions on the International Swaps and Derivatives Association ("ISDA") and Futures Industry Association ("FIA"), which they used "to discuss the IRS market and further their conspiracy" (SCAC ¶¶ 151-54; *see also* SJTC ¶¶ 320-22), as well as on OTCDerivNet (SCAC ¶ 177; SJTC ¶ 346);

- in 2013, "jointly prevented" any Swap Execution Facility ("SEF") threatening to allow all-to-all IRS trading, including TeraExchange Inc. ("TeraExchange"), Javelin Capital Markets LLC, and TrueEX Group LLC ("TrueEx") (SCAC ¶ 23; *see also* SJTC ¶ 21); and

- imposed "name give-up," or "the requirement that the names of each counterparty to a trade be disclosed to the other," on the IRS market (SCAC ¶ 292; *see also* SJTC ¶ 19).

"As a result of Defendants' scheme," the story goes, "competition in IRS trades between Defendants and their non-dealer customers has been severely curtailed." SCAC ¶ 401; *see also* SJTC ¶ 403.

As described in the Joint Memorandum (at 24-48), the Complaints offer only conclusory allegations concerning board memberships and opportunities to conspire. Taken against each Dealer Defendant individually, the Complaints say even less. They do not describe what specific roles the individual Dealer Defendants played in the alleged conspiracy and instead lump all of them together as an ambiguous gestalt: All of the Dealer Defendants simply "joined together as a cartel to protect their privileged position as dealers in the IRS market." SCAC ¶ 4; *see also* SJTC ¶ 6.

In this respect, the Complaints are noteworthy for what they do *not* say about HSBC. In particular:

- they do not allege that HSBC had any ownership stake in Tradeweb, let alone that it played any role in the alleged conspiracy to co-opt and control Tradeweb (*cf.* SCAC ¶¶ 14-15; SJTC ¶¶ 23-24);

- they do not allege that anyone from HSBC attended any particular meeting of the ISDA or FIA boards, or of OTCDerivNet (*cf.* SCAC ¶¶ 154-58, 176-88; SJTC ¶¶ 323-26, 345-56);

- they do not allege that HSBC took action against any of the trading platforms that proposed to allow all-to-all trading, including TeraExchange and Javelin (*cf.* SCAC ¶¶ 221, 247, 283; SJTC ¶¶ 151, 187, 219); and

- they do not allege that HSBC took action against customers or other entities that sought to use all-to-all trading platforms (*cf.* SCAC ¶¶ 20, 194, 288; SJTC ¶¶ 18, 242, 260).

The full extent of the allegations concerning HSBC is that it: (1) held positions on ISDA and FIA (SCAC ¶¶ 151-53; SJTC ¶¶ 320-23); (2) held a position on OTCDerivNet (SCAC ¶ 177; SJTC ¶ 346); and (3) "gave TeraExchange the runaround" for over a year before finally declining to clear for the platform (SCAC ¶ 230; SJTC ¶ 198). That is all.

**ARGUMENT**

**A.    A Section 1 complaint must offer allegations of specific conduct by specific defendants, consisting of more than opportunities to conspire.**

We do not restate the Rule 8(a) notice-pleading standard, which is laid out in the Joint Memorandum (at 22-24). Suffice to say that allegations "that are merely consistent with" conspiracy "stop[] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

For purposes of this motion, one additional point bears emphasis: An antitrust complaint that describes a conspiracy in "general terms without any specification of any particular activities by any particular defendant" is "nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatsoever." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51

(2d Cir. 2007). "Mere generalizations as to any particular defendant—or even defendants as a group—are [therefore] insufficient." *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016). To survive a motion to dismiss, an antitrust plaintiff must "adequately allege the plausible involvement of each defendant" taken alone (*Hinds County, Miss. v. Wachovia Bank N.A.*, 790 F. Supp. 2d 106, 115 (S.D.N.Y. 2011)) by offering "specifics with respect to the acts of [each] particular defendant" (*In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 541 F. Supp. 487, 491 (D. Conn. 2008)), including the "specific time, place, or person involved in the alleged conspiracies" (*Twombly*, 550 U.S. at 565 n.10). It may not "[a]ttribut[e] all actions to the Defendants collectively" while failing "to differentiate among [them]" and failing "to identify" how each "particular Defendant [is] alleged to have acted." *Two Old Hippies, LLC v. Catch the Bus, LLC*, 784 F. Supp. 2d 1200, 1218 (D.N.M. 2011) (citing *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008)).

