I2NAINTCps

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE:

INTEREST RATE SWAPS                    16-MD-2704 (PAE)
ANTITRUST LITIGATION

------------------------------x

                                       New York, N.Y.
                                       February 23, 2018
                                       9:05 a.m.

Before:

                    HON. PAUL A. ENGELMAYER

                                       District Judge

                         APPEARANCES
                        (via telephone)

QUINN EMANUEL URQUHART & SULLIVAN
     Attorneys for Plaintiff Chicago Teachers
BY:  WILLIAM SEARS, ESQ.
        -and-
COHEN MILSTEIN SELLERS & TOLL P.L.L.C.
     Attorneys for Plaintiff Chicago Teachers
BY:  MICHAEL B. EISENKRAFT, ESQ.

WOLLMUTH MAHER & DEUTSCH LLP
     Attorneys for Plaintiff Tera
BY:  JAMES J. BRENNAN, ESQ.

SHEARMAN & STERLING LLP
     Attorneys for Defendant Bank of America
BY:  RICHARD F. SCHWED, ESQ.

COVINGTON & BURLING LLP
     Attorneys for Defendant J.P. Morgan
BY:  ROBERT D. WICK, ESQ.

CAHILL GORDON & REINDEL LLP
     Attorneys for Defendant Credit Suisse
BY:  JASON M. HALL, ESQ.

I2NAINTCps

```
 1              (In chambers)

 2              THE COURT:  Good morning.  This is Judge Engelmayer.

 3    I'm here with my law clerk and with a court reporter.  Good

 4    morning, everyone.  Let me begin just by taking the roll of the

 5    participants in the call, beginning with plaintiffs.  Do I have

 6    Mr. Sears?

 7              MR. SEARS:  Yes, your Honor.  Good morning.

 8              THE COURT:  Good morning.  Do I have Mr. Eisenkraft?

 9              MR. EISENKRAFT:  You do, your Honor.  Good morning.

10              THE COURT:  Good morning.  And Mr. Brennan.

11              MR. BRENNAN:  Yes, your Honor.  Good morning.

12              THE COURT:  Good morning.

13              And for the defense, do I have Mr. Schwed?

14              MR. SCHWED:  Yes, your Honor.  Good morning.

15              THE COURT:  Good morning.  Mr. Wick?

16              MR. WICK:  Yes, your Honor.

17              THE COURT:  And Mr. Hall.

18              MR. HALL:  Yes.  Good morning, your Honor.

19              THE COURT:  Good morning.

20              I will assume, Mr. Sears, that you will be speaking

21    for plaintiffs unless otherwise indicated?  Correct?

22              MR. SEARS:  Yes, your Honor.

23              THE COURT:  And Mr. Schwed, you for the defense?

24              MR. SCHWED:  Yes, your Honor.

25              THE COURT:  All right.  Very good.
```

I2NAINTCps

1        First of all, again, thank you for the helpful letter

2   of February 21st.  I think there is a little more business to

3   take up on this call than there was last month.  And so I

4   propose to get right to it and essentially go down the list of

5   topics in the letter.  As always, I will direct counsel not to

6   interrupt or speak over one another, just because it's

7   impossible for the court reporter and me to understand who it

8   is that's speaking.

9        All right.  To begin with, there is a reference at the

10  top to discovery generally.  And the letter states that, apart

11  from search terms, they are discrete issues as to certain

12  defendants that may eventually be raised with the Court but

13  that they are not holding up discovery.  Briefly, Mr. Sears,

14  could you put a little more flesh on that bone.

15        MR. SEARS:  Yes, your Honor.  There are a couple of

16  different issues.  One concerns certain discrete requests for

17  production on certain relatively narrow subject matters that

18  aren't holding up discovery overall.  The second concerns

19  certain non-e-mail custodial sources of documents and

20  information, such as certain chats and other sources of

21  information.  It is really a cleanup request to make sure that

22  we're getting all the information that we need.  We've sent out

23  correspondence to defendants about these issues recently and

24  are hoping to determine if we have any disputes and raise them

25  with the Court on these issues shortly.

I2NAINTCps

1          THE COURT:  All right.  I take it at this point,

2    though, Mr. Sears, there's nothing that is looming as an issue

3    that likely requires judicial intervention?

4          MR. SEARS:  That's correct, your Honor.

5          THE COURT:  All right.  Look, this is going to be a

6    refrain in this call, but please move with dispatch to sort out

7    those issues and try to come to a resolution on them.  I don't

8    want those issues continuing to hold us up.  We have a schedule

9    here and I intend to stick to it or close to it.

10         All right.  The next sentence reads, "Defendants

11   requested some additional information regarding Chicago

12   Teachers' trades, which it provided."  What was the nature of

13   the newly provided Chicago Teachers information?

14         MR. SEARS:  Your Honor, respectfully, I defer to

15   Mr. Eisenkraft on this issue.

16         THE COURT:  Mr. Eisenkraft.

17         MR. EISENKRAFT:  Good morning, your Honor.  The

18   information provided on behalf of Chicago Teachers was from an

19   account with a certain number, and they asked for information

20   connecting that account number to Chicago Teachers, which we

21   provided.

