

**Via ECF**  March 15, 2018

The Honorable Paul A. Engelmayer
United States District Court, Southern District of New York
40 Foley Square, Room 2201, New York, NY 10007

Re:    *In re: Interest Rate Swaps Antitrust Litigation*, No. 16-MD-2704 (PAE)

Dear Judge Engelmayer:

I am the General Counsel for Tradition America LLC ("Tradition").  Tradition has received two non-party subpoenas, one from the Class Plaintiffs ("Plaintiffs"), and the other from the eleven Bank Defendants by way of JPMorgan Chase ("Defendants"). Tradition has timely presented its Objections to each subpoena.  Plaintiffs have now submitted a letter to the Court, dated April 9, 2018, to which we are compelled to respond.

Regrettably, Plaintiffs' statements to the Court are a departure from the facts.

**Summary**:  Tradition, a non-party to this case, has been served with two subpoenas that cumulatively demand production of documents of a magnitude that is without precedence. Tradition has labored diligently from the outset to respond to the subpoenas.  Tradition has spent hundreds of hours of personnel time, has had to hire outside vendors, has had to ask for assistance from the National Futures Association ("NFA"), and has had to retain outside personnel, all to help in addressing the issues extant.  There is rarely a day that goes by without significant work being done in this matter.  In these past several weeks alone, we have already had 93 lengthy and significant communications with the parties, in addition to telephone conferences and in-person meetings. The negative impact to Tradition's business has been <u>substantial</u>—notwithstanding that it is a non-party with no stake in this litigation.

Second, as we repeatedly informed Plaintiffs, by employing an outside vendor to help with part of this extraordinary retrieval of so much data and information, Tradition has already extracted 2,677,000 pages of narrative as part of 55,000 emails in response to merely one of Plaintiffs' demands—the essence of their present grievance to the Court.  We have meticulously sampled the emails in each category of Plaintiffs' search term and, <u>as we demonstrated in precise detail to Plaintiffs</u>, **not one of the samples yielded any information remotely related to the instant litigation**.[1]  Plaintiffs have steadfastly refused to narrow their proposed terms.

Third, we have produced thousands of documents to Defendants and are working daily with Defendants to create special mechanisms to be able to deliver electronic pricing and transaction data since 2010.  In respect to a single demand alone, we need first to design a methodology capable of extracting from old technologies and metallic data storage tapes whatever data has been stored that may be relevant to this litigation (with respect to IRS data prior to the Tradition SEF).  To the extent located and extracted, this data, along with more

---

[1] The terms employed by Plaintiffs (e.g. "penalty box", "javelin", "tera", "name give-up" etc.), yield discussions about the soccer penalty box, hockey  penalty box, the lacrosse penalty box, ancient Greek Javelin throwers, Olympic Javelin events,  in addition to the words, such as "tera," being part of other formulations in industry news publications (e.g. bila**tera**l, **tera**-joule, coun**tera**ct, and **Tera**'s Whey – a vitamin).

recent data, then has to be converted into a more modern technology capable of searches and capable of consolidating only IRS pricing parameters, as requested by the Defendants, and then ultimately into an electronic spreadsheet. In addition, we then have to code the lines of data so the parties can understand the information. To our knowledge, this type of effort has never been done to this extent and so we are all attempting to navigate in unchartered waters.[2]

**Tradition**:  As we informed Plaintiffs in response to their surprising comments to the Court on March 19, Tradition is arguably the oldest broker-dealer in the country, tracing its roots to the 1880's. In the entire long history of our group, Tradition has never been found to have violated its document retention or production obligations.[3] We take our responsibilities seriously.

Nevertheless, Plaintiffs more than suggested to the Court some admission of potential impropriety arising from the voluntary pro-forma notice we sent to all our regulators and all lawyers and other relevant persons who have asked for information from Tradition or otherwise served subpoenas on Tradition; we informed each of them that we would be consolidating our offices and computerized facilities. That effort, carefully monitored by the CFTC, NFA, SEC and FINRA, naturally would result in limited abilities to respond to broad data requests while the transition is occurring and shortly thereafter. It is also logical to envision that antiquated data residing on one set of computers may have issues in conversions into modern technologies. No matter how meticulous and scrupulous we are, we must be cognizant of the possibility of unforeseen and unintentional mistakes or problems, just as any other relocation may cause scratches to the furniture no matter how well wrapped the pieces may be. Accordingly, we felt it appropriate and fair to provide advance notice to all parties so that they do not delay in addressing their data needs. Of some 40 lawyers and governmental bodies who received this same exact notice, only the Plaintiffs here have taken issue with this courtesy notice and suggested some potentially improper activities. Rather than moving promptly to address their needs, Plaintiffs have instead chosen to squander valuable time and launch invectives.

