June 20, 2018

**Via ECF**

The Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

Re:   *In re: Interest Rate Swaps Antitrust Litigation*, No. 16-MD-2704 (PAE)
        *This Document Relates To All Actions*

Dear Judge Engelmayer:

Pursuant to Order No. 32 (Dkt. No. 403), Counsel for Plaintiffs and Defendants jointly submit this letter to provide the Court with responses to the Court's inquiries.

**Question No. 1**

*Does any party intend to move to bring the new case within the MDL?  If so, by what means and on what timetable.  Does any party expect to oppose such consolidation?*

**Plaintiffs' Response:**
Pursuant to Order No. 1 (Dkt. No. 11), this Court ruled (on pp. 1-2) that "[a]ny 'tag-along' actions later removed or transferred to this Court, or directly filed in the Southern District of New York, will automatically be consolidated with this action without the necessity of future motions or orders."  Rule 7.2(a) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation provides as follows:  "Potential Tag-alongs in the Transferee Court.  Potential tag-along actions filed in the transferee district do not require Panel action.  A party should request assignment of such actions to the Section 1407 transferee judge in accordance with applicable local rules."  Given the Court's Order No. 1 and Rule 7.2(a) of the Multidistrict Litigation rules, plaintiffs do not believe that further MDL Panel action is required in order to bring the new case within the MDL.

However, to the extent the Court believes otherwise, plaintiffs will comply with whatever procedure the Court deems appropriate.

**Defendants' Response:**
Defendants respectfully submit that the trueEX action should be consolidated with the MDL cases for purposes of discovery to protect defendants from the burdens of duplicative discovery, particularly duplicative depositions of defendants' current and former employees.  Defendants agree that the Court can order such consolidation under Rule 42(a), consistent with Rule 7.2(a) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation.

**Question No. 2**

*Do the claims by TrueEx differ in any material way from those by Javelin and Tera? In what way or ways would the addition of TrueEx as a plaintiff (as opposed to a third party) affect discovery in this case?*

**Plaintiffs' Response:**
Pursuant to its Opinion and Order dated July 28, 2017 (Dkt. No. 237), this Court held (at pp. 64-65) that "[t]he allegations reviewed above, viewed as a whole, plausibly allege a group-boycott conspiracy among Dealer Defendants between 2013 and 2016 aimed at the three new platforms [Javelin, Tera and trueEX], in violation of Sherman Act § 1." While the claims of trueEX in its new Complaint are similar to those sustained by the Court, the Dealer Defendants continued their group boycott against trueEX well into 2017 and 2018. Unlike Javelin and Tera, both of which were forced out of the IRS business, trueEX has continued to develop and market an IRS trading platform. For example, the trueEX Complaint alleges that four of the Dealer Defendants – after extended delays in signing basic legal documents required to "on-board" the trueEX IRS platform – separately contacted trueEX within days of each other in July 2017, suddenly indicating their intention to sign those legal documents. *See* trueEX Complaint ¶¶ 3, 190. Now, however – almost one year later – those same four Dealer Defendants (as well as the other Dealer Defendants) still have not on-boarded the trueEX platform for new IRS trades in Dollars, Euros and Sterling, making it now evident that the Dealer Defendants were just stringing trueEX along. The trueEX Complaint contains detailed allegations that this boycott continued into 2017 and 2018. *See, e.g.,* Complaint ¶¶ 135-205.

Given the continuing nature of the boycott, trueEX plans to seek limited document discovery during the period 2017-2018 (but will accept the existing document production for the earlier 2010 to 2016 period). We expect the requests covering this 2017-18 period will be targeted to trueEX-specific issues, and we do not see why this additional discovery would require any change in the existing case schedule. The Class Plaintiffs, for their part, do not object to limited, trueEX-specific document discovery in 2017 and 2018 so long as it does not slow down the pace of existing discovery or require an extension of the deadlines.

Defendants presumably will want documents from trueEX. Once trueEX receives defendants' document requests, it is willing to work with defendants in an effort to make documents available on an expedited and rolling basis over the next several months.

With respect to depositions, we are operating on the assumption that fact witnesses should be deposed only once. We are thus willing to work in good faith with defendants to attempt to ensure that any supplemental document productions will not cause a breach of this principle. Class Plaintiffs likewise are willing to embrace this principle, but must reserve the right to re-evaluate down the road to ensure that they get timely and full discovery needed for class certification.

