June 27, 2018

**Via ECF**

The Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

Re:   *In re: Interest Rate Swaps Antitrust Litigation*, No. 16-MD-2704 (PAE)
       *This Document Relates To All Actions*

Dear Judge Engelmayer:

Pursuant to the Court's instructions during the June 21, 2018 telephone conference, Counsel for Plaintiffs and Defendants jointly submit this letter to address the parties' meet-and-confer process.

**Plaintiffs' Position:**

During the June 21 telephone conference with the Court, Your Honor proposed "a fair way to meet in the middle here as to these collected issues that allows us to move forward without trueEX's addition to the case disrupting us." *See* 06/21/18 Hearing Tr. at p. 27, attached hereto as Exh. A. The Court proposed that (i) defendants forego a motion to dismiss trueEX's Complaint, and (ii) trueEx be permitted discovery of two custodians per defendant for the 2017-18 time period. *See id*. at 27-31. In response to the Court's proposal, trueEX's counsel made clear that, in an effort to limit potential burden, trueEX already had independently considered proposing very narrow search terms (limited to "trueEX" and some of its senior officers and employees) and, in light of those very narrow search terms, requested that trueEX be permitted document discovery of more than 2 custodians per defendant. *Id*. at 31-32.[1] The Court appeared to welcome trueEX's proposal and willingness to focus its discovery, *id*. at 32-33, and directed the parties to "meet and confer" and report back to the Court.

That same day, plaintiffs sought to schedule such a "meet and confer" but defendants advised that they were first available on Monday, June 25. In the meantime, defendants requested that trueEX provide organizational charts for the period 2010-2018 by Friday, June 22, in advance of the "meet and confer," and trueEX complied. trueEX similarly requested defendants' organizational charts for the relevant trading areas of each defendant for a much smaller period of time (*i.e.*, 2017-18 only), but defendants (other than defendant RBS) failed to comply. (Yesterday, a few other defendants (Citibank, JPMorgan and UBS) started to provide some organizational charts as they knew this letter would be submitted to the Court.[2])

---

[1] trueEX's initial search term proposal is attached as Exhibit B.

[2] But even these defendants are attempting to designate their organizational charts as "Highly Confidential" – the equivalent of trade secrets – in order to prevent us from consulting with our clients about the charts to select custodians.

During the June 25 meet and confer, defendants advised plaintiffs that they had not made a "final" decision, but likely would be filing a motion to dismiss trueEX's Complaint, which would contravene the first part of the Court's "mediator's proposal." *Id.* at. 30.

With respect to document production for the 2017-18 time period, defendants took the position that they were entitled to extensive document discovery of trueEX – defendants (i) served document requests containing **136 separate requests** (many with numerous sub-parts), (ii) forwarded **312 proposed search terms**, and (iii) requested **15-19 trueEX custodians**.  In order for the Court to understand the breadth of the document discovery defendants are seeking of trueEX for the 2017-18 time frame, plaintiffs attach defendants' document requests and proposed search terms hereto as Exhs. C & D.  Defendants also took the position during the meet and confer that trueEX was limited to two custodians – even taking into account the extremely narrow search terms that trueEX had proposed – but that, if trueEX would negotiate individually with each of the 11 defendants, a particular defendant *might* agree to increase that number of custodians by one or two – to three or four custodians in total.  In short, defendants were proposing massively disproportionate document discovery for the 2017-18 time period – extensive document discovery by defendants of trueEX, and extremely limited document discovery by trueEX of defendants.  If anything, trueEX requires more discovery of defendants as, by definition, defendants' conspiracy to boycott trueEX was conducted secretly, and was known only to defendants, so only defendants' documents will reveal proof of the conspiracy alleged.

Given these circumstances, plaintiffs require the Court's guidance with respect to the scope of discovery for the 2017-18 time period, and whether it was intended to be substantially equivalent for both sides.  If there is no limitation on the scope of discovery permitted defendants for the 2017-18 time period, plaintiffs respectfully submit that there should be no limitation on the scope of discovery permitted trueEX either.  Alternatively, if the Court is seeking to limit the scope of discovery for the 2017-18 time period, plaintiffs respectfully submit that the scope of discovery should be substantially equivalent for both sides and defendants' voluminous document discovery requests for 2017-18 should be withdrawn.  If the Court will clarify this threshold issue, perhaps the parties will have more success in the "meet and confer" process prospectively.  In the meantime, plaintiffs respectfully request that the Court direct defendants to produce organizational charts for their rates, fixed income, eTrading, and strategic investments divisions (or, if unavailable, substantially similar information) for the 2017-2018 time period (designated simply "Confidential") in advance of any future "meet and confer" process, so that trueEX can select the most appropriate document custodians for each defendant.

Defendants' lengthy response below seeks to obfuscate the central issue of whether, for the 2017-18 time period, the Court will allow substantially equivalent discovery for trueEX and for defendants.  Whether defendants' document requests to trueEX for the earlier 2010-16 time period are appropriate, or overbroad, has nothing whatsoever to do with that issue.  Defendants' effort to blame trueEX's counsel for failing to "negotiate" further for the 2017-18 time period is misguided when defendants' proposed starting point for the "negotiation" is an uneven playing field in which defendants are entitled to extensive document discovery for 2017-18 (because the Court did not address that issue during the June 21 telephone conference) and trueEX is entitled to very little.  Once defendants made that position clear during the June 25 "meet and confer" conference call, trueEX's counsel stated that he needed Court guidance on that threshold issue.

2

Since that time, defendants have sought to create the misimpression that trueEX is delaying progress by failing to designate custodians, without defendants conceding how many custodians per defendant trueEX is entitled to search (2, 3, 7, 9 or 15), and without providing organizational charts (as trueEX did) showing that defendants' relevant personnel and titles for the 2017-18 time period so that trueEX can select the appropriate custodians.  Moreover, the vast majority of the burden associated with document review relates to the attorney time spent reviewing documents before producing them, not the loading of documents onto a review platform.  In this regard, defendants' asymmetrical document discovery demands of trueEX for the 2017-18 time period creates a massive potential burden on trueEX, but not for defendants.

Finally, defendants' reference below to a draft trueEX complaint being forwarded to defendants on May 31 (*i.e.*, 14 days before trueEX filed its lawsuit) is (i) improper as it was expressly provided to defendants for settlement purposes only and subject to Rule 408 of the Federal Rules of Evidence, and (ii) irrelevant as the Wollmuth firm did not represent trueEX during the prior May 20 conference call with the Court (as trueEX was not part of the case) and was not authorized to disclose to the Court or defendants a position that trueEX had not made nor decided upon.

**Defendants' Position:**

Whereas defendants have moved quickly to identify the discovery they will need from trueEX, trueEX has delayed progress and manufactured obstacles.  Defendants urgently need trueEX to propose a list of custodians whose documents it will seek in the 2017-2018 period so that defendants can begin the laborious task of retrieving those custodians' electronic documents.  trueEX nonetheless refuses to identify its requested custodians and abruptly broke off the parties' June 25 meet-and-confer on that subject after only thirty minutes.  Counsel for trueEX advised that, rather than continuing the meet-and-confer process, they preferred to seek a "ruling" on their contention that defendants are seeking discovery from trueEX that is "disproportionate" to the discovery defendants are offering.

trueEX's position rests on a false attempt to equate the parties' positions.  Defendants have nearly completed document productions for the pre-2017 period and now face the burdensome task of undertaking *another* collection and production from scratch.  trueEX, by contrast, has yet to produce a single document.  Moreover, trueEX—as the allegedly boycotted platform—has a far greater number of relevant custodians than any single defendant.  Finally, trueEX—not defendants—is the party that waited over two-and-a-half years before electing to join this litigation at the point of maximum disruption.  As further explained below, the "ruling" that trueEx requests should be denied, and trueEX should be directed to resume the meet-and-confer process and identify its requested custodians by the end of this week.

1. Defendants' Discovery to trueEX

In an effort to keep this litigation on schedule, defendants have moved as quickly as possible to inform opposing counsel of the discovery they seek from trueEX.  On Friday June 22, 2018, defendants served a set of document requests and search terms on trueEX similar to those that were served on Tera and Javelin.  In addition, on Monday June 25, 2018, defendants served

3

trueEX with a list of 15 proposed trueEX custodians.  By comparison, Tera and Javelin agreed to 12 and 15 custodians, respectively, even though their trading platforms were far smaller and far less successful than trueEX's platform.  Defendants stand ready to meet and confer about any concerns that trueEX may have about defendants' requests.

trueEX nevertheless objects that the discovery that defendants have served for the *entire* period running from 2010 through 2018 is disproportionate to the discovery that trueEX seeks from defendants for the *supplemental* period running from 2017 through 2018.  That objection ignores fundamental differences in the parties' positions.  Defendants have already produced over a million documents in this litigation, including vast numbers of documents that hit on trueEX-related search terms.  In addition, by the end of this week, defendants will substantially complete their document productions to Tera, Javelin, and the class plaintiffs.  As a result, trueEX needs no additional documents from defendants for the pre-2017 period and at most requires a narrow supplemental production keyed to the allegations that trueEX makes in the 2017-2018 period—allegations that do not even implicate many of the defendants.

In contrast to defendants, trueEX has yet to produce any documents.  Moreover, trueEX will not be subjected to the burden of making a *second* collection and production of documents following on the heels of a voluminous initial production.  Instead, trueEX will be able to collect, search, review, and produce documents covering the entire 2010-2018 period *at one time*.  trueEX's discovery obligations therefore simply are not comparable to defendants' obligations.  Furthermore, even if one were to indulge trueEX's attempt to equate the parties' positions, trueEX's claims of disproportionate discovery still would be meritless.  As discussed below, whereas defendants have requested 15 custodians from trueEX (only nine of whom were still with trueEX after 2016), defendants have offered trueEX *at least* 33 custodians in the 2017-2018 period—three custodians per defendant—and have expressed a willingness to meet and confer about any alleged basis that trueEX might have for requesting additional custodians.  This offer comes on top of the 150-plus custodians for whom defendants have produced documents in the pre-2017 period.  trueEX's claim of "disproportionate" discovery is further undermined by the fact that the discovery served on trueEX is no broader than the discovery served on Tera and Javelin—and narrower than the discovery that Tera and Javelin served on defendants.

Finally, trueEX studiously ignores that it is trueEX—not defendants—that elected to join this litigation "almost maximally at the point of greatest disruption."  6/21/18 Tr. 27:8-11.  trueEX was well aware of the filing of the initial complaint in this litigation in November 2015, but nonetheless elected to sit on the sidelines for over two-and-a-half years before filing its own complaint.  Moreover, the Wollmuth firm doubtless knew that trueEX intended to join this litigation at the time of the May 20, 2018 teleconference with this Court:  Wollmuth was representing trueEX by April (6/21/18 Tr. 24:20-25:6) and sent each defendant a 125-page draft of a trueEX complaint only 10 days after the May 20 conference.[3]  Wollmuth nevertheless stayed

---

[3] Contrary to trueEX's suggestion, the fact that trueEX's counsel marked their draft complaint "for settlement purposes" does not bar defendants from disclosing the timing of that communication.  FRE 408 is a rule of evidence, not disclosure, and defendants have not cited the draft complaint "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction."  Fed. R. Evid. 408.

silent at the May 20 conference when this Court asked whether there were any other issues that warranted the Court's attention.

### 2. trueEX Discovery to Defendants

Although defendants have moved expeditiously to inform trueEX of their discovery requests, trueEX has done the opposite. Before defendants can begin working on a supplemental document production, they must carry out a brand new collection and retrieval of electronic documents for the 2017-2018 period. That process is time-consuming, costly, and laborious, and it cannot even begin until the parties agree on a set of custodians. Accordingly, on June 18, 2018, defendants asked trueEX to identify its requested custodians for the 2017-2018 period—something that trueEX is "well situated" to do as a result of defendants' prior productions. 6/21/18 Tr. 30:23-31:2. Although this Court suggested that two custodians per defendant should be sufficient given the voluminous productions that defendants already have made, defendants have offered (i) to designate at least three custodians per defendant and (ii) to engage in individual meet-and-confers to the extent that trueEX believes it needs more custodians from a given defendant.

Rather than engaging in a dialogue about its requested custodians, trueEX unilaterally terminated the parties' discussions after a thirty-minute call on Monday and informed defendants that it would apply to the Court for a ruling on its contention that defendants are requesting discovery "disproportionate" to the discovery that defendants are offering. trueEX thus has yet to identify a single custodian whose documents it will be requesting, effectively paralyzing defendants' ability to begin collecting and reviewing documents from the 2017-2018 period.[4]

trueEX took the position during the thirty-minute Monday conference that if defendants intend to ask for 15 trueEx custodians to cover the entire discovery period, then trueEX is entitled to seven to nine custodians per defendant—about ninety custodians in all—to cover the 2017-2018 period. That position is plainly unreasonable. As noted above, there is no equivalence between the parties because defendants have already made substantial document productions, trueEX will be making a single seamless production for the entire discovery period, and trueEX elected to wait until the point of maximum disruption to join this litigation. In addition, the number of trueEX custodians who dealt with any one of the eleven defendants far exceeds any single defendant's custodians who dealt with trueEX. And, perhaps most importantly, the more supplemental custodians that trueEX seeks from defendants, the longer it will take defendants to collect, review, and produce their documents, and the greater will be the impact on the schedule.

trueEX fares no better with its suggestion that it has requested only a narrow set of trueEX-related search terms. As an initial matter, defendants expect that those search terms will

---

[4] Even prior to Monday's meet-and-confer, trueEX demonstrated that it was committed to seeking judicial intervention rather than negotiating. trueEX counsel had already sent multiple emails threatening to bring defendants' supposed lack of cooperation to the Court's attention as a result of defendants' inability to produce organizational charts on a *Saturday* following trueEX's Thursday afternoon request for such records.

yield a vast number of hits in the 2017-2018 period because the terms contain no meaningful limiters and, by 2017, virtually all defendants were either supporting trueEX as to clearing and/or trading or negotiating with trueEX about providing such services. In any event, defendants cannot even *test* how many hits the proposed search terms will generate unless and until trueEX identifies its requested custodians, which it refuses to do.

trueEX's assertion that it cannot identify custodians without a supplemental production of organizational charts from each defendant is equally unavailing. First, as defendants have explained, most of them do not have readily-available organizational charts. Second, trueEX's counsel already possess an enormous amount of information about defendants' custodians as a result of defendants' document productions, earlier rounds of custodian negotiations, and trueEX's business dealings with defendants. Third, to the extent that trueEX truly does not know who occupied particular roles or positions within defendants' IRS units (which is not asserted in trueEX's letter), defendants have offered to identify those individuals upon request. Fourth, trueEX's request for organizational charts for defendants' "rates, fixed income, eTrading, and strategic investments divisions" extends far beyond defendants' IRS personnel and is therefore grossly overbroad. Finally, although several defendants already have produced or created supplemental organizational charts or reporting information for trueEX, trueEx refuses to identify its requested custodians even as to *those* defendants. trueEX prefers instead to seek premature "rulings" from this Court on abstract questions uninformed by meet-and-confer negotiations about why it wants particular custodians.

trueEX should be directed to identify the custodians whose documents it wants by the end of this week. The parties can then meet and confer about whether *those particular custodians* are or are not justified rather than negotiating an arbitrary number of custodians in the abstract.

3. Motion to Dismiss

After giving the matter careful thought and attention, defendants have concluded that a motion to dismiss the trueEX action will have no impact on the pace of discovery in this action because (i) defendants will not seek a stay of discovery even as to the 2017-2018 period,[5] and (ii) trueEX has made clear that it would not reduce its discovery demands one iota if defendants were to forgo a motion to dismiss. Defendants have further concluded that a motion to dismiss the trueEX complaint has merit. Defendants therefore plan to move to dismiss as soon as practicable.[6]

Defendants believe a motion to dismiss has merit for several reasons. First, as to *numerous* defendants, trueEX has made no substantive allegations that they did anything to obstruct or hinder its platform. Indeed, the allegations against these defendants are even thinner than those that this Court rejected as insufficient with respect to HSBC in the Court's 2017

---

[5] Defendants do, however, reserve the right to object to trueEX discovery demands as appropriate.

[6] As in the past, defendants will work to consolidate their 12(b)(6) arguments in a single motion and supporting memorandum of law, with individual defendants supplementing the joint brief as necessary.

motion to dismiss ruling.  Second, as to the remaining defendants, trueEX has not alleged any inter-defendant communications or any parallel conduct suggestive of a preceding agreement.  Third, the trueEX complaint omits the key allegations on which this Court most heavily relied in sustaining the prior complaints, including the "Trojan Horse" and "off the mat" allegations and the allegation that four banks simultaneously demanded to audit Tera's rulebook.  trueEX's omission of these allegations is not an accident:  trueEX selectively reproduced *some* of the prior allegations regarding Tera and Javelin, but not the key allegations on which this Court relied.

*   *   *

For the reasons set forth above, defendants respectfully submit that trueEX should be directed to (1) identify the custodians whose documents it is seeking by close of business Friday, June 29th, (2) meet and confer with defendants regarding any custodian disagreements, and (3) serve Rule 26(a)(1) disclosures within seven days.

Respectfully submitted,

/s/ Daniel L. Brockett and Michael B. Eisenkraft[7]  
Daniel L. Brockett and Michael B. Eisenkraft  
Counsel for Class Plaintiffs

/s/ Robert D. Wick[7]  
Robert D. Wick  
For All Defendants

/s/ William A. Maher  
William A. Maher  
Counsel for Plaintiffs Javelin, Tera and trueEX

---

[7] Electronic signature provided with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions