July 17, 2018

<u>**Via ECF**</u>

The Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

Re:     *In re: Interest Rate Swaps Antitrust Litigation*, No. 16-MD-2704 (PAE)
        *This Document Relates To All Actions*

Dear Judge Engelmayer:

        Pursuant to Order No. 31 (Dkt. No. 389), Counsel for Plaintiffs and Defendants jointly submit this letter to provide the Court with a brief summary of recent developments and to identify the participants on the teleconference with the Court scheduled for July 19, 2018.

        **Recent Developments**

        ***Plaintiffs' Document Production***:  Chicago Teachers, LACERA, Javelin and Tera have all substantially completed their document productions.  trueEX and Defendants are currently negotiating search terms and other discovery parameters.  trueEX has already collected and processed emails of the 15 custodians identified by Defendants, which amounts to approximately 4.7 million documents after de-duplication.  In an effort to expedite its document review and production, on July 11 trueEX furnished Defendants with a hit count report demonstrating that Defendants' set of 312 search terms or strings hit on more than 2.9 million documents (or approximately 63% of the documents of trueEX's custodians).  trueEX also highlighted 24 terms/strings that were generating excessive hit counts and requested that Defendants propose modifications.  The next day, Defendants proposed modifications to their initial search term proposal.  trueEX is evaluating the new hit counts on Defendants' modified search term proposal and the impact of Defendants' proposed substitution of a custodian, and will be in a position to respond to those proposals shortly.  In the meantime, in order to further expedite its production, trueEX has already begun reviewing documents of the other 14 custodians selected by Defendants utilizing nearly all of Defendants' search terms, but reserves the right to object to those terms if Defendants significantly limit the search terms they will agree to use to search their own documents.

        ***Defendants' Document Production***:  Defendants have collectively produced approximately 1.3 million documents out of the 1.4 million responsive, non-privileged documents they previously anticipated producing.  Defendants have all informed Plaintiffs that they believe their productions of responsive, non-privileged documents were substantially complete as of the June 29 deadline.  On July 5, Deutsche Bank confirmed that it had substantially completed its productions but that due to an unforeseen document platform outage during the final week of June, portions of its final production of responsive, non-privileged documents remained in process.  Approximately 15,000 affected documents were produced on July 13 and a remaining approximately 14,000 documents will be produced on or before July 18.

RBS made an additional production of documents on July 12, representing about 20% of its total production. A significant portion of the new production includes calendar entries and documents that were produced in the course of RBS's ongoing privilege review, as well documents that were erroneously not included in the June 26 production.

Six Defendants have produced fewer than 100,000 documents each. As noted at the May 18 and June 21 teleconferences, Plaintiffs expected Defendants' productions to be much larger. Plaintiffs are very concerned about the volume of documents that have been marked non-responsive or that are being withheld on the basis of privilege. Plaintiffs believe that is particularly true given that several Defendants have produced a far lower proportion of their total search term-hit counts than other Defendants. Now that the substantial completion deadline has passed, Plaintiffs are conducting an analysis of inter-Defendant communications in order to identify more specifically any gaps that raise concerns regarding Defendants' document review protocols. Plaintiffs' believe that there are technical deficiencies in the metadata of Defendants' productions that have slowed Plaintiffs' efforts. Plaintiffs raised these alleged deficiencies with Defendants this past Friday, July 13, Defendants are investigating the issues raised by the Plaintiffs, and Plaintiffs will act with dispatch in raising any additional discovery issues. Today, Plaintiffs proposed a set of search terms they believe will generate new, unique documents based on reviews of documents that have already been produced.

trueEX and Defendants are also currently negotiating search terms and other discovery parameters for Defendants' review and production of documents. trueEX identified its initial set of requested custodians for the 2017-18 time period on July 6, nearly two weeks after Defendants did so but by the deadline set by the Court. That same day, trueEX also sent a proposal for search terms to Defendants, which was broader than the proposal trueEX attached as Exhibit B to the parties' joint letter to the Court on June 27, 2018 (ECF No. 414-2), which trueEX made as an initial proposal without prejudice and subject to an agreement with Defendants on proportionality and number of custodians, which was never reached. Defendants are working as quickly as practicable to respond appropriately to those terms and provide trueEX with hit counts. trueEX has offered to meet and confer to discuss search terms and address any burden issues demonstrated by Defendants' forthcoming hit count reports. Without a resolution on search terms, Defendants do not know which documents they should review and cannot reliably estimate the number of documents that will need to be reviewed. Defendants believe that this factor, combined with the time it takes to collect ESI (even on the expedited schedule Defendants have put in place here), will prevent Defendants from producing documents responsive to the trueEX requests before July 31. While Defendants have worked expeditiously to collect ESI, the July 31st deadline for completing production is not practicable given the considerable time necessary to collect, upload, and process electronic information before it is even searchable on vendor platforms.

*Privilege Logs***:** Chicago Teachers produced a privilege log totaling three entries within two weeks of achieving substantial completion; LACERA produced its privilege log with one entry on July 13; and, to date, Javelin and Tera will have each produced two privilege logs totaling 472 and 148 entries, respectively. Javelin and Tera are still reviewing and logging documents that were set aside as potentially privileged. While significant resources are being devoted to the process, it might extend beyond the end of July. To further expedite this process,

Javelin, Tera and trueEX (the "Platform Plaintiffs") propose an arrangement whereby (i) the Platform Plaintiffs are entitled to produce any and all discovery material without detailed, or any, review to determine whether any privilege or immunity from discovery applies to such material, (ii) the production by the Platform Plaintiffs of any such material that is protected by privilege shall not, by itself, constitute a waiver of any privilege, and (iii) if the Platform Plaintiffs notify any other party, at any time and for any reason, that specified material in its production is protected by privilege, then the specified material shall be treated as such and the claw back procedures of Section 12.2 through 12.5 of the protective order in this action shall apply. Defendants previously agreed that Plaintiffs may conduct an expedited review of certain categories of potentially privileged material without waiving any claw back rights, as contemplated by Section 12.5 of the Protective Order. This proposal would expand that prior agreement. Defendants only received the new Platform Plaintiff proposal today and are evaluating it.

Plaintiffs received initial, representative privilege logs from the Defendants containing approximately 20,000 entries across all Defendants. Plaintiffs raised certain concerns about each of those initial privilege logs in letters to the relevant Defendant. Defendants have responded to or are in the process of responding to Plaintiffs' letters, which Defendants believe are directed largely at the general level of detail provided by Defendants in their respective privilege logs rather than challenges to claims of privilege as to individual documents. Plaintiffs may be approaching impasse with Defendants with respect to threshold issues such as the level of detail in descriptions and Defendants' failure to identify recipients on email distribution lists, and will promptly raise such issues with the Court if the parties are unable to resolve such disputes

Two of the Defendants have produced their second privilege logs and three of the Defendants expect to produce their second privilege logs later this week. The remaining Defendants have produced only the initial privilege logs. At this time, all Defendants anticipate being able to complete their privilege reviews by the end of July, or soon thereafter.

***Depositions***: Plaintiffs want to commence depositions in August. To that end, Plaintiffs have provided each Defendant a list of three potential deponents each so that Defendants can ensure that Plaintiffs have time to review and challenge any privilege designations related to those deponents. Plaintiffs believe it is critical that the parties promptly resolve their disputes regarding Defendants' privilege logs to avoid dilatory productions that might require a witness to sit for an additional deposition. As discussed above, Defendants do not expect to need additional time beyond the end of July to complete their privilege reviews. Defendants believe that, unless warranted by currently unforeseen circumstances, witnesses should only be deposed once, and accordingly, any outstanding production (including for example phone log records that plaintiffs subpoenaed) or privilege issues related to a particular deponent should be resolved before that person is deposed. Further, to the extent that the witnesses selected by Plaintiffs also have been designated as custodians by trueEX, Defendants believe that document productions for those custodians should be completed before an individual is deposed.

Plaintiffs had previously indicated that they will need to take in excess of 100 depositions, which Plaintiffs believe is typical in an antitrust case of this magnitude. Defendants proposed on July 11 that Plaintiffs be limited to six depositions per Defendant. Plaintiffs have

not yet responded to this proposal, but believe it is not workable and is inconsistent with the number of depositions that has been allowed and taken in other financial market antitrust cases.[1] Defendants believe that their proposal is fully consistent with recent multi-defendant cases of similar magnitude.[2]  Plaintiffs are considering responses including using a range that acknowledges that the number of depositions may vary by Defendant.  Defendants remain willing to meet and confer regarding Defendants' proposals sent on July 11 and consider a counter-proposal.

Defendants are also interested in commencing depositions of Plaintiffs' witnesses in the near future, but currently expect that process may be delayed by Javelin and Tera's privilege reviews, which Javelin and Tera have indicated might extend beyond the end of July.

***Data Discovery*:**  Defendants sent a letter to Plaintiffs last week identifying alleged deficiencies in the transaction data produced by Chicago Teachers.  Defendants also submitted questions to Plaintiffs regarding LACERA's data production today.  Two Defendants were unable to produce transactional data by June 29.  Morgan Stanley had ongoing meet and confer discussions with Plaintiffs regarding its sample data set and, after reaching agreement on the scope of its data fields, produced transactional data on July 17.  RBS previously produced a sample data set to Plaintiffs on May 14 to help address any issues prior to its full data production.  Following a meet and confer process, Plaintiffs informed RBS on June 7 that it should proceed with preparation of the full transactional data production, which it did.  After the data was extracted, RBS identified certain technical issues that must be addressed before the data can be anonymized and produced.  RBS informed Plaintiffs of these issues on July 11.  RBS will continue to update Plaintiffs as more information becomes available.  The parties continue to discuss Defendants' redaction or anonymization of foreign counterparty information, as noted in the parties' June 19 letter.  Plaintiffs have requested that certain Defendants provide additional information that Plaintiffs believe are necessary to analyze the redacted or anonymized data.  Several of those Defendants have provided or plan to provide the requested information subject to individual discussions with Plaintiffs.  If the parties reach an impasse, they will raise the issue with the Court promptly.

---

[1]  *See, e.g.*, *In re Credit Default Swaps Antitrust Litig.*, No .13-md-02476, ECF No. 334 (S.D.N.Y. Sept. 18, 2014) (permitting Plaintiffs to take 11 depositions per each of the 14 defendants as well as unlimited third-party deposition); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-md-01720, ECF No. 2113-1 at 6 (E.D.N.Y. April 11, 2013) (plaintiffs took approximately 336 depos for 19 defendants, an average of 17 per defendant); *see also In re lithium Ion Batteries Anti. Litig.*, No. 13-md-2420, ECF No. 905 at 2 (N.D. Cal. Oct. 19, 2015) (allowing 12 depositions for each Defendant); *Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 2012 WL 5954817, at *1 (S.D.N.Y. Nov. 28, 2012) (allowing 20 depositions per defendant).

[2]  *See, e.g.*, *Alaska Electrical Pension Fund v. Bank Of America Corp. et al.*, 14-cv-7126-JMF, ECF No. 296 (S.D.N.Y, Nov. 8, 2016) (permitting plaintiffs to take 40 depositions total of the seven non-settling defendants); *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, ECF No. 721 (S.D.N.Y. Jan. 30, 2017) (permitting each side to take up to 70 depositions total, including third-party depositions).

***Defendants' Production of Information under Phone Logs Agreement***:  Pursuant to the parties' May 25 agreement, Defendants were to gather work landline and cell phone numbers for covered custodians by June 13 and produce records of interfirm calls by June 29.  Three of the Defendants met the June 13 deadline to turn over the phone numbers, but Defendants did not transmit all the required information to Plaintiffs until June 29.  As of this writing, six of the Defendants have produced at least some work landline or cell phone records.  One Defendant, RBS, states that it does not have any relevant phone logs.

***Third-Party Discovery***:  Plaintiffs remain in negotiations with ICAP, Tradeweb, and Tullet over their production of documents and data.  If these negotiations are not resolved shortly, Plaintiffs will seek the Court's intervention.  Plaintiffs and Defendants are also discussing the production of data from third-party Depository Trust & Clearing Corporation ("DTCC").  Though DTCC has generally been cooperative and the parties are not at impasse, the negotiations are moving much more slowly than Plaintiffs hoped, and it is possible Plaintiffs will raise this issue with the Court in the future, given the deadlines in the schedule.

***Plaintiffs' June 19 Letter***:  On June 19 Plaintiffs apprised the Court that they were considering whether to request entry of a Rule 54(b) judgment with respect to named Plaintiffs that traded only in the pre-2013 period and whose claims have been fully dismissed.  In the same letter, Plaintiffs informed the Court that, in their view, the review of Defendants' documents had turned up evidence related to the pre-2013 claims.  Since that date, Plaintiffs believe that the document review has revealed significant new evidence concerning pre-2013 conduct related to both the pre- and post-2013 claims.  In the spirit of keeping the Court fully informed, Plaintiffs are now considering their options with respect to this new evidence.  Plaintiffs are nearing a decision on whether to seek a Rule 54(b) judgment as well as what to do with respect to the new information and would welcome the opportunity to solicit the Court's guidance as to how to most efficiently proceed.  Defendants anticipate that they will oppose any motion that Plaintiffs may elect to file and are prepared to address these questions at the conference if appropriate.

## Conference Participants

The participants for Plaintiffs will be Daniel Brockett (Quinn Emanuel Urquhart & Sullivan, LLP), Michael Eisenkraft (Cohen Milstein Sellers & Toll LLP) and Thomas Ogden (Wollmuth Maher & Deutsch LLP).  Jeffrey Coviello (Wollmuth Maher & Deutsch LLP) will also participate as the designated speaker for trueEX.

The participants for Defendants will be Richard Schwed (Shearman & Sterling LLP), Robert Wick (Covington & Burling LLP), and Ravi Sharma (Paul, Weiss, Rifkind, Wharton Garrison LLP).

Plaintiffs will provide the Court and Defendants with a dial-in number for the teleconference via email.

Respectfully submitted,

/s/ Daniel L. Brockett                    /s/ Adam S. Hakki[3]
Daniel L. Brockett on behalf of           Adam S. Hakki
Counsel for Plaintiffs                    Defendants' Liaison Counsel

---

[3] Electronic signature provided with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.