# COVINGTON

BEIJING  BRUSSELS  DUBAI  FRANKFURT  JOHANNESBURG
LONDON  LOS ANGELES  NEW YORK  PALO ALTO
SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 6000

July 11, 2022

**Via ECF**

The Honorable J. Paul Oetken
United States District Court, Southern District of New York
40 Foley Square, Room 2101
New York, NY 10007

> **Re:**   *In re Interest Rate Swaps Antitrust Litig.*, No. 16-md-2704-JPO (S.D.N.Y.)

Dear Judge Oetken:

I write on behalf of all Defendants other than Credit Suisse in response to Plaintiffs' supplemental authority letter of July 5, 2022 (ECF No. 1008, or "Ltr.") regarding Magistrate Judge Cave's report and recommendation ("R&R") in *Iowa Public Employees' Retirement System v. Bank of America*, No. 1:17-cv-06221-KPF-SLC ("*Stock Loan*").

Plaintiffs' letter is premature because the *Stock Loan* R&R is subject to de novo review by Judge Failla. Defendants understand that the *Stock Loan* defendants plan to object to the R&R on the ground that it contains clear errors of law and fact, and that Judge Failla has already set a briefing schedule for considering those objections. Moreover, even if the R&R were a final decision, Plaintiffs' letter still would provide no support for their motion for class certification. The letter largely repeats the same erroneous argument advanced in Plaintiffs' last two supplemental authority letters: it argues that as long as a reasonable juror might be persuaded by Plaintiffs' purported common proof of classwide injury, nothing else matters to the predominance analysis, and Defendants' individualized evidence of *non*-injury counts for nothing. Plaintiffs are fundamentally mistaken. As numerous courts have recognized, so long as a reasonable juror might *also* be persuaded by Defendants' individualized evidence that many class members were uninjured, Defendants have a constitutional right to present their individualized evidence at trial, and that alone defeats predominance.

Plaintiffs compound this fundamental error by ignoring the many important differences between this case and *Stock Loan*, including (i) Plaintiffs here have not submitted *any* quantitative evidence of purported classwide injury, (ii) Plaintiffs here rely solely on broad and indiscriminate generalizations by a single expert witness to try to prove injury to an enormously diverse range of swap transactions and class members, (iii) a mountain of real-world evidence contradicts Plaintiffs' assertion that *all* class members and *all* types of swaps would have benefitted from all-to-all swaps trading, and (iv) Plaintiffs' own estimates of but-for prices belie their assertions that all swaps and class members would have benefitted.

Plaintiffs also advance a grab-bag of additional arguments based on the R&R, but each of them fails for the following reasons.

**COVINGTON**

July 11, 2022
Page 2

    1. <u>The province of the jury.</u>  Plaintiffs cite the *Stock Loan* R&R to support their assertion that only a jury can decide the validity of Defendants' challenges to their purported proof of classwide injury.  Ltr. at 1.  Plaintiffs are partially correct:  only a jury can resolve the ultimate question of whether, in the case of any individual class member, Defendants' individualized evidence of *non*-injury is more persuasive than Plaintiffs' common evidence of injury.  But the mere fact that Defendants are entitled to present their individualized evidence to the jury at trial—and not the jury's final conclusion about which class members were injured—is what matters to the predominance analysis.  Defendants have a constitutional right to present their individualized evidence at trial so long as it is "colorable" or "plausible," *i.e.*, if it might persuade a reasonable juror.  *See, e.g.*, *In re Asacol Antitrust Litig.*, 907 F.3d 42, 52-55 (1st Cir. 2018); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 625 (D.C. Cir. 2019).  Defendants' evidence easily meets that standard.  *See* Defs.' Opp., ECF No. 815, at 35-38, 47-59; Defs.' Sur-Reply, ECF No. 891, at 7-16.

    Plaintiffs nonetheless contend that as long as their *common* evidence of injury is capable of persuading a reasonable juror, predominance is established, and Defendants' evidence need not be considered.  *See* Ltr. at 3-4.  A wealth of authority rejects that conclusion.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366-67 (2011) ("[A] class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims."); *Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010) ("[C]ourts must consider potential defenses in assessing the predominance requirement."); *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 50 (S.D.N.Y. 2020) (denying class certification where, "[a]t trial, *defendants* would have a right to present individualized evidence" to contest the existence of injury (emphasis added)).  Furthermore, Plaintiffs' purported proof of classwide injury is fatally flawed:  it generates "false positives" and is far too imprecise and indiscriminate to persuade a reasonable juror that *all* swaps and *all* class members were harmed.  *See* Defs.' Sur-Reply at 1-7.

    The R&R's brief and ambiguous treatment of this issue does not support a contrary conclusion.  *See* R&R at 49-59.  If, as Plaintiffs suggest, the R&R stands for the proposition that individualized evidence submitted by the defendants in a class action is irrelevant to the predominance analysis so long as the plaintiffs' evidence is colorable, then it is clearly wrong on the law.[1]  If, on the other hand, the R&R merely opines that the *Stock Loan* defendants failed to

---

[1] Although Plaintiffs assert that Defendants' cases all turned on the fact that the *plaintiffs* failed to provide a methodology capable of proving classwide injury, *see* Ltr. at 4, that is incorrect.  For example, *Asacol* turned on the fact that the defendants intended to make "plausible" individualized challenges to the existence of injury.  *See* 907 F.3d at 46-47, 51-53.  Similarly, in *Rail Freight*, the court emphasized that the defendants' right to present "colorable" individualized challenges to plaintiffs' assertions of injury defeated class certification.  934 F.3d at 625.  In *Ruzhinskaya v. Healthport Technologies, LLC*, 311 F.R.D. 87 (S.D.N.Y. 2015), the court held predominance was lacking because the defendant intended to contest liability, "at least in part, on the basis of provider-specific costs, which vary dramatically."  *Id.* at 105.  In *Wal-Mart*, the court emphasized that defendants were entitled to present their individualized statutory defenses at trial.  *See* 564 U.S. at 366-67.  And in *Myers*, the court held that individualized factual determinations necessary to prove defendants' affirmative defense precluded a finding of predominance. *See* 624 F.3d at 550-51.

**COVINGTON**
July 11, 2022
Page 3

adduce any plausible or colorable individualized evidence, *see* R&R at 53-58, then that fact-bound analysis is irrelevant because Defendants here have adduced such evidence.

     **2. Burden of proof on injury.**  Plaintiffs also cite the R&R in support of their argument that their burden of proving classwide injury is reduced because Defendants allegedly engaged in wrongdoing.  Ltr. at 1-2.  But the R&R supports no such extension of the so-called "wrongdoer rule," which holds only that a degree of uncertainty in quantifying *damages* does not preclude a damages award.  *See* R&R at 55 (rejecting arguments about the uncertainty of the plaintiffs' claims as "too speculative to undermine Plaintiffs' *damages* model" (emphasis added)).  As far as Defendants are aware, no court has ever held that a similar principle lightens Plaintiffs' separate burden of proving classwide *injury*.  *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not."); *Bowerman v. Field Asset Servs., Inc.*, — F.4th —, 2022 WL 2433971, at *8 (9th Cir. July 5, 2022) ("[I]ndividual differences in *calculating* the amount of damages will not defeat class certification where common issues otherwise predominate . . . , but if the plaintiffs cannot prove that damages *resulted* from the defendant's conduct, then the plaintiffs cannot establish predominance." (emphasis in original)).

     **3. Professor Duffie's Analysis.**  Plaintiffs next cite the R&R for the proposition that Prof. Duffie's injury analysis in this action mirrors the injury analysis in *Stock Loan*.  Ltr. at 2.  That is plainly incorrect.  In *Stock Loan*, the magistrate judge considered three forms of *quantitative* evidence of purported classwide injury:  (i) Prof. Zhu's "economic search model," (ii) an "empirical analysis" that compared on-exchange and off-exchange stock loan prices, and (iii) a quantitative model of but-for prices that allegedly "show[ed] that the potential number of uninjured Class Members . . . is less than 0.5%."  R&R at 23-24, 54.

     Prof. Duffie did nothing of the kind.  Indeed, he performed no quantitative or empirical analysis whatsoever to support his sweeping assertion that *all* swaps and *all* class members would have benefitted from all-to-all trading.  *See* Defs.' Opp., ECF No. 815, at 61-63; Defs.' Sur-Reply, ECF No. 891, at 1-7.  The R&R thus sheds no light on whether Prof. Duffie's qualitative assertions, without more, are sufficient to prove classwide injury in a broad and heterogeneous market like the swaps market.  Numerous courts have reached the opposite conclusion.  *See, e.g.*, Defs.' Sur-Reply at 4-5; *Asacol*, 907 F.3d at 54 (rejecting plaintiffs' argument "that, at trial, they will prove classwide impact with the testimony of their expert . . . and with defendants' own documents and admissions"); *Aluminum*, 336 F.R.D. at 49-51 (rejecting qualitative evidence alone as incapable of proving classwide injury).

     Plaintiffs are equally mistaken when they suggest that the R&R ignored the *Stock Loan* plaintiffs' damages model when assessing classwide injury.  Ltr. at 2.  Far from ignoring the damages model, the R&R concluded that the model demonstrated the existence of classwide injury because it showed that at least 99.5% of class members were harmed.  R&R at 54.  The R&R further concluded that the remaining class members could easily be identified and excluded from the proposed class.  *See id*.  Here, by contrast, Plaintiffs' own estimates of but-for-world prices show that large numbers of transactions and class members were unharmed, and there is no way

**COVINGTON**
July 11, 2022
Page 4

to identify and exclude all unharmed class members without engaging in individualized inquiry. *See* Defs.' Sur-Reply, ECF No. 891, at 7-10.

    **4. Price Dispersion.**  Plaintiffs next argue that the Court should ignore all the data and analysis showing that large numbers of transactions and class members were unharmed.  Ltr. at 3. Plaintiffs incorrectly disparage the data at issue as "raw" data, when in fact those data were cleaned, processed, and heavily relied upon by Plaintiffs' own expert, Dr. Grinblatt.  *See* Defs.' Sur-Reply, ECF No. 891, at 10-12; Reiss Daubert Opp., ECF No. 892, at 13-15.  Plaintiffs nonetheless urge this Court to disregard this real-world data and instead adopt the far-fetched assumption that *all* class members that entered into the same type of swap paid exactly the same average "spread" on their swaps.  *See* Defs.' Sur-Reply, ECF No. 891, at 10-12.  But that averaging assumption is undeniably false:  overwhelming evidence confirms that different class members paid widely different spreads on their transactions, with some trading at minimal spreads or even *negative* spreads.  *Id.* at 8-10; Defs.' Opp., ECF No. 815, at 23-35.  This evidence in conjunction with the data analysis performed by Prof. Reiss at a minimum makes a "plausible" showing that large numbers of class members were unharmed.  *See, e.g.*, Defs.' Sur-Reply, ECF No. 891, at 5.

    The R&R provides no support for Plaintiffs' wishful assertion that Prof. Reiss' data analysis should be disregarded.  To the contrary, the magistrate judge in *Stock Loan* considered and relied upon data analysis much like the analysis at issue.  Specifically, the R&R relied on an expert analysis that compared the defendants' actual "transactions data" to the but-for-world prices estimated by an economic model.  *See* R&R at 27.  Prof. Reiss engaged in the same type of analysis in this action.  *See* Defs.' Sur-Reply, ECF No. 891, at 8.  Finally, although Plaintiffs note that the R&R concluded that the "search cost" model introduced in *Stock Loan* did not actually "assum[e] away . . . price dispersion" as the defendants had argued (Ltr. at 3), the *Stock Loan* search cost model is irrelevant here, and the cited language does not excuse the fact that Plaintiffs here *do* assume away price dispersion by assuming that all class members paid exactly the same "spread" on their swaps.

    **5. Yardstick Analysis.**  Plaintiffs argue that the R&R "endorses the use of a yardstick approach in antitrust cases," Ltr. at 3, but the mere fact that yardstick analyses have been accepted for certain purposes under certain circumstances in no way shows that the yardstick analysis offered *here* establishes the extraordinary proposition for which it is offered:  that *all* spreads paid on *all* swaps entered into by *all* class members would have compressed at least 80% from their 2013 levels throughout the six-year class period.  *See* Defs.' Opp., ECF No. 815, at 44-45.

    **6. Damages Analysis.**  The *Stock Loan* R&R found that the plaintiffs there had presented a damages model that could be used to estimate damages for every member of the putative class. R&R at 56.  Here, by contrast, Dr. Grinblatt's damages model supplies no damages estimate whatsoever for the vast majority of the proposed class because Dr. Grinblatt has no data that he considers "usable" for 90% of the proposed class.  *See* Defs.' Opp., ECF No. 815, at 47-59. Plaintiffs thus failed to satisfy their burden of adducing a workable damages model at the class certification stage, and the R&R provides no support for a contrary conclusion.  *Id.* at 30, 51 & nn.77-78; Defs.' Sur-Reply, ECF No. 891, at 16.

**COVINGTON**
July 11, 2022
Page 5

    **7. <u>OTC Trades</u>.**  Plaintiffs also argue that the R&R's discussion of whether stock loans executed over-the-counter are similar to stock loans executed on anonymous trading platforms somehow refutes Defendants' argument that certain types of IRS should be excluded from the class based on the law of the case and other considerations.  *See* Ltr. at 5.  The argument makes no sense and ignores Judge Engelmayer's motion to dismiss ruling limiting this case to "plain vanilla" swaps that are "suitable for exchange trading."  ECF No. 237 at 95-96 & n.41.  There was no comparable law of the case in *Stock Loan*, and nothing in the R&R undermines Defendants' showing that many IRS are unsuitable for anonymous all-to-all trading.  *Compare* R&R at 53-54 *with* Defs.' Opp., ECF No. 815, at 76-85.

    **8. <u>Non-users of platforms</u>.**  Plaintiffs next argue that the R&R categorically rejects as "speculative" all arguments about "which Class Members would or would not have elected to join a platform in the but-for world."  Ltr. at 5; R&R at 55.  But Defendants' arguments on that subject are far from speculative:  Defendants provided abundant evidence that large numbers of swaps would not have been executed on anonymous all-to-all platforms—and Plaintiffs' own experts conceded as much.  *See* Defs.' Opp., ECF No. 815, at 66-70, 76-83.  Plaintiffs appear to be suggesting that Defendants are categorically barred from making any arguments about the contours of the but-for world at the class certification stage, but courts routinely consider such arguments at the certification stage because they often bear on predominance.  *See, e.g.*, *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 193 (3d Cir. 2020) (vacating grant of class certification where district court refused to address analysis of "what each Defendant would or would not have possibly done in the but-for world," because, "[w]ithout that inquiry, it is impossible to determine whether the Contracting Strategy raised individualized issues."); *Asacol*, 907 F.3d at 46-47, 58 (reversing grant of class certification based on argument that, in the but-for world, "approximately ten percent of class members had not been injured . . . because, even had a lower-priced generic alternative been available, these consumers would not have switched to it").  Finally, although Plaintiffs cite the R&R in support of their argument that all class members would benefit from the "option" of all-to-all trading (Ltr. at 5, citing R&R at 55), that citation lends no support at all to their argument.  Plaintiffs' argument remains insufficient to establish predominance here.  *See* Defs.' Sur-Reply, ECF No. 891, at 6-7.

    **9. <u>FTAIA</u>.**  The FTAIA bars application of U.S. antitrust law to class members that were operating abroad at the time they entered into their swaps.  *See, e.g.*, Defs.' Sur-Reply, ECF No. 891, at 22-23.  Citing the R&R, Plaintiffs counter that the FTAIA is satisfied here because even those class members that allegedly overpaid for swaps in foreign markets did so through a chain of causation that began with the purported boycott of all-to-all platforms in the United States.  Plaintiffs are wrong because the alleged boycott of U.S. trading platforms is at most a "but-for" cause and not the "proximate" cause of any overpayments allegedly made in foreign markets.  *See id*.  Any other conclusion would gut the FTAIA and turn the United States into the world's antitrust policeman:  it would apply U.S. antitrust law even to a swap entered into by a dealer operating in Russia and a class member operating in China.

**COVINGTON**
July 11, 2022
Page 6

Respectfully submitted,

*/s/ Robert D. Wick*
Robert D. Wick

*Counsel for the JPMorgan
Defendants*