**quinn emanuel** trial lawyers | new york
51 Madison Avenue, 22nd Floor, New York, New York 10010
TEL (212) 849-7000 FAX (212) 849-7100

**COHEN MILSTEIN**

Daniel L. Brockett
(212) 849-7345
danbrockett@quinnemanuel.com

Michael B. Eisenkraft
(212) 838-0177
meisenkraft@cohenmilstein.com

January 31, 2024

**VIA ECF**

The Hon. J. Paul Oetken
United States District Court, Southern District of New York
40 Foley Square, Room 2101
New York, NY 10007

Re:   *In re: Interest Rate Swaps Antitrust Litigation*, No. 16-MD-2704 (JPO)
        *This Document Relates To All Class Actions*

Dear Judge Oetken:

Pursuant to the Court's January 12 Order, Dkt. 1059, Class Plaintiffs respectfully request that this Court: (1) permit Class Plaintiffs to file a motion for certification of a Rule 23(c)(4) issue class and (2) grant the pending motion at Dkt. 977 to preliminarily approve the $25 million settlement agreement between Class Plaintiffs and Defendant Credit Suisse.

**I.   The Court Should Permit Plaintiffs To File A Motion For Certification Of A Rule 23(c)(4) Issue Class**

Pursuant to Rule 23(c)(4), Plaintiffs seek leave to file for certification of a class limited to the core liability issue of whether Defendants agreed to boycott all-to-all anonymous ("AA2A") trading platforms in the market for interest rate swaps ("IRS"), in violation of Section 1 of the Sherman Act. Certifying this Rule 23(c)(4) issue class is the most efficient path forward for this case.

The question of whether Defendants conspired—as distinct from issues of antitrust impact and damages—is unquestionably common to the approximately 8,000 members of the proposed class. It makes no sense to hold many individual trials on that common issue. Nor do the vast majority of proposed class members possess the resources or incentives to litigate this issue on an individual basis. Of course, that is why Defendants oppose the request—they know that denial of a Rule 23(c)(4) issue class will effectively end the case for all but a few investors with the resources to plow through years of additional litigation just to resolve the gating issue of whether Defendants conspired. But Defendants' desire to foreclose thousands of investors' claims rather than resolve them on the merits is not a good reason to deny Class Plaintiffs the opportunity to at least brief the issue of whether a Rule 23(c)(4) class is warranted here. As we

demonstrate below, Class Plaintiffs should be given that opportunity, and Defendants' arguments to the contrary are without merit.

### A. Factual And Procedural Background

To briefly recap: Class Plaintiffs allege that Defendants—eleven of the largest banks in the world—conspired to boycott AA2A platform trading of IRS. Dkt. 723 at 1. In the existing over-the-counter ("OTC") market structure, Defendants act as intermediaries for most IRS trades, collecting "spreads" between the bid and ask prices. *Id.* at 4. When AA2A platforms threatened to enter and "disintermediate" the banks as dealers, *id.* at 1, Defendants acted jointly to quash that threat, *id.* at 22-27. Through a flurry of inter-Defendant communications, they coordinated their conspiracy and organized in-person meetings where they agreed not to support any AA2A entrant. *Id.* Thereafter, the Defendants implemented their agreement by starving AA2A platforms of liquidity until they collapsed. *Id.* at 27-34.

During the previous class certification briefing, Defendants did not dispute that this evidence about Defendants' behavior was common to the class. Indeed, Defendants' arguments that they did not conspire relied exclusively on other common evidence, as proven by their prior class certification briefing. Dkt. 815 at 12-19. The evidence focused exclusively on Defendants' conduct and had nothing to do with the behavior of any Class Plaintiff.

On December 15, 2023, the Court denied Class Plaintiffs' motion for class certification pursuant to Rule 23(b)(3). Dkt. 1054. The Court denied class certification solely on the grounds that Class Plaintiffs failed to demonstrate the predominance of common issues regarding the proof of impact over individual ones. *Id.* at 11 ("The Court's analysis begins and ends with the issue of predominance."). Notably, the Court recognized that "impact" is distinct from both "a violation of antitrust law" and "damages." *Id.* (citing *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007)).

On December 20, 2023, the Court ordered that the parties submit a joint letter by January 8, 2024, and scheduled a teleconference for January 10, 2024, to discuss "each party's proposals for further proceedings." Dkt. 1055. Consistent with the Court's request, Class Plaintiffs raised the possibility of moving for a Rule 23(c)(4) issue class in their portion of the January 8 joint letter. Dkt. 1058 at 2-3. On January 10, 2024, Class Plaintiffs laid out their position on the Rule 23(c)(4) issue class at a Court-ordered teleconference. Dkt. 1061 at 13-15. Defendants previewed their position, claiming that whether the Defendants agreed to boycott AA2A platforms somehow depended on, among other things, the suitability of interest rate swaps for all to all trading. *Id.* at 16-17. The Court subsequently authorized briefing on whether to allow Class Plaintiffs to move for a Rule 23(c)(4) class. Dkt. 1059.

### B. The Court Should Allow Class Plaintiffs To Seek Certification Of A Rule 23(c)(4) Class

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). This Court has recognized that "where resolution of the particular common issues would materially advance the

disposition of the litigation as a whole," courts should certify Rule 23(c)(4) issue classes on those common issues. *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 589 (S.D.N.Y. 2013) (Oetken, J.) (citation omitted), *aff'd*, 602 F. App'x 3 (2d Cir. 2015).

This is a textbook case for Rule 23(c)(4) issue class certification. The core liability issue of whether Defendants unlawfully conspired is indisputably common to each of the approximately 8,000 investors in the proposed class, and a central element of their claims under Section 1 of the Sherman Act. Dkt. 723 at 8-9; *see also* Dkt. 725-1 (Grinblatt Rpt.) ¶ 56. Defendants conceded the issue is common during the parties' prior class certification briefing. Dkt. 815 at 12-19, 19 n.42. Trying that issue many times in individual trials would needlessly consume enormous amounts of judicial and party resources. It would be far more efficient to have one trial on the conspiracy issue, which would bind Defendants as well as class members, and which could be consolidated with the Platform Plaintiffs' trial on liability issues as well. If Class and Platform Plaintiffs lose on the threshold issue of whether there was a conspiracy (group boycott), then the case would be over—subject to any appellate rights the Plaintiffs might have. On the other hand, if the Plaintiffs win on the common issue of conspiracy, the case could move on to individualized proceedings on the issues of damage and antitrust impact, which would be far more manageable with the conspiracy issue resolved class-wide. Either way, class-wide proceedings on the conspiracy issue "offer[] the benefit of a liability phase that can be resolved quickly and conclusively," rather than rerunning a trial on the same conspiracy issue thousands of times. *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 225-26 (2d Cir. 2006) (holding that district court "erred by failing to certify a class on the issue of liability"). Notably, both the Class and Platform Plaintiffs agree that this is the most efficient path forward. *Cf.* Dkt. 1058 at 3, 4.

The practical challenge that individual class members face in proceeding alone, even just on the conspiracy issue, underscores the importance of a Rule 23(c)(4) issue class. Given that the case has already stretched on for more than eight years, involved five experts on both sides just at the class certification stage, and well over 100 depositions, it is highly unlikely that the vast majority of class members could fund what is likely to be years more litigation just to resolve the threshold issue of whether Defendants conspired. That is particularly true since Defendants intend to litigate the conspiracy issue vigorously, including with new expert testimony and a motion for summary judgment. Dkt. 1061 at 11-12. This would only further increase the costs of litigating even the conspiracy issue through trial and making it unlikely most class members will do so. *Id.* at 12. But allowing potentially meritorious claims to lapse because individual investors do not have the resources to pursue them does not "further the efficient administration of justice." *In re Amla Litig.*, 282 F. Supp. 3d 751, 765 (S.D.N.Y. 2017) ("If common resolution of even a single issue would further the efficient administration of justice, then the class should be certified.").

For exactly this reason, the Second Circuit has instructed that "[d]istrict courts should take full advantage of this provision to certify separate issues in order to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies." *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 167 (2d Cir. 2001) (internal citation omitted), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 229 (encouraging issue class certification where, as here,

3

"without use of the class action mechanism, individuals harmed by defendants' policy and practice may lack an effective remedy altogether"); *Jacob*, 293 F.R.D. at 593 (certifying Rule 23(c)(4) where "certification of the class for liability purposes will clearly advance the litigation in a meaningful way"). Indeed, courts in this Circuit routinely approve Rule 23(c)(4) issue classes on the narrow issue of liability, both in antitrust cases, *see Cordes*, 502 F.3d at 108-09, and in other contexts, *see In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 230-31. *See also Jacob*, 602 F. App'x at 593 (affirming certification of a liability-only class).

Following that precedent, courts in this district regularly certify Rule 23(c)(4) classes after denying certification under Rule 23(b)(3). *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 437 (S.D.N.Y. 2019) (hereinafter "*FOREX*"); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 142 (S.D.N.Y. 2014) (Oetken, J.); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 254 (S.D.N.Y. 2014) (certifying Rule 23(c)(4) issue class where it would "materially advance the litigation and make the proceedings more manageable").[1] The Second Circuit has explicitly blessed this practice, holding in *In re Nassau County Strip Search Cases* that "a court may employ [Rule 23(c)(4)] to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement." 461 F.3d at 225; *see also Dungan v. Acad. at Ivy Ridge*, 344 F. App'x 645, 647 (2d Cir. 2009) (same); *Jacob*, 602 F. App'x at 593.

*FOREX* is directly on point. That antitrust case involved allegations that a group of banks conspired to fix the price of *individual* currency trades in the foreign currency exchange market. 407 F. Supp. 3d at 427. The court denied certification of a Rule 23(b)(3) class after concluding that determining whether any class member was injured would require an individualized, trade-by-trade assessment. *Id.* at 430-36. Nonetheless, the Court sua sponte certified a Rule 23(c)(4) issue class on the questions of whether a conspiracy existed and whether a particular defendant participated in it, because "[t]hese are threshold issues capable of resolving or significantly narrowing the case." *Id.* at 437. This is, if anything, a *better* candidate

---

[1] Courts in most other circuits follow the same practice. *See, e.g.*, *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1359-60 (11th Cir. 2009) (requiring that district courts assess whether Rule 23(c)(4) is appropriate, even if Rule 23(b)(3) is not satisfied for all issues); *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues."); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 438-445 (4th Cir. 2003) (collecting cases); *In re Motor Fuel Temperature Sales Pracs. Litig.*, 292 F.R.D. 652, 664-65 (D. Kan. 2013) (collecting cases). Only the Fifth Circuit follows a different rule, which the Second Circuit has expressly rejected. *In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 226-27.

for 23(c)(4) treatment because, unlike *FOREX*, the conspiracy at the center of this case is a straightforward group boycott, not fixing of thousands of individual prices.[2]

Nor does the doctrine of offensive collateral estoppel provide an adequate solution to this problem. Offensive collateral estoppel requires a case-by-case determination of four elements: "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 236 (2d Cir. 2018). Courts have "broad discretion" in applying the doctrine, but must determine that the application is fair. *Id.* The need to litigate *whether* offensive collateral estoppel would apply in subsequent cases means that the doctrine is not "superior to other available methods for fairly and efficiently adjudicating the controversy." *See In re Petrobras Sec.*, 862 F.3d 250, 268 (2d Cir. 2017) (quoting Fed. R. Civ. P. 23(b)(3)). Thus, as the court concluded in *FOREX*, issue class certification "is also superior to future Plaintiffs attempting to rely on the doctrine of offensive collateral estoppel because of the proof requirements and possible uncertainty of the outcome." *FOREX*, 407 F. Supp. 3d at 438. So too here.

### C. Defendants' Procedural Arguments Against Allowing Class Plaintiffs The Opportunity to Even Seek Issue Class Certification Fail

Faced with the common-sense proposition that resolving this core liability issue once is better than having to separately litigate it many times, Defendants argue that Plaintiffs cannot seek a Rule 23(c)(4) class now because we did not expressly ask for one in the alternative when we initially moved for a Rule 23(b)(3) class. This argument runs contrary to decades of controlling law. The Supreme Court has expressly stated that "dismissal of the class action as originally defined is without prejudice to any efforts petitioner may make to redefine his class … under Rule 23(c)(4)." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 179 n.16 (1974). The Second Circuit likewise permits and encourages litigants to seek certification of liability-only classes in antitrust cases *after* the denial of Rule 23(b)(3) certification. *Cordes*, 502 F.3d at 109 ("On remand, if the district court concludes that the action ought not to be certified in its entirety because it does not meet the predominance requirement of Rule 23(b)(3), Cordes and Creditors Trust *may seek certification of a class to litigate the first element of their antitrust claim*—the existence of a Sherman Act violation—pursuant to Rule 23(c)(4)(A) and *Nassau County*.") (emphasis added).

Indeed, courts often grant Rule 23(c)(4) classes sua sponte when denying class certification, even where the plaintiffs do not expressly request it. *See FOREX*, 407 F. Supp. 3d at 437. This Court has done that twice and been affirmed by the Second Circuit for doing so

---

[2] Notably, the sole case Defendants have thus far cited denying Rule 23(c)(4) certification—*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430 (S.D.N.Y. 2018)—relates to an episodic, benchmark manipulation conspiracy. *Id.* at 457-58. Even that case notes "the existence of a conspiracy is a common question." *Id.* at 590. Further, it certified one class asserting antitrust claims under Rule 23(b)(3). *Id.* at 595.

once. *See Fort Worth Emps.' Ret. Fund*, 301 F.R.D. at 142; *Jacob*, 293 F.R.D. 578, 592-93, *aff'd*, 602 F. App'x 3 (2d Cir. 2015). Because courts frequently certify Rule 23(c)(4) issue classes even where it is not requested, Defendants cannot credibly argue that Class Plaintiffs are foreclosed from even requesting one now just because they did not expressly do so earlier.

Contrary to Defendants' assertions, there is also nothing tactical or unfair about the fact that Class Plaintiffs did not seek a Rule 23(c)(4) class back in February 2019, when class certification briefing began. *See* Dkt. 1058 at 4-5. In our opening papers and on reply, we argued that evidence of Defendants' conspiracy was overwhelming and common, and therefore outweighed any individualized issues of impact and damages. Thus, seeking certification under Rule 23(c)(4) was neither necessary nor appropriate. Dkt. 723 at 13; Dkt. 869 at 5-7. Subsequent developments changed that calculation. Defendants conceded liability was a common issue in their class certification briefing, instead focusing their fire on arguments about impact and damages, and the Court adopted one of those arguments. Given these material developments, it now makes sense to brief the issue of certification of a Rule 23(c)(4) class on the conspiracy issue, whereas there was no need to do so before.

To the extent that Defendants argue that Class Plaintiffs are effectively seeking an extension of the class certification deadline such that a "good cause" standard under Rule 16 applies, *see* Dkt. 1058 at 4-5, that argument fails as well. Class Plaintiffs *met* the deadline to move for certification, and thus are not seeking to move *that* deadline. *Compare* Dkt. 723 (dated February 20, 2019) *with* Dkt. 522 (setting February 20, 2019 as the deadline to move for certification). Rather, Class Plaintiffs seek permission to file a new motion for class certification under Rule 23(c)(4), in response to the Court's December 15 order denying class certification. No deadline currently governs that motion, and no "good cause" is necessary for Class Plaintiffs to file it. Confirming as much, none of the cases cited above even suggested that a "good cause" standard applied to requests to certify a Rule 23(c)(4) issue class after denial of a broader class action. *See, e.g.*, *Cordes*, 502 F.3d at 109.

In any event, even if "good cause" is required, it exists here. Rule 16(b)(4) "good cause" inquiry is primarily focused upon the diligence of the movant in attempting to comply with the existing scheduling order and the reasons advanced as justifying that order's amendment. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Here, Class Plaintiffs did, in fact, comply with the scheduling order and moved for class certification by the deadline. Once the Court denied class certification, Class Plaintiffs notified Defendants and the Court of their intention to move for a Rule 23(c)(4) issue class at the earliest appropriate time—in the joint letter that the Court requested. *See* Dkt. 1058 at 2-3. The reason Class Plaintiffs did not move for a Rule 23(c)(4) previously is, as discussed above, that they did not know that the Court would deny their initial class certification motion. Good cause plainly exists here. *Cf. Hadassah v. Hadassah Acad. Coll.*, 2021 WL 4459121, at *3 (S.D.N.Y. Sept. 29, 2021) (Oetken, J.) ("The 'good cause' standard is met where the proposed amendment rests on information that the party did not know (or there is no reason to believe the party should have known) before the deadline." (citation omitted)).

6

### D. Defendants' Arguments That A Rule 23(c)(4) Class Would Involve Individualized Issues Are Plainly Wrong

As a back-up argument, Defendants argue that a Rule 23(c)(4) issue class, relating solely to whether Defendants conspired, raises individualized issues. Dkt. 1061 at 16-18. This is an argument appropriate for the motion itself, not a reason Class Plaintiffs cannot file a motion for Rule 23(c)(4) class certification. It is also wrong on the merits.

Class Plaintiffs identified a mountain of *common* evidence in support of their allegations that Defendants conspired to block AA2A platforms. Dkt. 723 at 13-46. The evidence is quintessentially common because it consists of documents and testimony from Defendants' witnesses regarding their response to AA2A platforms. *Id.* Defendants have likewise responded with *common* evidence that they did not conspire—namely, documents about how *they* responded to the AA2A platforms and about alleged defects with those platforms. Dkt. 815 at 12-19. *None* of this evidence will differ among individual plaintiffs. That is not surprising; virtually *all* antitrust conspiracy cases depend on common evidence that the defendants conspired. *See, e.g., In re IMAX Sec. Litig.*, 283 F.R.D. 178, 187 (S.D.N.Y. 2012) ("As the Supreme Court has observed, the requirement of predominance is 'readily met in certain cases alleging … violations of the antitrust laws.'") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *38 (E.D.N.Y. Oct. 15, 2014) ("All of this evidence is indisputably 'common' because it focuses on the allegedly unlawful actions of the defendants, not the actions of individual plaintiffs.").

At the January 10 hearing, Defendants also argued that "almost all of the evidence relevant to the question of whether any conspiracy existed is also highly relevant to injury and damages and would have to come in at the second stage." Dkt. 1061 at 16. But this is simply untrue—the question of whether Defendants entered into a group boycott has nothing to do with the separate and independent issue of whether any Class Plaintiffs were impacted or suffered damages. Even if credited, Defendants' argument at most shows that there may be some overlap in the evidence Defendants will introduce at the conspiracy trial and any follow-on damages and impact proceedings. But this is not a reason to try the conspiracy issue repeatedly. *See Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1190 (10th Cir. 2023) (affirming certification of Rule 23(c)(4) liability class in antitrust case despite "some overlap in evidence relevant to determining liability and damages," because "it would advance judicial economy, and resolution of the dispute, to permit class-wide resolution of liability before determining individual class members' damages").

Defendants' suggestion that they will rely on individualized evidence to show they did not conspire also lacks credibility, as the evidence Defendants have put forward on this point thus far is common, not individualized. *Supra* § I.A. Defendants confirm as much by suggesting, Dkt. 1061 at 16, that they will introduce expert testimony to show they did not conspire—testimony that will be the same in every individual class member's trial. Indeed, every argument Defendants apparently plan to raise—including the viability of platform trading, economical rationality of their conduct, and whether they have market power—is common. *Id.* at 16-17. All of it will relate to general market facts or the conduct of Defendants, *not* the conduct of class members.

7

Defendants' threat to introduce purportedly individualized evidence also fails to show that Rule 23(c)(4) class is improper for a more fundamental reason: that evidence is wholly irrelevant to the conspiracy question. This is a *per se* group boycott case. In a *per se* antitrust case, the only thing that matters is whether Defendants conspired; Defendants cannot justify their restraint by introducing extrinsic evidence of alleged procompetitive factors, including (in this case) such things as market dynamics or the popularity of the boycotted platforms. *F.T.C. v. Super. Ct. Trial Laws. Ass'n*, 493 U.S. 411, 428-36 (1990) (refusing all justifications for a group boycott, pursuant to the *per se* rule). If the trier of fact concludes that Defendants agreed to boycott AA2A platforms, the court will "appl[y] a conclusive presumption that the restraint is unreasonable," leaving only the separate issues of impact and damages. *Id.* at 433 (quoting *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 344 (1982)). That is all the more reason to try this issue once, on a class-wide basis, rather than *ad nauseum* for each member of the proposed class.

For all the above reasons, Class Plaintiffs respectfully request that the Court permit them the opportunity to move for certification of a Rule 23(c)(4) issue class. Accordingly, the Court should grant Class Plaintiffs' request and set a briefing schedule.

## II. The Court Should Preliminarily Approve The Class Plaintiffs' $25 Million Settlement With Defendant Credit Suisse

Pursuant to the Court's request at the January 10, 2024 Conference, we also address the different standards courts use for certification of a settlement-only class versus certification of a litigation class and the propriety of certifying a settlement class where a district court has denied certification of an identical merits-class.

In short, the Second Circuit has explicitly held that a district court may properly certify a settlement-only class action even when it has previously denied certification of an identical litigation class. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242-44 (2d Cir. 2012) (hereinafter "*AIG*") (settlement class can be certified under Rule 23(b)(3) even where a district court has denied certification of an identical merits class). This principle follows from black letter Supreme Court law, adopted by the Second Circuit and across the country, holding that the standards for certification of a settlement-only class are different from, and more relaxed than, the standards for settlement of a litigation class. Accordingly, Plaintiffs respectfully request that the Court grant their motion for preliminary approval of the Credit Suisse settlement.

### A. The Legal Standards For Certification Of A Settlement Class Differ From The Standards For Certification Of A Litigation Class

The Supreme Court has held that "[s]ettlement is relevant to a class certification." *Amchem Prods.*, 521 U.S. at 619. Therefore, although a settlement-only class, like a litigation class, must meet the requirements for class certification in Rules 23(a) and (b), "[s]ome inquiries essential to litigation class certification are no longer problematic in the settlement context." *AIG*, 689 F.3d at 239. In particular, settlement modifies the district court's Rule 23(b)(3) predominance analysis because "a district court need not inquire whether the case, if tried, would

8

present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620.

Second Circuit cases likewise make clear that settlement alters the predominance analysis. "In the context of a settlement class, concerns about whether individual issues would create 'intractable management problems' at trial *drop out of the predominance analysis*." *AIG*, 689 F.3d at 240 (citing *Amchem Prods.*, 521 U.S. at 620) (emphasis added). "Thus, the existence of a settlement that eliminates manageability problems can alter the outcome of the predominance analysis." *Id.* at 242; *see also In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 870 (S.D.N.Y. 2018) ("[T]he predominance requirement differs between trial and settlement.") (citation omitted)), *aff'd*, 784 Fed. App'x 10 (2d Cir. 2019).

This distinction between litigation and settlement-only classes is particularly germane in this case. This Court denied class certification on the ground that individualized inquiry into IRS allegedly traded at or below zero would make individualized impact issues predominate over common questions. *See* Dkt. 1054 at 17. Even assuming this is true, the existence of "numerous individual questions" that would defeat the predominance requirement in the litigation class context need not prevent the court from certifying that same class as a settlement class. *AIG*, 689 F.3d at 241.[3] Therefore, the primary reason that this Court identified in denying certification simply does not apply to the Credit Suisse settlement-only class. No individualized inquiry into at or below zero IRS trades will be necessary for a settlement-only class, because that class will not proceed to trial.

### B. The Second Circuit Has Explicitly Held That District Courts May Certify Settlement Only Classes Even After Denying Certification Of An Identical Litigation Class

It is well established in the Second Circuit that a district court can certify a settlement class even after denying certification of an identical litigation class. In fact, a district court tasked with a settlement class determination should not rely on any prior litigation class ruling but rather should engage in a new, independent certification inquiry. To that end, the *AIG* case is instructive.

In *AIG*, the parties submitted a settlement for the court's preliminary approval. *AIG*, 689 F.3d at 236. Approximately one year later, without ruling on the proposed settlement, the district court denied the plaintiffs' motion to certify a litigation class, holding that the requisite

---

[3] *See also In re IPO Sec. Litig.*, 226 F.R.D. 186, 195 n.51 (S.D.N.Y. 2005) ("In this case, the removal of [the manageability] factor from consideration alleviates the predominance defect."); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 263 (3d Cir. 2009) (rejecting objector's argument that a settlement class could not be certified unless a litigation class could have been certified); *In re Flint Water Cases*, 499 F. Supp. 3d 399, 424 (E.D. Mich. 2021) ("Courts have found that settlements 'obviate[] the difficulties inherent in proving the elements of varied claims at trial,' and consequently, 'courts are more inclined to find the predominance test met in the settlement context.'") (quoting *Good v. W. Va. Am. Water Co.*, 2017 WL 2884535, at *12 (S.D.W.V. Jul. 6, 2017)).

9

individualized issues of proof at trial defeated the predominance requirement. *Id.* The following month, the district court "issued a one-sentence order" denying the plaintiffs' "motion for preliminary approval of the settlement 'as moot' in light of its class certification ruling." *Id.* Thereafter, the settling parties jointly requested preliminary approval of their settlement once more, "arguing that even if certification of a litigation class was inappropriate, the court could— and should—nonetheless certify a settlement class," citing *Amchem* in support. *Id.* at 236-37. The district court denied the parties' renewed preliminary approval motion and refused to certify the settlement class. *Id.* at 237.

In vacating the district court's decision on appeal, the Second Circuit distinguished between the legal standards that satisfy the predominance requirement in the settlement class and litigation class contexts. According to the Second Circuit, even if the numerous individualized questions of proof identified by the district court would have proven unmanageable in a trial, with a settlement class, these manageability concerns "disappear" and therefore do "not necessarily preclude a finding of predominance." *Id.* at 241, 243 (citing *Amchem*, 521 U.S. at 620). The Second Circuit remanded to the district court to determine whether certification of the settlement class was appropriate. *Id.* at 244. Thereafter, the district court approved the settlement-only class. Prelim. Approval Order, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 1:04-cv-08141-DAB (S.D.N.Y. May 13, 2013), Dkt. 687 (granting preliminary approval for settlement-only class).

Following this rule, district courts both in and out of this circuit routinely certify settlement-only classes after previously denying class certification for an identical litigation class. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12333442, at *56 (N.D. Cal. Jan. 8, 2013) ("[I]t has long been recognized that a court may decline to certify a class for litigation purposes only to later certify the same or a similar class for the limited purpose of settling the litigation.") (collecting cases). Below, in date order, are several examples in addition to those from the Southern District of New York cited above:

- *Markson v. CRST Int'l, Inc.*, 2022 WL 805615, at *4 (C.D. Cal. Feb. 24, 2022) (approving preliminary certification of settlement class after denying litigation class certification based on Plaintiffs' failure to show a reliable class-wide damages model and thus satisfy Rule 23(b)(3), as "that finding does not preclude approval of a settlement class because the Court need not determine the impact of the alleged antitrust violations on each class member.");

- *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *10 n.9 (N.D. Cal. Dec. 10, 2020) ("Although this Court denied [indirect purchaser plaintiffs'] renewed motion for class certification, courts 'will certify settlement classes although they had previously denied certification of the same class for litigation purposes.'") (quoting 3 Newberg and Rubenstein on Class Actions § 7:35 (6th ed.)), *aff'd*, 2022 WL 16959377 (9th Cir. Nov. 16, 2022); *id.* at *3 (approving final class settlement after denying motion for class certification because plaintiffs had "failed to offer reliable method of common proof for class-wide impact and damages");

10

- *Compare In re Capacitors Antitrust Litig.*, 2020 WL 6462393 (N.D. Cal. Nov. 3, 2020) (denying Indirect Purchaser Plaintiffs' motion for class certification with regard to non-settling Defendants Shinyei and Tatisu) *with* Prelim. Approval Order, *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264 (N. D. Cal. Oct. 21, 2021), Dkt. 2827 (preliminarily certifying settlement class of Indirect Purchaser Plaintiffs);

- *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2018 WL 3475465, at *1 (S.D.N.Y. July 19, 2018) (holding refusal to certify litigation class based on failure to satisfy Rules 23(b)(3) and 23(a)(4) did not "preclude the certification of a settlement class in this context");

- *Compare In re Domestic Drywall Antitrust Litig.*, 2017 WL 3700999 (E.D. Pa. Aug. 24, 2017) (denying Indirect Purchaser Plaintiffs' motion for certification of group of statewide classes seeking damages and nationwide class seeking injunctive relief) *with* Prelim. Approval Order, *In re Domestic Drywall Antitrust Litig.*, No. 2:13-md-02437 (E.D. Pa. June 6, 2018), Dkt. 743 (granting preliminary approval settlement Nationwide Class and State Damages Class);

- *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12333442, at *46 n.112, *56 ("[C]ourts considering settlement class certifications … [need not] grapple with such issues as whether or how the fact of damage, or 'antitrust impact,' could be proved on a classwide basis in order to find that common issues predominate. Proof of injury has no practical application if the defendant has offered compensation to all class members and the case is not going to be tried."); *id.* at *52 (concluding "that a settlement class may be certified as to Class States California and New Mexico for purposes of effectuating all of the settlements even though this Court rejected the certification of litigation classes in both States.");

- *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 269 F.R.D. 80 (D. Me. 2010), *aff'd*, 2012 WL 379947 (D. Me. Feb. 3, 2012) (certifying nationwide damages settlement class under Rule 23(b)(3), even after the circuit court vacated district court's prior certification of identical litigation class);

- *Ramirez v. DeCoster*, 142 F. Supp. 2d 104, 111 n.9 (D. Me. 2001) (certifying settlement class even after refusing to certify litigation class).

The above cases illustrate that district courts around the country regularly recognize that the legal standard for certification is different in the settlement-only class context, and grant certification of settlement-only classes even after denying certification of a litigation class. Therefore, Plaintiffs respectfully request that their motion for preliminary approval of the Credit Suisse settlement be granted.

11

    Respectfully submitted,

| | |
|---|---|
| /s/ *Daniel L. Brockett* | /s/ *Michael Eisenkraft* |
| Daniel L. Brockett<br>Co-Lead Counsel for Plaintiffs | Michael Eisenkraft<br>Co-Lead Counsel for Plaintiffs |