As one court has put it, "merely pleading that multiple entities hold positions on a board of directors," without alleging which individuals, working for which companies, met at what times, in what places, to discuss what matters, "does not establish a horizontal agreement for purposes of Section 1." *Sky Angel v. Nat'l Cable Satellite Corp.*, 947 F. Supp. 2d 88, 102 (D.D.C. 2013). That is, at most, all we have here.

### B.   The Complaints lack specific allegations supporting a plausible inference that HSBC joined a conspiracy.

Against this backdrop, the Complaints must be dismissed as to HSBC. All told, the two hundred-plus page Complaints each mention HSBC a mere *three* times with respect to their substantive claims: HSBC is alleged to have had representatives on the boards of two other organizations, ISDA and FIA, as well as an entity called OTCDerivNet (SCAC ¶¶ 151-53, 183 n.72; SJTC ¶¶ 320-23, 346), and to have given TeraExchange "the runaround" before declining to clear for the platform (SCAC ¶ 230; SJTC ¶198). Notably, however, HSBC is not alleged to have had an

ownership interest in, or any other control over, Tradeweb, the conspirators' alleged "principal forum" (SCAC ¶ 151; SJTC ¶ 320). The allegations are insufficient as against every Dealer Defendant—but they are virtually nonexistent as against HSBC.

1.   According to the Complaints, the conspiracy began in 2007 with an attempt to take control of Tradeweb through the Project Fusion joint venture. SCAC ¶¶ 14-15; SJTC ¶ 23-24. But the Complaints do not allege that HSBC or any of its employees was involved with any affirmative conduct aimed at taking control of Tradeweb. For example, the Complaints do not allege that HSBC "championed" or "devised" the conspiracy to take over Tradeweb (*cf.* SCAC ¶¶ 15, 112; SJTC ¶¶ 23-25, 275); they do not say that the alleged organizers of the joint venture solicited HSBC (*cf.* SCAC ¶ 114; SJTC ¶ 286); they do not assert that HSBC purchased or attempted to purchase any interest in Tradeweb (*cf.* SCAC ¶¶ 15, 125; SJTC ¶¶ 24, 294); they do not allege that HSBC had a representative on Tradeweb's board or committees (*cf.* SCAC ¶¶ 127-37, 158 n.51; SJTC ¶¶ 296-306); and they do not say that HSBC otherwise interacted with Tradeweb in any actionable way.

The Complaints' failure to identify any such acts by HSBC is fatal, given that Plaintiffs say Tradeweb was "the principal forum" of the alleged conspiracy. SCAC ¶ 151; SJTC ¶ 320; *see also* SCAC ¶ 14 ("use[d] Tradeweb as a forum"); SJTC ¶ 23 ("the primary forum"). Indeed, the personnel allegedly appointed by the Dealer Defendants to Tradeweb's board and committees—not one of whom was from HSBC—are alleged to be "the primary architects of the conspiracy." SCAC ¶ 138; SJTC ¶ 307. Yet there are no allegations of communications involving HSBC and any other Dealer Defendant with respect to Tradeweb. And there are no allegations that HSBC had any dealings with Tradeweb that would connect HSBC to the other Dealer Defendants.

That is especially problematic because the Complaints fail to allege *when* HSBC supposedly joined the alleged conspiracy, or how. The best they can muster is an allegation that three HSBC employees served on the boards of ISDA and FIA, which were legitimate trade associations through

5

which the Dealer Defendants purportedly conspired. SCAC ¶¶ 152-53; SJTC ¶¶ 320-23. It is well settled, however, that "mere presence at industry associations and meetings" does not plausibly suggest a conspiracy. *Hinds County, Miss. v. Wachovia Bank, N.A.*, 708 F. Supp. 2d 348, 361-62 (S.D.N.Y. 2010). The Complaints say nothing about any acts HSBC or its personnel may have taken in furtherance of the conspiracy while serving on these boards, and they make no allegations concerning the content of any of the discussions in which any HSBC employee may have participated at these legitimate meetings. So too with the Complaints' new claim that HSBC conspired with the other Dealer Defendants through OTCDerivNet, which HSBC allegedly joined in 2009; there is, again, no allegation of any specific meetings or acts in which HSBC participated in furtherance of any purported conspiracy. SCAC ¶¶ 176-88; SJTC ¶¶ 345-49. Lastly, while the Complaints make half-hearted, conclusory assertions that the Dealer Defendants met or coordinated in other assorted ways (SCAC ¶ 204; SJTC ¶¶ 127, 327), they again do not identify a single specific meeting that any HSBC employee attended. It's conceivable that HSBC personnel may have seen or said hello to representatives of other Dealer Defendants at Mets or Yankees games too—but that, without more, would not give rise to a plausible inference of an agreement to violate the antitrust laws.

In short, HSBC is not alleged to be even a *member*, much less a leader, of the principal organization through which the conspiracy was purportedly controlled. Nor is it alleged to have engaged in any specific acts or communications in furtherance of the conspiracy. In this way, the Complaints' focus on "general terms without any specification of any particular activities by [HSBC]" is "nothing more than a list of theoretical possibilities," insufficient to raise a plausible inference that HSBC was part of some sprawling conspiracy. *Elevator Antitrust*, 502 F.3d at 50-51.

2.   Matters look no better for Plaintiffs with respect to the Dealer Defendants' alleged efforts to boycott specific trading platforms, including TeraExchange and Javelin. Once again, the Complaints do not identify HSBC as a participant in any activity designed to prevent IDBs from

6

allowing all-to-all trading. Plaintiffs allege that ICAP and the Dealer Defendants—through Tradeweb—agreed that Tradeweb would not expand into dealer-to-dealer IRS trading if ICAP refrained from expanding into dealer-to-client trading. SCAC ¶ 169; SJTC ¶ 337. But HSBC is not alleged to have been an investor in or shareholder of Tradeweb, let alone to have played any role in these alleged arrangements. The Complaints allege nothing about HSBC as to ICAP.

Similarly, the Complaints fail to allege any misconduct by HSBC as to TeraExchange. On this score, the Complaints allege a series of irrelevant facts that would not suggest a conspiracy involving any Dealer Defendant under any circumstance. *See, e.g.*, SCAC ¶¶ 24-25, 221-44; SJTC ¶¶ 186-218. That is especially so with respect to HSBC. Indeed, the only allegation made regarding HSBC is that it "gave TeraExchange the runaround" for over a year before finally refusing to clear for the platforms. SCAC ¶ 230; SJTC ¶ 198. The Complaints offer no more than that HSBC declined to clear for TeraExchange—perfectly rational and lawful conduct, especially given that Tera only conducted a single IRS trade and the admittedly "high cost" of forging a data connection to Tera to facilitate clearing. SJTC ¶ 172.

The Complaints' allegations regarding Javelin and TrueEx are even more sparse. There is no allegation of specific meetings at which Javelin solicited support from HSBC. *Cf.* SCAC ¶ 246; SJTC ¶ 143. Nor do the Complaints identify any HSBC representatives who met with Javelin executives. *Cf.* SCAC ¶¶ 247-78; SJTC ¶¶ 144-84. The Complaints do not allege that HSBC engaged or refused to engage in any other conduct with respect to Javelin. As for TrueEx, the Complaints again allege nothing concerning HSBC. *Cf.* SCAC ¶ 283; SJTC ¶ 223.[1] In short, the

---

[1]    Perhaps recognizing that they cannot allege any facts about HSBC's conduct, the Class Plaintiffs instead offer a hypothetical only, postulating that "*if* … a buy-side entity asks HSBC to do a plain vanilla swap," HSBC will be "happy" to execute using Tradeweb but not TrueEx. SCAC ¶ 285 (emphasis added). There is, however, no allegation that HSBC *actually* refuses to execute swaps on TrueEx's platform, let alone that it does so pursuant to an anticompetitive agreement.

Complaints do not allege that HSBC played any role in an unlawful scheme to undermine these trading platforms.

Moreover, the Complaints raise on their face but never meaningfully address the difficulties faced by Tera, Javelin, and other trading platforms: those startup platforms had far less buy-side support than their rivals; they failed to connect to a credit hub until 2014; Tera conducted only one single IRS trade before repositioning itself as a bitcoin derivatives platform; and any Dealer that supported those platforms allegedly would have been cannibalizing its own trading profits. *See* Joint Mem. at 33-34. No inference of conspiracy can be drawn where, as here, the challenged conduct is at least as consistent with rational and competitive business conduct as with antitrust conspiracy. *Twombly*, 550 U.S. at 557; *Mayor of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013). Further, backing such novel, untested SEF platforms would have imposed substantial risks and costs upon HSBC. This, too, is yet another fatal deficiency of the Complaints.

3.  Finally, the Complaints provide a laundry list of alleged strategies on the part of the Dealer Defendants to discourage customers from using all-to-all trading platforms. It's just more of the same: blanket accusations regarding the Dealer Defendants, with no specific mention of HSBC. *Cf.*, *e.g.*, SCAC ¶¶ 163-64, 199; SJTC ¶¶ 230-31, 260, 265. These allegations are all consistent with lawful conduct and offer no support for a conspiracy involving *any* Defendant; as to HSBC, they say nothing at all.

The Complaints also focus on "name give-up," which the Complaints assert that HSBC supported alongside the other Dealer Defendants. But HSBC is not even alleged to have been a principal supporter of name give-up (*cf.* SCAC ¶ 296; SJTC ¶ 242), or to have played a role in MarkitSERV (*cf.* SCAC ¶ 298; SJTC ¶ 244); nor do the Complaints allege that HSBC in any way discouraged anonymous platforms. Tera and Javelin's Complaint claims only that HSBC issued a press release in support of a platform known as Trad-X that allegedly utilized name give-up, which

is a far cry from boycotting all-to-all platforms that lacked name give-up. SJTC ¶ 248-49. In any event, the Complaints again overlook the legitimate reasons that exist for name give-up—including the ability to serve potential customers better by knowing who they are, and the benefit of being able to vet potential customers.

In short, the Complaints do not plausibly allege that HSBC took *any* unlawful action to discourage all-to-all trading. Indeed, if the Complaints reveal anything, it is that Plaintiffs added HSBC as a defendant following their initial pleadings as an afterthought and without the factual development necessary to state a claim.

In sum, the Complaints ambiguously attribute conspiratorial conduct—described in the most conclusory terms—to the "Dealer Defendants," taken indistinguishably as a group. On their own terms, these are naked legal conclusions not entitled to a presumption of truth (*Twombly*)—an argument developed more fully in Defendants' Joint Memorandum (at 42-46). As to HSBC in particular, they are inadequate because they omit "any specification of any particular activities by any particular defendant." *Elevator Antitrust*, 502 F.3d at 50-51. Here, as in other similar cases, the "lack of specifics with respect to the acts of a particular defendant or defendants renders the complaint inadequate." *Parcel Tanker*, 541 F. Supp. 2d at 491-92.

## CONCLUSION

The Complaints should be dismissed as against Defendants HSBC Bank PLC, HSBC Bank USA, N.A., and HSBC Securities (USA) Inc.

Dated: January 20, 2017                    Respectfully submitted,

                                           /s/ *Andrew S. Marovitz*
                                           Andrew S. Marovitz*
                                           Britt M. Miller*
                                           MAYER BROWN LLP
                                           *admitted *pro hac vice*
                                           71 South Wacker Drive
                                           Chicago, IL 60606
                                           Tel: (312) 782-0600
                                           Fax: (312) 701-7711
                                           amarovitz@mayerbrown.com
                                           bmiller@mayerbrown.com

                                           *Attorneys for Defendants HSBC Bank PLC, HSBC
                                           Bank USA, N.A., and HSBC Securities (USA) Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 20, 2017, I filed and thereby caused the foregoing document to be served via the CM/ECF system in the United States District Court for the Southern District of New York on all parties registered for CM/ECF in the above-captioned matter.

*/s/ Andrew S. Marovitz*
Andrew S. Marovitz (admitted *pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
amarovitz@mayerbrown.com

*Attorneys for Defendants HSBC Bank PLC, HSBC Bank USA, N.A., and HSBC Securities (USA) Inc.*

722677901