22         THE COURT:  All right.  That's the sum and substance

23   of it, Mr. Eisenkraft?

24         MR. EISENKRAFT:  Yes, your Honor.

25         THE COURT:  All right.  And at this point,

I2NAINTCps

1    Mr. Eisenkraft, are there any outstanding requests, informal or

2    formal, between the parties, or more specifically, by the

3    defense put to the plaintiffs as to Chicago Teachers discovery?

4              MR. EISENKRAFT:  No, your Honor.  They provided

5    everything we asked for.

6              THE COURT:  All right.  Going back to you, Mr. Sears,

7    as it relates to third-party discovery, I am heartened to see

8    that in many cases the parties are far along on that front.

9    However, there is a notation at the end that indicates that a

10   few third-party disputes may require judicial resolution.

11   Mr. Sears, can you amplify?

12             MR. SEARS:  Yes, your Honor.  It's really just one or

13   two third parties at this point.  It's nothing imminent.  We

14   just wanted to flag it for the Court in case we do need to

15   raise it before the next conference, because, as you said, we

16   are trying to move with dispatch on these issues, and the

17   nature of the disputes with third parties, they are really

18   run-of-the-mill discovery disputes.  They have to do with

19   search terms, custodians, and the like.  And if we can't reach

20   agreement shortly, we'll try to bring it to the Court's

21   attention as soon as possible.

22             THE COURT:  OK.  Well, do convey to the third parties,

23   since they're not on the call, my very strong preference for

24   people to resolve disputes themselves.  And I appreciate your

25   giving me a heads up of a looming issue, although it sounds

I2NAINTCps

1    like it may well never hit my desk.

2         All right.  Before I move from that pair of

3    paragraphs, let me just ask Mr. Schwed, anything that the

4    defense wants to add by way of factual context or elaboration

5    as to the two paragraphs under the title, quote/unquote,

6    discovery generally?

7         MR. SCHWED:  No, your Honor.

8         THE COURT:  OK.

9         Turning, then, to the next header, called

10   "Custodians," it sounds as if there may be some discrete

11   party-specific issues.  Mr. Sears, is that something that the

12   parties are likely to be able to sort out soon?

13        MR. SEARS:  Yes, your Honor.  It looks as though we'll

14   be able to sort these out, with the caveat that, as we've noted

15   in the letter, and I think the last one is possible, that there

16   might be discrete issues that have to do with the

17   identification of certain board members as required by the

18   Court's January 8th order.  But we'll endeavor to work these

19   out with the parties and as quickly as possible if they arise.

20        THE COURT:  All right.  Look, I tried in that order to

21   be as clear as I could, and hopefully it's reasonably

22   self-executing.  So hopefully that doesn't generate an issue

23   for me.  But if need be, get it to me soon.

24        All right.  Defense, anything on custodians?

25        MR. SCHWED:  No, your Honor.

I2NAINTCps

1          THE COURT:  OK.  I should go back on discovery

2     generally.  I noted that there's a last sentence in the first

3     paragraph that reads, "The parties have not discussed an

4     extension of the substantial completion deadline since the last

5     teleconference."  I just want to comment on that.  I'm glad to

6     hear that.  I mean, as I indicated at the January 26th

7     conference, at that call, I'm hopeful that even if there is a

8     need for modest slippage or a modest extension of that

9     deadline, it doesn't have a ripple effect down the line in

10    terms of the schedule.  I'm glad to hear that an extension of

11    that deadline is, at least right now, not being sought or

12    considered by the parties.

13          All right.  Let me get to search terms.  And this is a

14    significant issue, even problem.  Looking here at the paragraph

15    that carries over from page 1 to 2, the thrust of the paragraph

16    is that after my comments at the last conference, you were able

17    to move the ball along more, I gather, by sharing more

18    information, statistically and the like, with respect to

19    burden.  And I'm glad about that.  However, I said something

20    else at that conference.  I'm sure you're all aware of it.  If

21    you look at page 15, I'm quoting what I said, "It certainly

22    seems to me reasonable to expect that the search-term issues

23    will be resolved by then."  "Then" means today, February 23rd.

24    "I really," continuing with the quote, "I really hope that we

25    don't have a situation where, four weeks from today," meaning

I2NAINTCps

1    today, "or so, that issue is unresolved even by me."

2    Continuing on with the statement from the last conference, "So,

3    as counsel are sharing information relevant to burden, please

4    reverse-engineer the deadlines in your discussions with an eye

5    towards an expectation that I would like to have ruled on any

6    dispute in this area by the time of our next call," meaning

7    today, February 23rd.  It seems to me that, directionally,

8    that's a reasonable target to give you.

9         You can imagine how I reacted at the last sentence of

10   your joint letter, which reads, "The parties intend to continue

11   this iterative process and hope that search terms can be

12   resolved without the Court's assistance before the next

13   conference."  I'm going to be very blunt and direct with you.

14   The answer is no.  You now have one week, until next Friday, to

15   sort out your search-term issues, because -- and I'm sorry to

16   be forceful like this about that, but I don't know that I did

17   anything that could have possibly invited the notion that you

18   could roll this forward another month with some hope that

19   iterations would solve the problem.  You need to fish or cut

20   bait by next Friday.  And if you haven't been able to do so,

21   I'll give you a few days to submit a joint letter that sets out

22   your search-terms disputes, and I will resolve them very

23   quickly.  And I'll hear briefly from counsel if there's some

24   context I'm missing here, but the letter, as written, utterly

25   ignored the rather clear guidance I gave you.  Mr. Sears, am I

I2NAINTCps

 1   missing something?

 2           MR. SEARS:  Your Honor, you're not missing anything.

 3   We understand you loud and clear and we welcome this deadline.

 4           THE COURT:  Mr. Schwed?

 5           MR. SCHWED:  Your Honor, while we understand you, I

 6   would just invite Mr. Hall, who is more familiar with these

 7   issues, if he wants to add anything.

 8           THE COURT:  Mr. Hall?

 9           MR. HALL:  No, your Honor.  I think there's really

10   nothing to add.  We understand you and we hear you, and we will

11   satisfy the order.

12           THE COURT:  Yes.  Look, I mean, if there's something

13   that I've missed, if there's some technological problem that

14   has just delayed the ability to produce the data necessary to

15   quantify burden, I'm not unreasonable, but that's not what

16   anybody said in the letter.  It just sounded like you were

17   collectively granting an extension, and I'm unhappy with that,

18   because, I think with that sort of extension, we have a

19   meaningful risk that the substantial completion deadline would

20   slip.  And having solicited, I think, the understanding from

21   counsel that we could make this work by today, I'm not inclined

22   to hold it open much longer.

23           So, for avoidance of doubt, I expect you to solve

24   these problems by next Friday, and candidly I expect you to

25   solve these problems.  That is to say, I do not expect to have

I2NAINTCps

to referee these issues.  But if I do, I'd like a joint letter
by the Tuesday afterwards, which is to say the 27th of
February, that sets out, issue by issue, your respective
positions on the search terms, and I will resolve that
extremely promptly.  But it's my strong hope that you are able
to resolve all these issues.  OK?

Before I move off this, Mr. Sears, is there any other
clarity I can possibly give?  Is there anything I'm missing
here?  Is there any reason why what I've just said is unfair?

By the way, my law clerk tells me that I've garbled
the calendar and that a week from Tuesday is in fact March 6th,
not February 27th.  I looked at the wrong date.  So with that
corrective, you know, this is the chance to speak now or
forever hold your peace on this issue.

Mr. Sears.

MR. SEARS:  Your Honor, nothing you've said is unfair,
and I think you understand the situation correctly.  We would
just add that, despite the Court's guidance at the last
conference, there are still a couple defendants that we have
not received hit-count data from.  We do not expect that to
hold up progress.  We will meet this deadline.  But we do need
the data from defendants in order to continue the process and
drive this to conclusion.

THE COURT:  Which defendant, Mr. Sears?

MR. SEARS:  Your Honor, if I am recalling this

1    correctly, it would be Deutsche Bank and Morgan Stanley.

2           THE COURT:  All right.  I do not see counsel for

3    Morgan Stanley on this call.  Mr. Wick, you represent Deutsche

4    Bank.  Just yes or no, is it correct that Deutsche Bank hasn't

5    gotten the burden data to plaintiffs?

6           MR. WICK:  Your Honor, I represent J.P. Morgan, not

7    Deutsche Bank.  And if I could just say a quick word, the

8    defendants have been breaking their necks to give the hit-count

9    data to the plaintiffs that they asked for.  You made your

10   comments on a Friday.  By Monday my clients had hit-count data

11   to the plaintiffs.  The trouble is that their list of search

12   terms runs to 35 or 40 pages long.  It contains over 400 terms

13   that they are asking us to search.  They want multiple

14   different cuts of the data and multiple presentations in the

15   answer.  Many of their search terms are constructed in ways

16   that our systems can't run.  And so we literally have been

17   knocking ourselves out to get them hit counts.  I can't speak

18   for Deutsche Bank or Morgan Stanley.  But for J.P. Morgan we

19   have been knocking ourselves out and getting them prompt

20   information.  And the trouble is, they are taking baby interim

21   steps and not making fundamental change in their search-term

22   list.  Their prior proposal hit on 18 million documents for

23   J.P. Morgan.  A month later, their latest search-terms proposal

24   still hit some 14 million J.P. Morgan documents, we estimate

25   about 80 percent of everything.  And so to our mind, the

I2NAINTCps

1    problem here is that the plaintiffs are moving at glacial speed

2    instead of making more fundamental structural overhauls of

3    their search term proposals.  We made our own search-term

4    proposal to them, which hits on rounding to about a million

5    J.P. Morgan documents, and we haven't heard a response to that.

6

7           THE COURT:  All right.  First of all, I apologize for

8    getting your client representation wrong.  I'm relying on a

9    cheat sheet that had been prepared that had that wrong, and I

10   apologize for that.

11          Mr. Wick, I guess the question that what you've said

12   presents is, assuming as of next week you are far apart, where

13   the data that has been requested by the plaintiffs yields very,

14   very high search-term numbers that would not seem intuitively

15   realistic, hypothetically, and your proposal is substantially

16   south of that, I guess the question will be whether there is an

17   issue that's crystallized for my resolution, given the

18   possibility that there are middle grounds.  Mr. Wick, do you

19   want to speak to that?

20          MR. WICK:  Your Honor, we don't think it's an issue.

21   It's splitting the baby between a million in the case of my

22   client and 14 million.  We think our proposal is, you know,

23   it's basically pretty reasonable.  And we're happy for them to

24   make substitutions if they want different sets of search terms.

25   But our view is, if they can't prove their case with a million

I2NAINTCps

 1    J.P. Morgan documents, we don't see why they can prove their

 2    case with 5 million documents.

 3            THE COURT:  Mr. Wick, I get the point that, just

 4    because there are different positions, my job isn't to average

 5    them.  I completely understand that.  The issue is whether

 6    there are intermediate data points that could be considered, or

 7    whether the nature of the byplay between counsel is leaving me

 8    only with polar positions, without information about other menu

 9    options.  I guess the question is, Mr. Wick, for me, when I'm

10    resolving a dispute like this, I'm completely unafraid of

11    choosing a polar position if that's the right one, but I would

12    at least like to know whether there are coherent options in the

13    middle.  Will I be presented with them?

14            MR. SCHWED:  The options -- I didn't mean to interrupt

15    you, your Honor.  Were you finished?

16            THE COURT:  I am.

17            MR. WICK:  The middle ground, your Honor, may mean

18    things like, well, running different sets of search terms on

19    different custodians.  And when you're running 35 pages of

20    search terms with 400 search strings and then you're trying to

21    customize it across different custodians and then dedup the

22    responses as plaintiffs have requested us to do, it's going to

23    take a little time.

24            So we hear you loud and clear.  If you want this done

25    a week from today, it's going to be done a little bit with a

I2NAINTCps

1    blunt instrument.  To explore the potential middle grounds, I

2    don't know that we're going to be able to get it done by a week

3    from today.

4            THE COURT:  All right.  Look, Mr. Wick, I think you've

5    given me enough to say to you that I'm going to lighten up a

6    little bit the dates I've just given, not a lot but a little

7    bit, just because I do want productive discussions to ensue.

8    Plaintiffs, I will just offer the thought, without knowing

9    anything more, that the outer-bound number that Mr. Wick quoted

10   of 14 million hits, for one defendant, is jaw dropping.  And I

11   say that so that you can factor it into your reflections on a

12   next bid-and-ask.

13           Let me change the dates here to at least afford a

14   little more opportunity.  I will give you all till Wednesday,

15   March 7th, to resolve your search-term issues, which hopefully

16   will allow one more round of a little more reasoned discussion

17   than perhaps the deadline I set would have given, and then a

18   joint letter by Friday, March 9th, setting out, in atomized

19   form, the discrete issues as to which you've been unable to

20   reach agreement.  It's my strong hope you will resolve this,

21   because I had budgeted, in terms of my time, that if I was

22   going to be resolving any of these issues, I was going to be

23   doing so by today, not in March.  But it is what it is.  I hope

24   you will be able to resolve these yourselves.  But the

25   deadline, and I'll put this in an order, will be March 7th for

I2NAINTCps

1  resolving the issues and March 9th, if you can't, for a letter

2  along the lines of the one you gave me in December that sets

3  out unresolved discovery disputes.

4         Mr. Wick, does that help?

5         MR. WICK:  Yes.  Thank you, your Honor.

6         THE COURT:  All right.  Before we leave search terms,

7  Mr. Sears, anything further?

8         MR. SEARS:  Yes, your Honor.  If I can just respond

9  briefly, we think some of that characterization was unfair and

10  somewhat inaccurate.  You know, the numbers he quotes may be

11  correct, but we have always maintained that we will reduce the

12  search terms and take the burden concerns by defendant

13  seriously.  We just need adequate data to do it.  In many

14  cases, it has taken us a long time to get data and when it

15  comes it is not what we requested.  We have had to follow up

16  repeatedly with individual defendants.  So we too are knocking

17  ourselves out to try to reach a solution here.  We are not

18  wedded to our current proposal and in fact had a

19  meet-and-confer on Wednesday in which we told defendants we

20  would consider further cuts based on their proposal, which we

21  received Tuesday night.

22         So we're working on this as well.  We understand the

23  Court's guidance.  We just, we continue to need data from all

24  defendants and we need the type of granular unique-hit-count

25  data that we have repeatedly asked for.

I2NAINTCps

1          THE COURT:  All right.  I don't think I can take this

2     conversation any further, but saying this as clearly as I can

3     that I would prefer that you work this out yourselves, but I've

4     given you a deadline to do that in.

5          All right.  Finally, Mr. Schwed, just coming back to

6     you for other defendants or for defendants generally, anything

7     further on this set of issues, search terms?

8          MR. SCHWED:  No, your Honor.

9          THE COURT:  All right.  The next topic here is data

10    discovery.  Mr. Sears, can you elaborate a little more on the

11    data issues that were the subject of the meet-and-confer on

12    February 5?

13          MR. SEARS:  Certainly, your Honor.  This has to do

14    with plaintiff's data request to defendants and determining

15    what type of data they'll produce and sort of a temporal scope

16    for data.  We had a productive meet-and-confer on February 5th.

17    We followed up with an e-mail and informal discussion, and

18    we're hoping to have another meet-and-confer next week.

19          THE COURT:  Do you expect that this will result in an

20    agreed resolution?

21          MR. SEARS:  We certainly hope so, your Honor.

22          THE COURT:  Mr. Schwed?

23          MR. SCHWED:  We're hopeful as well, your Honor.

24          THE COURT:  At least at this point I'm not hearing any

25    likelihood of a dispute requiring my resolution.

I2NAINTCps

1      All right.  The next topic is entitled "Amended

2  Complaint."  And I have a handful of questions about that, but

3  let me just begin without explanation but, defense, Mr. Schwed,

4  what will the defendant's position be, bottom line, if you know

5  yet, as to the proposed third amended complaint?

6      MR. SCHWED:  Yes, your Honor.  With the caveat that

7  we've had roughly one day to review what's been filed, we do

8  not expect to oppose the addition of the new plaintiff, LACERA,

9  but we do, however, expect to oppose the rest of the amended

10  complaint, in particular the attempt to revise the dismissed

11  claims, the claims that were dismissed in the motion to

12  dismiss.

13      THE COURT:  Will you be objecting to the added

14  allegations that fall within the scope of the sustained claims?

15      MR. SCHWED:  I don't think we've parsed the amended

16  complaint to that level of granularity as to whether there are

17  certain allegations that support sustained claims that we

18  wouldn't object to.  We, I would say, our review has been

19  focused on the broader question of the dismissed claims that

20  they are attempting to get undismissed.  And that is certainly

21  something we will object to and oppose.

22      THE COURT:  Is it your expectation, Mr. Schwed, that

23  there will be a singular defense brief in response or multiple

24  ones?

25      MR. SCHWED:  We expect to be able to do it in a single

I2NAINTCps

1    brief.

2             THE COURT:  All right.  How much time were you seeking

3    for your brief in opposition?

4             MR. SCHWED:  We were thinking 40 days, your Honor,

5    given the length of what they submitted.  They've basically

6    added 50 pages to an already long complaint.  And as I'm sure

7    your Honor can appreciate, it actually takes a lot longer to

8    file a single brief that involves this number of defendants and

9    in-house lawyers than it might otherwise appear to take.  So

10   that's what we would request.

11            THE COURT:  What would that bring us to?  What date?

12            MR. SCHWED:  Roughly April 4th, thereabouts.  I

13   haven't calculated exactly.

14            THE COURT:  All right.  I'm going to reserve on that

15   and come back to that a little later in the conversation.  It's

16   a longer period of time than I had expected, but I certainly

17   appreciate that it takes time to herd cattle and you've got a

18   lot of issues here.

19            Let me just say this.  I'm not going to invite, or

20   authorize, a reply.  This needs to get resolved.  I will be

21   happy to receive an opposition brief, but, plaintiffs, this is

22   not a matter as to which I am permitting a reply brief.

23            All right.  Plaintiffs, I have some questions for you

24   about this topic, and I'll address myself to Mr. Sears.  Are

25   you the right person?

I2NAINTCps

1          MR. SEARS:  Yes, your Honor.

2          THE COURT:  Am I correct that February 21st was the

3    first time on which this Court was put on notice of your intent

4    to file a substantive amendment to the complaint that would

5    have the effect of reviving dismissed claims?

6          MR. SEARS:  That's correct, your Honor.

7          THE COURT:  All right.  When did you first put the

8    defense on notice of that?

9          MR. SEARS:  I believe it was a week or two before

10   that.

11         THE COURT:  Mr. Schwed, when was the defense first

12   notified of a substantive amendment that, if granted, would

13   have the potential to revive dismissed claims?  When were you

14   first put on notice of that?

15         MR. SCHWED:  I don't recall the exact day, but it was

16   approximately, I believe, one day last week.

17         THE COURT:  It was last week, meaning the week of

18   February 12th through 16th?

19         MR. SCHWED:  Actually, I'm being told, we think it's

20   maybe February 19th.

21         THE COURT:  February 19th.  So two days before the

22   letter to me.

23         MR. SCHWED:  I'm sorry.  A week before the letter,

24   February 14th.

25         THE COURT:  All right.  So your Valentine's Day gift

I2NAINTCps

1    from the plaintiffs was notice of this substantive amended

2    third complaint.  Is that what you're saying, Mr. Schwed?

3              MR. SCHWED:  Yes.  Roughly speaking, yes.

4              THE COURT:  And Mr. Sears, is that directionally about

5    right?  Is that when the defense was first told that a

6    superseder of this nature was coming?

7              MR. SEARS:  Your Honor, that sounds right to me.

8              THE COURT:  Mr. Sears, when did the plaintiffs first

9    consider a third amended complaint that would have the effect

10   of reviving dismissed claims?

11             MR. SEARS:  Your Honor, it was certainly earlier than

12   that, but the decision to do so was not made until more

13   recently.  As we set forth in our motion, this has been based

14   on an extensive, ongoing investigation that continued up

15   through the filing of the amended complaint.

16             THE COURT:  When did the plaintiffs first consider

17   filing an amended complaint that would revive dismissed claims,

18   was my question.

19             MR. SEARS:  Your Honor, one second.

20             Your Honor, we have considered filing an amended

21   complaint from the time we received the Court's ruling on

22   defendant's motion to dismiss.

23             THE COURT:  Is there a reason that you did not notify

24   the defense till about February 14th of the possibility that an

25   amended complaint of this nature might be filed?  Obviously,

I2NAINTCps

1    Mr. Sears, we've been doing a lot of work together with respect

2    to discovery.  I can talk about that in a moment.  I am eager

3    to understand the thought process, because surely there was

4    one, of not sharing with your adversaries that this significant

5    development in the case might happen.  Why did the plaintiffs

6    not alert the defense to the possibility of such an amended

7    complaint until February 14th?  Please answer the question.

8         MR. SEARS:  Yes, your Honor.  We wanted to make sure

9    the amended complaint was in a near final form so that we could

10   tell them with certainty what the new allegations would be.

11        THE COURT:  And, Mr. Sears, did you, in deciding not

12   to tell, in making apparently an affirmative decision not to

13   tell the defendants until February 14th of the superseder, what

14   thought did you give to the interplay between the potential

15   amended complaint and the long ongoing discovery discussions?

16   What was your thinking in not alerting the defendants to this?

17        MR. SEARS:  Your Honor, with respect, Mr. Brockett is

18   here and would like to address the issue.  I know he's not

19   listed as a participant, but he would like to answer this

20   question.

21        THE COURT:  The answer is no.  Mr. Sears, I've asked

22   you a question.  The letter said that you would be prepared to

23   address it.  Answer my question.

24        MR. SEARS:  Your Honor, we did not view it as an

25   affirmative decision to withhold information.  We wanted to

I2NAINTCps

1   make sure this complaint was in a near final form and that we

2   were set on filing it before we informed defendants.

3           THE COURT:  Is it your view that if the third amended

4   complaint were permitted, it would have any effect on the scope

5   of discovery as has been negotiated and ruled upon so far?

6           MR. SEARS:  Your Honor, candidly, yes, it would have

7   an effect on the scope of discovery.  And I would just add that

8   we were still interviewing witnesses and gathering information

9   up through the time when we notified defendants, and that

10   informed our decision as well.

11           THE COURT:  And did it occur to you that the

12   substantial investment of time that, among others, the defense

13   and Court were making in resolving and discussing discovery

14   issues, might be potentially mooted by the filing of a third

15   amended complaint of this nature, Mr. Sears?

16           MR. SEARS:  Yes, your Honor, it did.  And we're

17   sensitive to those concerns, and we apologize for any

18   inconvenience to the Court and to defense counsel.  Certain

19   critical witnesses only came to light recently and were still

20   being talked to up through the time period that we notified

21   defendants, and we wanted to make sure we had the best

22   available information when we did so.

23           THE COURT:  Please name those witnesses now.

24           MR. SEARS:  Your Honor, with all due respect, these

25   are confidential witnesses, and we do not feel comfortable

I2NAINTCps

1    disclosing their identities.

2              THE COURT:  Please get me a letter by the close of

3    business today that lists their names.  You are permitted to

4    file it ex parte.  But I want the names of the confidential

5    witnesses whom you are referring to and I want the dates when

6    you first spoke to them and the dates when you last spoke to

7    them, because I am --

8              MR. SEARS:  Understood, your Honor.

9              THE COURT:  All right.  That's by 5 o'clock today.

10             All right.  Let me ask you, Mr. Sears, continuing on,

11   this is our fourth or fifth discovery call; did you give

12   thought in any of the letters that you are submitting to the

13   Court to alert the Court that this was a possible development

14   in the case?

15             MR. SEARS:  Yes, your Honor, we did, but we wanted to

16   make sure that it was something we were going to go through

17   with and that we had the best available information before we

18   did so.  And we again apologize for any inconvenience to the

19   Court.

20             THE COURT:  So when you made the affirmative decision

21   not to tell the Court that there was a possibility of an

22   attempt to file a consolidated amended complaint, did it occur

23   to you that the Court might regard that as a material omission

24   in my thinking about the case schedule and thinking about the

25   discovery disputes that I was reviewing, month after month,

I2NAINTCps

1    with all of you and sometimes resolving?  As part of your

2    decision not to tell me that this was a possibility, did you

3    reflect on that, Mr. Sears?

4            MR. SEARS:  Your Honor, we did not make a final

5    decision to file an amended complaint until recently.  We did

6    not make an affirmative decision to withhold anything from the

7    Court or omit any material information.

8            THE COURT:  Well, OK.  Look, we're talking here about

9    basic human courtesy.  And it seems to me that if you were

10   thinking about this as a real possibility, it is audacious not

11   to share with your adversaries or the Court the possibility of

12   what at least has the prospect of being a fundamental game

13   changer in the case.  I will just say for all of you that when

14   I read that in the letter, I had the same reaction that John

15   McEnroe had in Wimbledon in 1981, which is, You cannot be

16   serious.  I'll be happy to resolve this on the merits, but as a

17   matter of decorum, professionalism, notice, diplomacy, saving

18   this for the last minute was startling and certainly far short

19   of what I expect of counsel before me.

20           I will note for what it's worth that you together set

21   up for me in December a substantial number of discovery issues.

22   I resolved them.  Central to those issues was the scope of the

23   case as defined by the Court's motion-to-dismiss ruling.  I

24   spent a good deal of my December break resolving those issues.

25   It would have been relevant information to me, Mr. Sears, to

I2NAINTCps

1    know that there is a possibility that this entire venture would

2    have been overtaken by the work that you were apparently doing

3    with your witnesses, and at least notice that would have said,

4    we are considering it, it's a possibility, would have been well

5    worth it.

6              So to the extent you have further litigation in the

7    Southern District of New York, plaintiff's counsel, I expect

8    you will be substantially more candid with the Court and your

9    adversaries.

10             All right.  Defense, let me ask you, for the

11   submission that you are going to make, I recognize you will be

12   addressing the viability or not of the theories that are

13   articulated in the amended complaint.  Please address the

14   following issues as well in your submission:  Number one, any

15   prejudice to the defense.  Number two, any effect on the

16   schedule.  And you should address that both in terms of the

17   assumption that this affects discovery and that it does not.

18   In other words, one potential outcome, I suppose, would be to

19   permit the complaint to be amended but, given how much time has

20   passed, to not disturb discovery.  I would like you to address

21   as well whether or not the disclosure of this is consistent or

22   not consistent with representations, express or implied, by

23   plaintiff's counsel to the Court and to the defense since the

24   resolution of the motion to dismiss.  And finally, I expect you

25   will distinguish in your brief between at least the following

I2NAINTCps

1    three categories of allegations:  LACERA, that's number one.

2    Number two is amplified factual allegations within the scope of

3    the sustained theories.  And number three, what I understand to

4    be the real battleground here, is new allegations that would

5    potentially revive dismissed theories of liability.  So please

6    break that out.

7            Let me ask you, Mr. Sears, just a factual question.

8    It was unclear to me from your third amended complaint whether

9    you are adding back in HSBC or ICAP.  They are still listed as

10   defendants in your third amended complaint.  Are they still

11   defendants in that complaint?

12           MR. SEARS:  No, your Honor.  We tried to make that

13   clear in the motion, and we apologize if it was not.

14           THE COURT:  So, despite being listed as defendants,

15   they're actually not defendants.  Is that correct?

16           MR. SEARS:  Correct, your Honor.

17           THE COURT:  What about Tradeweb?

18           MR. SEARS:  Your Honor, Tradeweb is a defendant, and

19   HSBC and ICAP are simply to preserve our rights and for the

20   record.

21           THE COURT:  All right.  But, in other words, you are

22   proposing to add Tradeweb back into the case.

23           MR. SEARS:  Yes, your Honor.

24           THE COURT:  And when did you first tell Tradeweb that

25   it was going to be the subject of an amended complaint, or an

I2NAINTCps

1    attempted amended complaint, that, if granted, would put them

2    back in the case?  When did you first give Mr. Garvey notice of

3    that?

4              MR. SEARS:  Your Honor, we have not given Mr. Garvey

5    notice of that.

6              THE COURT:  I see.  So Mr. Garvey, for example, is not

7    on this call.  Correct?  So far as you know.

8              MR. SEARS:  Not that I'm -- correct, your Honor.  Not

9    as far as I know.

10             THE COURT:  You did not tell him, for example, that

11   his interest might be concerned, his client's interest.

12             MR. SEARS:  Your Honor, we told liaison counsel about

13   the substantive amendment, and if it was not clear that

14   Tradeweb was being mentioned, you know, we apologize for the

15   error and we did not specifically tell their counsel.

16             THE COURT:  Let me ask you this.  Since the motion-

17   to-dismiss decision, there have been no doubt many hundreds of

18   hours devoted by counsel to discovery disputes and a not

19   insubstantial amount of time by me and my staff on them.  One

20   of the key issues is making sure that all the relevant

21   stakeholders participate in these discussions.  When did it

22   first occur to you that you might seek to reintroduce Tradeweb

23   as a defendant in the dispute, Mr. Sears?  Might.

24             MR. SEARS:  Your Honor, we don't know when we made

25   that decision.  It was recently, as with all the final

I2NAINTCps

1   decisions regarding the amended complaint.

2            THE COURT:  Did you think affirmatively of alerting

3   Tradeweb and its counsel that, because Tradeweb might be the

4   subject of an amended complaint, it was worth their while to

5   monitor or participate in the discovery discussions?

6            MR. SEARS:  Your Honor, we did not ask that of

7   Tradeweb's counsel.  We have been corresponding with liaison

8   counsel for all defendants regarding the amended complaint.

9            THE COURT:  Right.  And liaison counsel for all

10   defendants would reasonably be understood to be all

11   nondismissed defendants.  Do you agree with that, Mr. Sears?

12            MR. SEARS:  Yes, your Honor, I would.  I would just

13   note we also have a third-party subpoena out to Tradeweb and

14   have been engaged in negotiations with them on that front

15   regarding discovery.

16            THE COURT:  And you have labeled that a third-party

17   subpoena.  The nature of what you have submitted to Tradeweb

18   has not indicated that they were at risk of being moved from a

19   third party to a party.  Correct?

20            MR. SEARS:  Correct, your Honor.

21            THE COURT:  All right.  Look, I will resolve this on

22   the merits, although obviously part of the consideration here

23   is not only the substantive viability of the amended complaint

24   but also considerations of prejudice and effect on our schedule

25   and the like.  But I would just offer this for plaintiff's

I2NAINTCps

1    counsel, once again:  I expect a lot better.  I have to tell

2    you that, with counsel of this caliber, the hide-the-ball

3    quality about this is far, far from what I expect.  And going

4    forward in this case and in any other case in my court, I

5    expect that if there is a material development like this that

6    is under consideration, unless it implicates issues of witness

7    safety or something like that, I expect prompt notice, because

8    a lot of us have spent a lot of time engaging with a lot of

9    issues and making a lot of decisions that at least potentially

10   could be upended and all of our time proven wasted by your

11   evidently affirmative decision not to notify anybody of the

12   possibility of an amended complaint until it became a certainty

13   in your mind.  I expect a lot better.

14            With that, let me just say this.  For the purpose of

15   continued discovery discussions, counsel should proceed ahead

16   with your discussions on discovery, on the following two

17   premises, which I think are the best ones to organize your

18   discussions.  Number one, it is realistic to expect that I will

19   approve the addition of LACERA to the case.  To the extent that

20   affects any discovery disputes, that is the safe operating

21   assumption.

22            For the purposes of your discovery disputes, you

23   should assume that the guidepost as to the scope of the case

24   remains the second amended complaint as narrowed by my motion-

25   to-dismiss ruling.  In other words, the default mode for your

I2NAINTCps

1    discovery discussions ought to be that the substantive scope of

2    the case remains in place.  In the event that I permit some or

3    all of the substantive changes in the third amended complaint

4    to go forward, we will take up what if any impact that has on

5    discovery then.  But I want to clear away that underbrush and

6    make sure that your discussions about discovery are not skewed

7    by considering the expected value of my decision on the third

8    amended complaint and the possibility that I might sustain

9    those additional allegations.  Whatever I'm destined to do I'm

10   destined to do and I won't know until I get the defense- side

11   perspective, but assume that the shape of the case is the

12   second amended complaint as narrowed by the motion-to-dismiss

13   ruling but with the addition of LACERA.

14          With that, defense counsel, can you give me a slightly

15   closer date than April 4th?  Can we say five weeks from today?

16          MR. SCHWED:  Yes, your Honor.

17          THE COURT:  All right.  Which I think puts us at March

18   the 30th?  Defense counsel, Mr. Schwed, can you do that?

19          MR. SCHWED:  Yes, your Honor.

20          THE COURT:  All right.  Thank you.  I will endeavor to

21   rule very promptly after receiving that submission.  Again, I'm

22   not inviting or authorizing a reply, but I do want, and I

23   permit ex parte, the submission today with respect to the

24   timing of the witness contact.  And I expect you to be

25   comprehensive, plaintiff, with respect to the witnesses whose

I2NAINTCps

1   information informed the filing on February 21st of the

2   proposed third amended complaint.

3            The final item on my agenda is just to set a date for

4   the next conference.  I expect provisionally that it will

5   likely be March 19th.  I am traveling on the 23rd, which would

6   be four weeks from today.  But I will know for sure soon and

7   will file an order that gives you that time.

8            Mr. Sears, anything further from the plaintiffs?

9            MR. SEARS:  No, your Honor.

10           THE COURT:  Mr. Schwed, anything from the defense?

11           MR. SCHWED:  No, your Honor, except just one quick

12   thing, because I like to always be accurate and precise with

13   the Court.  I did have a moment to check my e-mails and confirm

14   that it was February 14th, the date we learned of this.

15           THE COURT:  OK.  In other words, you are representing

16   that before February 14th, you had no indication that a

17   substantive amendment to the complaint was going to be filed.

18           MR. SCHWED:  Correct, but we had had conversations

19   about the addition of LACERA as a new plaintiff.

20           THE COURT:  Right.  And that's reflected in the

21   January 24th letter to the Court by counsel, which reports the

22   potential amendment to add LACERA, but in what now appears to

23   be a good example of a dog not barking says nothing about the

24   other changes that were under consideration.

25           All right.  Very good.  We stand adjourned.  I will
     look forward to speaking with you about three and a half weeks

I2NAINTCps

1    from now.   Thank you, counsel.

                              o0o

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25