**Status**: We have attempted, several times, to obtain from Plaintiffs reasonable assistance to manage this unprecedented data retrieval. Some of the more salient issues are:

1. *The 2,677,000 data pages in the 55,000 emails.* As recent as last week we requested of Plaintiffs to help: "Dear Mr. Eisenkraft: We have not heard from you in any respect and especially with regards to our inquiries remaining outstanding since February 13 and March 8, repeated again subsequently and most recently on March 23. As you can imagine, amongst other things we are waiting from you, the absence of any reasonable input (or any input whatsoever) as to what to do with the approximately 2,677,000 pages of narrative or other data relative to the emails we have pulled (55GB of computer space), is causing an encumbrance upon our email servers and their daily functions. We again urge you to consider our requests made as early as February 13 to narrow the field of possible information." We also informed Plaintiffs: "We are

---

[2] Because the IRS pricing data transmitted to Tradition since the creation of the SEF has been done electronically, Tradition ordinarily receives 30 prices per second each day from each customer. In any given day, Tradition receives 30 prices x 60(seconds) x60 (minutes) x10(hours/day) x 11(Bank Defendants) =11,880,000 prices each day potentially relevant to this litigation. Among many other requests, the parties desire 6 years of Tradition electronic data or approximately 11,880,000 x 1365 working days (approximate) = 16,216,200,000 bids/offers. Nothing like this has ever been done before and this is merely one category of many sought of a non-party.

[3] Tradition has received awards as the leading SEF in the country, and has been involved with Congress and the CFTC in designing regulatory frameworks, compliance logistical processes, and clearing or other trade processing mechanisms.

Page | 2

hopeful that you will finally either revise the terms to be more specific, or present context or other means to focus the results (if any) to matters concerning this litigation.  **We also reiterate what we have offered since our initial communications, that you can designate at your cost any law firm not conflicted (i.e. that has fiduciary obligations to us) to address with you the reduction of the overwhelming majority of irrelevant information to what is relevant, assuming any exits**." Plaintiffs have offered no assistance.

*2. Plaintiffs assertions that our obligations to them arose prior to the Subpoena.*  We requested of Plaintiffs: "We remain waiting for you to address our repeated inquiries to you quoted here again from my prior reminder of March 8:  'does your side contend in any way that whatever you believe Tradition's duties are, that any of them arose at any moment prior to service of the Subpoena at issue?  This is a yes or no question.  If the answer is in the affirmative, we must insist on immediate support for such a contention and the date upon which you contend any such obligation ripened or even arose'." Plaintiffs have offered no assistance.

*3. Plaintiffs embellished claims of reaching agreements with other IDB's.* We requested of Plaintiffs:  "As I reminded you also on March 8, '[w]e are still waiting, since mid-February, for any evidence supporting your assertion that you have entered into or about to enter into agreements with 'similarly situated entities we have subpoenaed' and that those agreements evidence positions that are materially different than what Tradition has informed you.'  You have now [only] referenced BGC and GFI, which you neglected to mention [to the Court] are in fact one commonly owned enterprise and is materially different from us.  In any event, not only have you not provided any proof of any agreement with BGC/GFI, even your allegations reveal that what they are claimed to have agreed to is narrower than what we are doing as identified above." Plaintiffs have offered no assistance.

*4. Plaintiffs unsupported allegation that Mr. Fitzpatrick of Tradition made certain public comments.*  We requested of Plaintiffs:  "Your allegation that Tradition is 'implicated' in anything is without a shred of merit.  Your citations to the Pleading upon which you base that statement reveals, beyond cavil, that there is no claim that Tradition is 'implicated' in anything.  Indeed, we have repeatedly asked you for any proof of your claim that Scott Fitzpatrick or anyone else at Tradition has made any statements that may be relevant to your case, and you have provided nothing so far." Plaintiffs have offered no assistance.

As these issues, and others, unfortunately appear to require Court assistance, we respectfully ask for an informal conference pursuant to Rule 2(C) of this Court's Individual Rules.  We wish to stress that I am the only in-counsel for Tradition and the exceptional work required to meet multiple unreasonably broad demands, may cause Tradition financial damage and may require the lay-off of personnel to save costs to subsidize this unprecedented effort.

Respectfully submitted,

/s/ Chaim Levin

Tradition America LLC
New York, NY  10007
Fax: 212 791 6473

255 Greenwich Street, 4th Fl
Tel:  212 791 4500
www.tradition.com

cc via email: Michael Eisenkraft (counsel for Class Plaintiffs)