Finally, defendants "incidentally" reference below a purported inconsistency between an allegation made by Tera in its Complaint and what defendants contend the "documents that Tera and defendants now have produced in discovery." Of course, that has nothing whatsoever to do

with trueEX's new Complaint, but defendants reference it anyhow.  Suffice to say, plaintiffs deny defendants' characterization of the issue and have addressed it in the discovery letter submitted yesterday to the Court.

**Defendants' Response:**

Although trueEX repeats the same theme from the earlier-filed complaints—that defendants boycotted the trueEX trading platform to prevent the emergence of anonymous all-to-all IRS trading—the trueEX complaint is materially weaker than the prior complaints in several respects. First, as to several of the dealers, trueEX has made no substantive allegations *at all* that they did anything to obstruct or hinder trueEX's trading platform.  As to the remaining dealers, trueEX does not allege any communications among the dealers about trueEX, but rather mainly alleges that each dealer gave trueEX "the runaround," which this Court already has held is insufficient to plead a conspiracy claim.  *See In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 483 (S.D.N.Y. 2017).  The trueEx complaint thus lacks factual allegations creating a plausible inference of collusion among the dealers, instead pleading facts that show unilateral decision-making by individual dealers about trueEx's platform.  Second, trueEX's complaint omits several of the key allegations of "strikingly similar" tactics on which this Court relied in sustaining the post-2013 claims of the prior complaints.  *Id*. at 473.  Perhaps most conspicuously, the trueEX complaint omits the allegation that this Court characterized as "most telling"—that four defendants contacted Tera on the exact same day demanding to "audit" its rulebook.  *Id*. at 475; *see also* ECF No. 390 at 7 ("Strikingly, the SAC alleged parallel ruses by four Dealers towards Tera the day after Tera's first IRS trade.").  That allegation, incidentally, is inconsistent with documents that Tera and defendants now have produced in discovery.  Third, the trueEX complaint contains key admissions that were absent from the prior complaints, including that multiple defendants trade on trueEX's platform and stream live quotes to its anonymous all-to-all order book.  Finally, trueEX's vague allegation that four defendants contacted it "within days of each other in July 2017" is no substitute for the allegations of "strikingly similar" parallel conduct that trueEX has omitted from its complaint.  Indeed, trueEX's own complaint suggests that the alleged communications may have been triggered by its achievement of a key ruling its litigation against MarkitSERV at that time.  (Compl. ¶ 190.)

With respect to the scope of discovery, the principal difference between the trueEX complaint and the other complaints is that trueEX makes the facially implausible allegation that the purported boycott conspiracy continued *through May 2018* notwithstanding the pendency of the prior complaints and an industry-wide CFTC investigation.  Thus, whereas Tera, Javelin, and the class plaintiffs have sought custodial document productions only through December 2016, trueEX has stated that it will seek such productions extending through the filing of its complaint based on allegations unique to it during the 2017-2018 time period.  To date, however, trueEX has not served any document requests or made a formal proposal.

**Question No. 3**

*Does any defendant presently expect to move for dismissal of any of TrueEx's claims?  To the extent that there may be arguments that the statutes of limitations applicable to particular claims apply differently to TrueEx than to Javelin and Tera given, inter alia, the later filing date of TrueEx's complaint, at what point in these proceedings are such arguments most productively resolved?*

**Defendants' Response:**
Defendants currently anticipate that they will move to dismiss the trueEX complaint under Rule 12(b)(6), including for the reasons identified above in response to Question No. 2. Defendants' motion will be directed at the specific allegations in trueEX's complaint concerning trueEX's platform.  Defendants do not expect to seek a stay of discovery pending a ruling on that motion, at least as to the July 2010 through December 2016 timeframe for which discovery is already underway in the MDL actions.  In addition, defendants have asked trueEX to consider stipulating that the applicable statutes of limitations were not tolled before the filing of its complaint and that claims arising before June 14, 2014 therefore are time-barred.  If no such stipulation can be reached, defendants believe that statute of limitations issues should be addressed at the motion to dismiss stage.  Early resolution of this issue could significantly affect expert discovery and the scope of the issues addressed in any subsequent summary judgment motion.

**Plaintiffs' Response:**
Given that the Court already has considered substantially similar issues and, last July, rendered a lengthy decision on defendants' prior motion to dismiss, plaintiffs consider it a waste of judicial resources, and the parties' resources, to have the Court again consider a new motion to dismiss, now directed to the new trueEX Complaint.  The Court's question leaves open the possibility that such issues may be more appropriately addressed at the summary judgment stage, and plaintiffs would agree with that suggestion.

However, in the event that the Court is inclined to entertain defendants' proposed motion to dismiss, plaintiffs (i) agree that discovery should not be stayed, and that briefing should occur in parallel with discovery, and (ii) respectfully submit that briefing should be limited to issues that the Court has not previously considered.


**Question No. 4**

*What steps can the Court and parties take to assure that the addition of TrueEx to this litigation, should it occur, does not disrupt the existing schedule?*

**Plaintiffs' Response:**
As mentioned in response to Question 2, trueEX's limited document discovery for 2017-2018, and defendants' (presumably) forthcoming document requests to trueEX, should be able to be accommodated within the existing case schedule.  trueEX anticipates proposing limited search terms and lists of custodians that are much less numerous than the agreed-upon custodians for

4

the 2010-2016 discovery period.  Plaintiffs do not see any reason why it should take defendants several months to produce documents focused on trueEX's 2017-2018 claims.  Regarding depositions, as stated previously, we will make every effort to ensure that any supplemental document productions will not result in a witness having to be deposed more than once.  Plaintiffs cannot agree to defer critical depositions until later in the fact discovery period or after class certification begins, as defendants suggest, but believe that the narrow discovery sought by trueEX will largely avoid this problem.

Defendants' final paragraph below quotes two snippets from the transcript of oral argument on the motions to dismiss to suggest that "trueEX waited over two-and-a-half years" "before electing to join the litigation." Defendants' assertion is not correct, and is not supported by a full reading of pages 109-110 of the transcript.  In response to the Court's inquiry as to why trueEX was not a plaintiff, Mr. Ogden responded candidly that "I cannot tell you" and "I have never communicated with them."  See Hrg. Tr., ECF No. 233, at 109.  Mr. Ogden will be participating in the court conference call on June 21, and can respond to any questions the Court may have on that subject.

**Defendants' Response:**
Defendants plan to serve document requests, a list of proposed custodians, and a list of search terms on trueEX by the end of this week.  To facilitate a prompt agreement with trueEX on the scope of its document production, defendants have asked trueEX immediately to provide organizational charts, Rule 26(a)(1) initial disclosures, and its own list of proposed trueEX custodians.

Defendants agree that they should not be required to produce any additional documents with respect to the 2010-2016 discovery period in the existing MDL actions beyond defendants' prior or ongoing productions in those actions.  Defendants reserve the right to oppose any requests for additional documents from the 2017-2018 time period.  Because defendants have not even begun to collect documents from 2017-2018, defendants may require several months to make responsive productions even to requests that are limited to the specific allegations in trueEX's complaint about post-2016 communications.

Defendants also respectfully request that the Court order that depositions in these actions be coordinated such that witnesses are deposed only once.  If trueEX is permitted to take additional document discovery and requires "several months" to produce its own documents, coordination of common depositions in these actions may require that the depositions of certain witnesses be deferred until later in the fact-discovery period.

Although defendants will do their utmost to accommodate trueEX with a minimum of disruption to the existing schedule, defendants emphasize that it is trueEX—not defendants—that created a potential problem here.  According to comments made by counsel for Tera and Javelin at the motion to dismiss hearing on May 23, 2017, trueEX was consulted about these actions when they were first filed, but elected not to join the litigation at that time.  See, e.g., Hrg. Tr., ECF No. 233, at 109 ("It is my understanding that there were some conversations with TrueEX.") id. at 110 ("For their own reasons, which I don't know, [trueEX] made the choices they made.")

5

Instead, trueEX waited over two-and-a-half years after the filing of the original complaint in these actions in November 2015 before electing to join the litigation. Defendants reserve their right to seek adjustments to the schedule to the extent that adjustments prove necessary to protect their ability to investigate and defend this case.

Respectfully submitted,

| | |
|---|---|
| /s/ Daniel L. Brockett and Michael B. Eisenkraft[1] <br> Daniel L. Brockett and Michael B. Eisenkraft <br> Counsel for Class Plaintiffs | /s/ Adam S. Hakki[1] <br> Adam S. Hakki <br> Defendants' Liaison Counsel |
| /s/ William A. Maher and Thomas P. Ogden <br> William A. Maher and Thomas P. Ogden <br> Counsel for Javelin and Tera Plaintiffs | |

---

[1] Electronic signature provided with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions