**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: INTEREST RATE SWAPS ANTITRUST LITIGATION | Case No.    16-MD-2704 (JPO) |
| This Document Pertains To: | Hon. J. Paul Oetken |
| ALL CLASS ACTION CASES | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE NEW SETTLEMENT AGREEMENT**

### TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

REQUESTED TWO-STEP PRELIMINARY APPROVAL PROCEDURE ..................................2

PROCEDURAL BACKGROUND..............................................................................................3

SUMMARY OF THE NEW SETTLEMENT ............................................................................5

ARGUMENT .............................................................................................................................8

I.      THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY
        APPROVAL ....................................................................................................................8

        A.      The Settlement Is Procedurally Fair ....................................................................9

        B.      The Settlement Is Substantively Fair ...................................................................9

                1.      The complexity, expense, and likely duration of the litigation ................10

                2.      The reaction of the class to the settlement ...................................................11

                3.      The stage of the proceedings........................................................................11

                4.      The risks of establishing liability and damages ..........................................12

                5.      The risks of maintaining a class action through trial ...............................13

                6.      The ability of the Newly Settling Defendants to withstand a greater
                        judgment ......................................................................................................13

                7.      The reasonableness of the settlement in light of the best possible
                        recovery and attendant litigation risks ........................................................14

        C.      The Rule 23(e)(2) Factors Support Preliminary Approval of the Settlement........15

                1.      Rule 23(e)(2)(A)—Plaintiffs and Co-Lead Counsel have
                        adequately represented the class .................................................................15

                2.      Rule 23(e)(2)(B)—the New Settlement Agreement was negotiated
                        at arm's length..............................................................................................16

                3.      Rule 23(e)(2)(C)—the monetary relief is adequate ...................................16

                4.      Rule 23(e)(2)(D)—the settlement treats class members equitably
                        relative to each other ....................................................................................18

II.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED..............................................20

A. The Requirements of Rule 23(a) Are Satisfied ........................................................21

  1. The Settlement Class satisfies the numerosity requirement ....................21

  2. There are questions of law and fact common to all Settlement
   Class Members ..........................................................................................21

  3. Plaintiffs' claims are typical of those of the Settlement Class..................21

  4. The Settlement Class is fairly and adequately represented.......................22

B. The Requirements of Rule 23(b)(3) Are Satisfied ...................................................22

  1. Common questions of law and fact predominate.......................................22

  2. A class action is the superior method for resolving this case ...................23

C. Quinn and Cohen Should Be Appointed as Counsel for the Settlement
  Class ........................................................................................................................24

III. APPOINTMENT OF ESCROW AGENT, SETTLEMENT ADMINISTRATOR,
 AND RELATED RELIEF ....................................................................................................24

CONCLUSION........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ....................................................................................14

*In re "Agent Orange" Prod. Liab. Litig.*,
  818 F.2d 145 (2d Cir. 1987)............................................................................................19

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...................................................................................................24, 25

*In re American International Group, Inc. Securities Litigation*,
  689 F.3d 229 (2d Cir. 2012)...................................................................................20, 22, 23

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).................................................................11, 15

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000)..............................................................................................15

*In re Capacitors Antitrust Litig.*,
  2020 WL 6462393 (N.D. Cal. Nov. 3, 2020) ..................................................................20

*Chhab v. Darden Rests., Inc.*,
  2016 WL 3004511 (S.D.N.Y. May 20, 2016) ..................................................................23

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)........................................................................................10, 15

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007).............................................................................................21

*In re Currency Conversion Fee Antitrust Litig.*,
  264 F.R.D. 100 (S.D.N.Y. 2010) ....................................................................................22

*Dial Corp. v. News Corp.*,
  314 F.R.D. 108 (S.D.N.Y. 2015) ....................................................................................22

*In re Domestic Drywall Antitrust Litig.*,
  2017 WL 3700999 (E.D. Pa. 2017) .................................................................................20

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  2013 WL 12333442 (N.D. Cal. Jan. 8, 2013) .................................................................20

*In re Elec. Books Antitrust Litig.*,
   2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ...............................................................21, 24

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
   104 F. Supp. 3d 290 (E.D.N.Y. 2015) ..................................................................................12

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019)........................................................................17, 18, 24

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   2018 WL 3475465 (S.D.N.Y. July 19, 2018) .......................................................................20

*Markson v. CRST Int'l, Inc.*,
   2022 WL 805615 (C.D. Cal. Feb. 24, 2022)..........................................................................20

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015)......................................................................................10

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012)......................................................................................9

*Moses v. N.Y. Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ......................................................................................................9

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) ...........................................................................................15

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998)........................................................................10, 12, 13, 19

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   269 F.R.D 80 (D. Me. 2010)...................................................................................................20

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)...................................................................................................14

*In re Payment Card Interchange Fee & Merch. Dis. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ...........................................................................8, 9, 10, 17

*In re Platinum & Palladium Commodities Litig.*,
   2014 WL 3500655 (S.D.N.Y. July 15, 2014) .........................................................................8

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) .............................................................................................11

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)...................................................................................................23

*Rosi v. Aclaris Therapeutics, Inc.*,
    2021 WL 5847420 (S.D.N.Y. Dec. 9, 2021) ........................................................16

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .......................................................14

*U.S. Football League v. National Football League*,
    842 F.2d 1335 (2d Cir. 1988) .............................................................................13

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001) ...............................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ...................................................................................6

*Wallace v. IntraLinks*,
    302 F.R.D. 310 (S.D.N.Y. 2014) ........................................................................21

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) .....................................................................12

*Weber v. Gov't Emps. Ins. Co.*,
    262 F.R.D. 431 (D.N.J. 2009) ............................................................................13

## Other Authorities

Fed. R. Civ. P. 23 ............................................................................... *passim*

## PRELIMINARY STATEMENT

After extensive negotiations, and eight years of litigation, Plaintiffs have reached a settlement agreement with all remaining Defendants in this case.[1]  The settlement includes a $46 million cash payment, bringing the total cash value of settlements in the case to $71 million.  *See* June 27, 2024 Decl. of Daniel L. Brockett ("June 2024 Brockett Decl."), Ex. 1 ("New Settlement Agreement" or "NSA").  In return, Plaintiffs have agreed to release the Newly Settling Defendants and related entities from the claims arising from or related to the factual predicate of this action.  If approved, the settlement will deliver substantial cash relief to the proposed Settlement Class and bring to a close more than eight years of protracted litigation.

The settlement represents an excellent recovery for the class given the challenges and uncertainties of further litigation.  The settlement is the product of extensive arm's-length negotiations between experienced counsel.  Based on our experience and knowledge of the claims and defenses at issue, Co-Lead Counsel believe that the settlement is in the best interests of the Settlement Class, and the Named Plaintiffs fully support the New Settlement Agreement.  Plaintiffs thus respectfully submit that the settlement is fair, reasonable, and adequate, and thus meets all of the requirements for certification and preliminary approval of a settlement class.

---

[1] Those Defendants, hereinafter "Newly Settling Defendants," are:  Bank of America Corporation; Bank of America, N.A.; Merrill Lynch, Pierce, Fenner & Smith Incorporated (n/k/a BofA Securities, Inc.); Barclays Bank PLC; Barclays Capital Inc.; BNP Paribas, S.A.; BNP Paribas Securities Corp.; Citigroup Inc.; Citibank, N.A.; Citigroup Global Markets Inc.; Citigroup Global Markets Limited; Deutsche Bank AG; Deutsche Bank Securities Inc.; The Goldman Sachs Group, Inc.; Goldman, Sachs & Co. LLC; Goldman Sachs Bank USA; Goldman Sachs Financial Markets, LP; Goldman Sachs International; JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; J.P. Morgan Securities LLC; J.P. Morgan Securities plc; Morgan Stanley; Morgan Stanley Bank, N.A.; Morgan Stanley & Co. LLC; Morgan Stanley Capital Services LLC; Morgan Stanley Derivative Products Inc.; Morgan Stanley & Co. International plc; Morgan Stanley Bank International Limited; NatWest Group plc (f/k/a The Royal Bank of Scotland Group plc); NatWest Markets plc (f/k/a Royal Bank of Scotland plc); NatWest Markets Securities Inc. (f/k/a RBS Securities Inc.); UBS AG; and UBS Securities LLC.

Plaintiffs seek entry of the proposed Preliminary Approval Order submitted herewith.  *See* NSA,

Ex. A (the "Preliminary Approval Order").

<u>**REQUESTED TWO-STEP PRELIMINARY APPROVAL PROCEDURE**</u>

Plaintiffs previously requested preliminary approval of a settlement with the Credit

Suisse Defendants.  *See* Mot. for Prelim. Approval with Credit Suisse, ECF No. 977.  That

motion is still pending.  Assuming that both the Credit Suisse settlement and the New Settlement

are preliminarily approved at or around the same time, Plaintiffs intend to give class members a

single notice of their rights under both settlements.  Plaintiffs also intend for the settlement funds

to be distributed pursuant to a substantially similar plan of allocation.

Before we can put in place the processes necessary to create a notice plan, an allocation

plan, and a path towards a fairness hearing for both settlements, the Court must first grant

preliminary approval of the settlement terms themselves.  By this motion, as with the Credit

Suisse preliminary approval motion, Plaintiffs seek only preliminarily approval of *the settlements*

*themselves.*  Preliminary approval of the settlements is an important first step not just because

prompt action is a contractual requirement under both settlements; it is important because the

class does not receive the settlement funds—and thus, cannot benefit from earning interest—

until preliminary approval is granted.  *See* NSA ¶ 3.1; Credit Suisse Settlement Agreement ¶ 3.1,

ECF No. 979-1.

This two-step structure ensures that the parties have an initial preliminary approval of the

settlements before undertaking the substantial burden of developing a notice and allocation plan.

Similar two-step preliminary approval processes have been adopted in several recent class action settlements in this District.[2]

Accordingly, Plaintiffs request the Court approve a two-step preliminary approval process, so that settlement administration can proceed expeditiously and class members can begin to benefit from the accrual of interest on the settlement amounts.  Plaintiffs' motion for approval of the notice and allocation plans, and then eventually their motion for final approval, would follow in due course.

## PROCEDURAL BACKGROUND

More than eight years ago, after a proprietary and independent investigation, Cohen Milstein Sellers & Toll PLLC ("Cohen") and Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") (collectively "Co-Lead Counsel") filed an initial complaint in this litigation alleging a conspiracy among major dealers in Interest Rate Swaps ("IRS") to jointly boycott efficient all-to-all trading platforms.  Class Action Compl., *Pub. School Tchrs.' Pension & Ret. Fund of Chi. v. Bank of Am. Corp.*, No. 15-cv-9319-PAE (S.D.N.Y. Nov. 25, 2015), ECF No. 1.  Subsequent complaints followed and were consolidated in a multidistrict litigation assigned to Judge Engelmayer.  Op. & Order No. 4 at 2, 6, ECF No. 99; Order No. 1, ECF No. 11.  Co-Lead Counsel were appointed in August 2016.  Op. & Order No. 4, ECF No. 99.  Defendants' motions

---

[2] *See, e.g.*, Order Preliminarily Approving Settlement Agreement, *Iowa Public Employees' Ret.t Sys. v. Bank of Am. Corp.*, No. 1:17-cv-6221-KPF (Sept. 1, 2023), ECF No. 654; Order Preliminarily Approving the Deutsche Bank Settlement Agreement, *In re Commodity Exch. Inc. Gold Futures & Options Trading Litig.*, No. 14-md-2548-VEC (S.D.N.Y. Dec. 9, 2016), ECF No. 187; Order Preliminarily Approving Class Action Settlement, *In re London Silver Fixing, Ltd. Antitrust Litig.*, No. 14-md-2573-VEC (S.D.N.Y. Nov. 23, 2016), ECF No. 166; Order Preliminarily Approving Settlement Agreements, *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126-JMF (S.D.N.Y. May 11, 2016), ECF No. 228; Order Preliminarily Approving Settlements, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13-cv-7789-LGS (S.D.N.Y. Dec. 15, 2015), ECF No. 536.

to dismiss were extensively briefed and argued, and in July 2017, the Court granted in part and denied in part the motions.  Op. & Order, ECF No. 237.

The parties engaged in extensive discovery, reviewing millions of documents, analyzing more than 150,000 individual transactions, and completing more than 150 depositions in three countries.  The parties briefed Plaintiffs' extensive class certification motion over the course of more than nine months, including a sur-reply, concluding in November 2019.[3]

While the parties were briefing certification, Judge Engelmayer recused himself due to an emergent potential conflict in September 2019, and the case transferred to Judge Oetken. Order, ECF No. 844.

In January 2022, while the class certification motion was pending, Plaintiffs settled with Defendant Credit Suisse and related entities.  *See* Mot. for Prelim. Approval with Credit Suisse, ECF No. 977.  The Court has not yet ruled on that motion.

In December 2023, the Court denied Plaintiffs' motion for class certification.  Op. & Order, ECF No. 1054.  Plaintiffs filed a petition under Federal Rule of Civil Procedure 23(f) to appeal the Court's decision, which remains undecided.  *See Pub. Sch. Tchrs.' Pension & Ret. Fund of Chi. v. Bank of Am. Corp.*, No. 24-81 (2d Cir.).  Plaintiffs also sought leave from the Court to file a motion for certification of a 23(c)(4) issue class targeted at the threshold liability question whether Defendants violated the antitrust law.  The Court has not ruled on that motion either.  *See* Letter Mot., ECF No. 1063 at 1-8.

---

[3]  *See* Mem. of Law in Supp. of Class Pls.' Mot. for Class Certification, ECF No. 723 ("Opening Cert. Br."); Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Class Certification, ECF No. 815 ("Cert. Opp'n"); Reply Mem. of Law in Supp. of Pls.' Mot. for Class Certification, ECF No. 869 ("Reply Cert. Br."); Defs.' Sur-Reply in Opp'n to Pls.' Mot. for Class Certification, ECF No. 891 ("Cert. Sur-Reply").

In a teleconference on January 10, 2024, the Court sought letter briefing on the effect of the Court's denial of certification for the litigation class on its authority to certify a settlement class. *See* Minute Entry (Jan. 10, 2024). On January 31, 2024, Plaintiffs submitted a letter citing authority for the notion that courts routinely certify settlement-only classes, even after denying a motion for certification of a litigation class. *See* Letter Mot., ECF No. 1063 at 8-11.

## SUMMARY OF THE NEW SETTLEMENT

***Settlement Amount.*** The monetary component of the New Settlement Agreement is $46 million (the "Settlement Amount"). NSA ¶ 1.39. Following preliminary approval, the Settlement Amount will be wired into an Escrow Account and invested in interest-bearing U.S. Government instruments. NSA ¶ 3.1. The Settlement Amount, less any applicable taxes, attorneys' fees, service awards and expenses, will be distributed to Authorized Claimants in accordance with an allocation plan to be approved by the Court and included in the Class Notice prior to Final Approval. *See* NSA ¶ 7.4. No portion of the Settlement Amount may be returned to the Newly Settling Defendants unless the New Settlement Agreement is terminated due to the Court's disapproval or a materially significant portion of Settlement Class Members opt out of the settlement. *See* NSA ¶ 7.11, § 10.

***Settlement Class Definition.*** The New Settlement Agreement is made on behalf of a proposed Settlement Class defined as:

> [A]ll persons or entities who, directly or through an agent, entered into one or more U.S. IRS Transactions with any Defendant during the Settlement Class Period.[4]

---

[4] "Excluded from the Settlement Class are Defendants and their officers, directors, management, employees, and current subsidiaries or affiliates. Also excluded are any entities registered as "swap" dealers with the Commodity Futures Trading Commission ('CFTC') during the Class Period, the United States Government, and all of the Released Settling Defendant Parties, provided, however, that Investment Vehicles shall not be excluded from the definition of the Settlement Class." NSA ¶ 1.40.

NSA ¶ 1.40.  This definition closely mirrors the class definition sought in Plaintiffs' motion for

class certification, *see* Opening Cert. Br. at 2, and the one set forth in the prior Credit Suisse

settlement.  *See* Credit Suisse Settlement Agreement, ECF No. 979-1, at ¶ 1.39.  The Settlement

Class Period is from January 1, 2008 through June 10, 2024.  NSA ¶ 1.42.  A U.S. IRS

Transaction:

> means a fixed-for-floating, floating-for-fixed, or floating-for-floating interest rate
> swap, forward rate agreement, single-currency basis swap, or overnight index
> swap, in any currency, executed or cleared (i) by or on behalf of a Person either
> domiciled or located (e.g., had a principal place of business) in the United States
> or its territories at the time of such execution [and] clearing; or (ii) by or on behalf
> of a Person that was domiciled and located outside the United States and its
> territories at the time of any such execution or clearing, where such execution or
> clearing was in United States commerce or otherwise falls within the scope of the
> U.S. antitrust laws, regardless of the form or manner in which the transaction was
> consummated.

NSA ¶ 1.50.  This definition is intended to clarify the definition of "U.S. IRS Transaction" set

forth in the Credit Suisse Settlement Agreement.  *See* Credit Suisse Settlement Agreement, ECF

No. 979-1, at 1.49.

**Release of Claims.**  With Court approval and after the judgment is final, all claims

asserted in the Action by Plaintiffs will be dismissed with prejudice as against the Newly Settling

Defendants.  Additionally, Plaintiffs (and anyone claiming through or on behalf of them) will be

permanently barred and enjoined from asserting any of the Released Class Claims against the

Released Settling Defendant Parties.  *See* NSA § 6.  "Released Class Claims" is defined as:

> [A]ny and all manner of claims, including Unknown Claims . . . against the
> Released Settling Defendant Parties, arising from or related in any way to the
> conduct alleged or that could have been alleged in the Action, that also arise from
> or relate to the factual predicate of the Action, to the fullest extent allowed by
> law, from the beginning of time through the Execution Date.

NSA ¶ 1.32.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106-07 (2d Cir.

2005) ("The law is well established in this Circuit and others that class action releases may

include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct.").

The settlement also includes a release of claims by the Releasing Settling Defendant Parties against the Released Class Members for claims related to the "institution, prosecution, or settlement of the Released Class Claims."  NSA ¶¶ 1.34, 6.3.  The releases do not cover claims relating to enforcement of the settlement.

*Termination Provisions*.  Termination of the settlement is permitted only in the unlikely event that this Court or any appellate court issues a final order that in any material respect:  (i) declines to enter the Preliminary Approval Order; (ii) refuses to approve the New Settlement Agreement; or (iii) declines to enter the Judgment and Order of Dismissal; or if (iv) the Judgment and Order of Dismissal is modified or reversed by a court of appeal or any higher court in any material respect.  NSA ¶ 10.1.  In addition, if Settlement Class members representing 7.5% or more of IRS trading volume exclude themselves from the settlement, the Newly Settling Defendants may terminate the New Settlement Agreement.  NSA ¶ 10.2.

*Reduction of Judgment.*  As with the Credit Suisse agreement, the New Settlement Agreement contains a setoff provision.  Plaintiffs have agreed that the maximum amount they will enforce from any judgment against any non-settling Defendants in this Action will be reduced by 93.98% of the jury's award.  NSA ¶ 11.21.  Plaintiffs agreed to the term because they believe the total benefits of the settlement outweigh the total rights that are released, even accounting for this term—and because, if both the New Settlement Agreement and the Credit Suisse Agreement are approved, there will be no "non-settling Defendants," thus mooting this issue.

*Attorneys' Fees, Expenses, and Service Awards.*  The New Settlement Agreement reserves Plaintiffs' right to request interim attorneys' fees, reimbursement of expenses, and/or class representative service awards.  *See* NSA § 8.  The Settlement Class would be given notice of any such application or applications, which also would be subject to Court approval.

## ARGUMENT

## I.   THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

Rule 23(e) requires court approval of a proposed class action settlement upon finding that the proposal "is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The preliminary approval process is governed by a "likelihood standard," requiring the Court to assess whether the parties have shown that "the court will *likely* be able to grant final approval and certify the class."  *In re Payment Card Interchange Fee & Merch. Dis. Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019).  In conducting a preliminary approval inquiry, a court considers both the "negotiating process leading up to the settlement, i.e., procedural fairness, as well as the settlement's substantive terms, i.e., substantive fairness."  *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014).

Under Rule 23(e)(2), in weighing preliminary approval, the Court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2). "Paragraphs (A) and (B) constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.'  Paragraphs (C) and (D) constitute the 'substantive' analysis factors, and examine '[t]he relief that the settlement is expected to provide to class members.'"  *Payment Card*, 330 F.R.D. at 29 (quoting Fed. R. Civ.

P. 23 advisory committee's note to 2018 amendment).  These "factors . . . add to, rather than displace," the factors traditionally considered in the Second Circuit.  *Id.; accord Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023).

**A.      The Settlement Is Procedurally Fair**

"To determine procedural fairness, courts examine the negotiating process leading to the settlement."  *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012).  While courts examine the 23(e)(2) factors "holistically," "the arms-length quality of the negotiations remain a factor in favor of approving the settlement."  *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023)*.*

In the wake of the Court's decision on class certification and the parties' briefing on Plaintiffs' subsequent 23(f) motion, the New Settlement Agreement was reached through intensive settlement negotiations among experienced counsel.  Over a series of telephone meetings and emails, the Settling Parties' counsel exchanged views on the strengths and weaknesses of Plaintiffs' case in light of the recent case developments and the Newly Settling Defendants' defenses, and engaged in significant back-and-forth on the Settlement Amount and other terms of the New Settlement Agreement.  This included both calls and emails individually with counsel for certain banks as well as group calls and emails.

In recommending that the Court approve the settlement, Co-Lead Counsel have taken into account the uncertain outcome and risks of further litigation, and believe the settlement confers significant benefits to class members in light of the circumstances here.

**B.      The Settlement Is Substantively Fair**

In granting preliminary approval, courts must make a preliminary determination that the substantive terms of the proposed settlement are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Courts in this Circuit have traditionally analyzed the "*Grinnell* factors" in assessing

whether a proposed settlement is fair, reasonable, and adequate.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (listing factors), *abrogated in part on other grounds, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  As noted above, the *Grinnell* factors have not been displaced by the 2018 amendments to Rule 23(e).  *See Payment Card*, 330 F.R.D. at 29.  Each factor supports preliminary approval.

### 1.   The complexity, expense, and likely duration of the litigation

"Antitrust class actions 'are notoriously complex, protracted, and bitterly fought.'" *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases").  This case—which has already been pending for eight years, with more to come unless the settlement is approved—is no different.  From the initial motions to dismiss through discovery, depositions, and class certification briefing, sophisticated counsel intensely contested each stage of the case.  Plaintiffs, and presumably Defendants as well, have spent tens of millions of dollars on expert fees and other expenses, and dedicated tens of millions of dollars in attorney time to pursuing the litigation.  Further stages of the litigation, including appeal of the Court's denial of class certification, summary judgment, trial, and further appeals, will surely be just as extensively and expensively contested.

Plaintiffs are confident of Defendants' liability and the likelihood of prevailing at trial, but are also mindful that the Court has denied class certification and the remaining avenues for litigating as a class, and later prevailing at trial, are uncertain no matter how strong the case, especially when opposing counsel are as sophisticated and well-resourced as they are here.  In short, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result."  *In re Nasdaq Mkt.-Makers*

*Antitrust Litig.* ("*Nasdaq III*"), 187 F.R.D. 465, 477 (S.D.N.Y. 1998). This factor weighs in favor of preliminary approval.

### 2. *The reaction of the class to the settlement*

While notice has yet to be provided to potential members of the settlement class, courts generally do not consider this *Grinnell* factor at the preliminary approval stage. *See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006) ("Clearly, some of these [*Grinnell*] factors, particularly the reaction of the class to the settlement, are impossible to weigh prior to notice and a hearing."). In any event, all of the named Plaintiffs approve of this settlement, and should any objections from Settlement Class Members be received prior to the Fairness Hearing, Co-Lead Counsel will address those concerns in the final approval papers.

### 3. *The stage of the proceedings*

The "stage of the proceedings" factor ultimately concerns "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). Here, the parties have extensively litigated and assessed the strengths and weaknesses of Plaintiffs' case. They have the benefit of millions of documents, more than 150 fact and expert depositions, and a full ventilation of Plaintiffs' class certification arguments and the Court's decision, including a methodology for assessing damages and Plaintiffs' aggregate damages estimate. The parties have also fully briefed a Rule 23(f) appeal and letter briefing on moving for a Rule 23(c)(4) "issue class." Due to this work, the depth of Co-Lead Counsel's knowledge of the strengths and potential weaknesses of their claims is more than adequate to support the settlement.

4.     _The risks of establishing liability and damages_

In assessing this factor, "the Court should balance the benefits afforded the Class, including the _immediacy_ and _certainty_ of a recovery, against the continuing risks of litigation." _Flores v. Mamma Lombardi's of Holbrook, Inc._, 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015).  As noted above, Co-Lead Counsel are confident of their liability and damages cases, but nothing in litigation is ever certain and Plaintiffs will continue to be opposed by sophisticated and well-resourced defense counsel.

Defendants have throughout the litigation made clear their intent to challenge, among other things:  whether any conspiracy existed at all; the viability of the boycotted all-to-all trading platforms that would allegedly have reduced spreads in the but-for world; and the existence and extent of damages.  For instance, as noted above, Defendants filed motions to dismiss, arguing, among other things, that the Amended Complaint: (i) failed to plausibly allege a violation of Section 1 of the Sherman Act; and (ii) failed to adequately allege antitrust standing.  _See generally_ Dealer Defs.' Mem. in Supp. of Their Renewed Joint Mot. to Dismiss, ECF No. 160.  Although these arguments were largely (and correctly) rejected at the pleading stage, absent this settlement, Defendants were prepared to vigorously contest liability and damages on these and other grounds at summary judgment, trial, and on appeal.

Even if liability was established at trial, Plaintiffs would face the complexities inherent in proving damages to the jury.  There is no doubt that at trial the issue inevitably would involve a "battle of the experts."  _Nasdaq III_, 187 F.R.D. at 476.  "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ."  _In re Warner Commc'ns Sec. Litig._, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).  Thus, there is a risk that a jury might accept one or more of Defendants'

damages arguments and award nothing at all or award less than the $46,000,000, that, if approved, would be available to the Settlement Class under this settlement ($71,000,000 with the Credit Suisse settlement).  "Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."  *Nasdaq III*, 187 F.R.D. at 476.  *See generally U.S. Football League v. National Football League*, 842 F.2d 1335 (2d Cir. 1988) (affirming judgment despite $1.00 jury award).

Put another way, there is no doubt that the Newly Settling Defendants, represented by experienced counsel, would present sophisticated arguments to the Court at each step of the litigation.  When weighed against the risks of continued litigation, the significant, immediate, and certain benefits to the Settlement Class weigh in favor of preliminary approval.

    *5.*  *The risks of maintaining a class action through trial*

A detailed discussion of the risks flowing from the Court's denial of class certification would be inappropriate, lest Plaintiffs' strategic thinking be revealed if the Court does not approve the settlement.  Suffice it to say that, in light of this Court's denial of class certification, each of the potential courses of action open to Plaintiffs—Second Circuit review under Rule 23(f) and permission to seek to certify a class under Rule 23(c)(4)—are highly uncertain.  This factor weighs heavily in favor of approval.

    *6.*  *The ability of the Newly Settling Defendants to withstand a greater judgment*

"[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement."  *Weber v. Gov't*

*Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009).  Here, the financial obligations the settlement imposes are substantial.  This factor does not weigh against preliminary approval.

> 7.   *The reasonableness of the settlement in light of the best possible recovery and attendant litigation risks*

The range-of-reasonableness factor weighs the relief provided in a settlement against the strength of the plaintiff's case, including the likelihood of obtaining a recovery at trial.  This factor "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  In applying this factor "the Settlement must be judged 'not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987)).

Defendants vigorously argued against Plaintiffs' attempt to show substantial damages, and in fact disputed that Plaintiffs were entitled to any damages.  *See generally, e.g.*, Cert. Opp'n.  Defendants' arguments against class certification primarily focused on whether Dr. Grinblatt's methodology for calculating damages supported a finding of classwide *impact*, but many of those arguments (including those credited by the Court) implicitly attack Plaintiffs' ability to prove *damages* as well.  *See id.* at 20-63; Cert. Sur-Reply at 7-16.  Defendants also sought to limit the scope of instruments included in Plaintiffs' proposed class, and if successful these attacks would dramatically reduce potential damages.  *See* Cert. Opp'n at 63-88; Cert. Sur-Reply at 16-25.  And regardless of what Plaintiffs' damages might be calculated to be in the abstract, such a recovery against would not be guaranteed given the risks of proving liability and damages.  *See supra* § I.B.4.

Given these risks, the $46 million settlement is an excellent result for the Settlement Class (especially when considered with the Credit Suisse settlement for a total of $71 million). Indeed, as recognized by the Second Circuit, because of the riskiness of litigation, "[i]n fact there is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinell*, 495 F.2d at 455 n.2. Where, as here, Plaintiffs would face an extremely uncertain path to a full trial victory on behalf of the Class, and particularly in light of this Court's denial of Plaintiffs' motion for class certification, the $46 million settlement and $71 million total recovery is a respectable result for class members who, if those risks materialize, would likely be unable to recover anything at all.[5]

### C.   The Rule 23(e)(2) Factors Support Preliminary Approval of the Settlement

      *1.   Rule 23(e)(2)(A)—Plaintiffs and Co-Lead Counsel have adequately represented the class*

Adequacy requires determining whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

As to Plaintiffs' adequacy, Plaintiffs are entities that entered IRS transactions as defined in the Settlement Class definition. June 2024 Brockett Decl. ¶ 3; NSA ¶¶1.40, 1.42. Where, as here, Plaintiffs and members of the Settlement Class share "an interest in proving the existence of Defendants' conspiracy" and "in maximizing the aggregate amount of classwide damages," the adequacy requirement is satisfied. *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 513 (S.D.N.Y. 1996). Plaintiffs have demonstrated their adequacy to serve by actively

---

[5] *See also AOL Time Warner*, 2006 WL 903236, at *13 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

participating in the litigation and supervising Co-Lead Counsel.  For example, they have

produced thousands of documents; responded to interrogatories requests for admission; each

prepared and sat for 30(b)(6) depositions; reviewed pleadings and stayed apprised of case

developments; and guided Co-Lead Counsel throughout the litigation.  June 2024 Brockett Decl.

¶ 3; *see also generally* Opening Cert. Br. at 11-12; Reply Cert. Br. at 69-72.

As for Co-Lead Counsel, the Court previously reviewed their experience and resources in

appointing Interim Co-Lead Counsel.  Op. & Order No. 4, ECF No. 99.  In the years since that

appointment, Co-Lead Counsel have vigorously prosecuted the case—dedicating tens of

thousands of hours and tens of millions of dollars to the litigation.  Co-Lead Counsel have

significant experience successfully leading antitrust class actions in this District and nationwide,

recovering billions for plaintiffs and receiving numerous accolades, from courts and in the form

of various awards, recognizing the quality of their work.  *See* ECF Nos. 979-2, 979-3 (firm

resumes).  Co-Lead Counsel have more than adequately represented the Settlement Class's

interests and should be appointed as Settlement Class Counsel.  *See* Rule 23(g); *Rosi v. Aclaris

Therapeutics, Inc.*, 2021 WL 5847420, at *4 (S.D.N.Y. Dec. 9, 2021) (finding class counsel

adequate for purposes of Rule 23(e)(2)(A) where counsel participated in discovery, motion

practice, and prepared settlement documents).

2. _Rule 23(e)(2)(B)—the New Settlement Agreement was negotiated at arm's
length_

As discussed above, the New Settlement Agreement is the product of intensive, arm's-

length negotiations.  *See supra* § I.A.

3. _Rule 23(e)(2)(C)—the monetary relief is adequate_

Rule 23(e)(2)(C) asks the Court to consider whether the relief provided for the proposed

Settlement Class is adequate, taking into account four factors:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). Each factor supports preliminary approval.

***The costs, risks, and delay of trial and appeal***. We discuss this factor above in Sections I.B.1, I.B.3, I.B.4, and I.B.5. The $46 million monetary payment represents a respectable recovery, taking into account the potential costs, risk, and delay associated with class certification, trial, and appeal.

***Effectiveness of the proposed method of distributing relief.*** This factor requires the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019).

As discussed above, Plaintiffs are not at this time asking the Court to review any proposed notice or allocation plans. Plaintiffs will move separately for preliminary approval of the notice and allocation plans before formal notice is sent out or any other steps are taken. Even if this factor were nonetheless relevant to the limited motion currently before the Court, Plaintiffs would need to show only a *likelihood* that the Court will be able to grant approval. *Payment Card*, 330 F.R.D. at 28 n.21. The basis for such a finding can be found in the New Settlement Agreement, which requires the Newly Settling Defendants' assistance in the gathering of class member contact information, *see* NSA ¶¶ 7.2. It also outlines expectations for a standard process for receiving claim forms attested to under a penalty of perjury and subject to documentary audits, *see id.* ¶ 7.6, to be overseen by an industry-leading Settlement Administrator appointed

by the Court, *see id.* ¶ 7.3.  This process, to be detailed further when Co-Lead Counsel move

separately for preliminary approval of the notice and allocation plans, will be adequate to deter

or defeat unjustified claims.

  ***The terms of any proposed award of attorneys' fees.***  Though the New Settlement

Agreement reserves Co-Lead Counsel's right to seek attorneys' fees, no set amount of fees or

expenses is specified in the New Settlement Agreement itself.  Co-Lead Counsel will seek fees

and expenses at an appropriate time, and Rule 23(h) requires the Court to vet the reasonableness

of Co-Lead Counsel's eventual request.  The New Settlement Agreement contains no provisions

that would permit Co-Lead Counsel to seek or receive unreasonable fees.

  ***Any agreement required to be identified under Rule 23(e)(3).***  This factor requires

courts to consider "'any agreement required to be identified by Rule 23(e)(3),' that is, 'any

agreement made in connection with the proposal.'"  *GSE Bonds*, 414 F. Supp. 3d at 696 (quoting

Fed. R. Civ. P. 23(e)(2)(C)(iv) and 23(e)(3)).  Plaintiffs are not aware of the existence of any

agreement entered into between Plaintiffs and the Newly Settling Defendants bearing on the

proposal other than the New Settlement Agreement itself.  Though it is not clear they fall into the

scope of Rule 23(e)(3), Plaintiffs note that the Newly Settling Defendants have certain rights in

the event that a material portion of the Settlement Class opts out, *see* NSA § 10, and the Newly

Settling Defendants benefit from a judgment-reduction provision, *see* NSA ¶ 11.21.

  4. <u>Rule 23(e)(2)(D)—the settlement treats class members equitably relative</u>
    <u>to each other</u>

  This Rule 23(e)(2) factor "could include whether the apportionment of relief among class

members takes appropriate account of differences among their claims, and whether the scope of

the release may affect class members in different ways that bear on the apportionment of relief."

Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.  The New Settlement

Agreement indisputably treats class members "equitably."  The New Settlement Agreement's release treats all members of the Settlement Class equitably relative to one another:  Subject to Court approval, all members of the Settlement Class will be giving the Newly Settling Defendants an identical release.  And importantly, the Newly Settling Defendants' obligations are fixed—at $46 million.  This factor is thus met, as the settlement itself treats class members equitably.

To be clear, however, Plaintiffs will at a later date file a separate motion for preliminary approval for a Plan of Allocation that will provide further details as to how the Net Settlement Fund will be distributed.  But the New Settlement Agreement makes clear that even the eventual Plan of Allocation will remain distinct from the terms of the settlement itself.  NSA ¶ 1.28.

Where the settlement terms are themselves set, as here, the Second Circuit has even approved of entering *final* approval of settlements without an allocation plan.  *See In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d at 170 ("The prime function of the district court in holding a hearing on the fairness of the settlement is to determine that the amount paid is commensurate with the value of the case.  This can be done before a distribution scheme has been adopted so long as the distribution scheme does not affect the obligations of the defendants under the settlement agreement.").[6]  Here, at the preliminary approval stage, the question is only whether this Court will *likely* be able to approve the New Settlement Agreement, making it all the more irrelevant that an allocation plan has not yet been proposed.

---

[6] *See also NASDAQ III*, 187 F.R.D. at 480; Joseph McLaughlin, *2 McLaughlin on Class Actions* § 6:23 (18th ed. 2021) ("Because court approval of a settlement as fair, reasonable and adequate is conceptually distinct from the approval of a proposed plan of allocation, however, courts frequently approve them separately.").

## II.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

The Court made clear that its prior certification analysis "begins and ends with the issue of predominance."  ECF No. 1054 at 11.  As discussed below, that does not prevent the certification of a class for settlement purposes.  Indeed, the situation in *In re American International Group, Inc. Securities Litigation*, 689 F.3d 229 (2d Cir. 2012) ("*AIG*"), is similar to that presented here.  There, the parties submitted a settlement for the district court's preliminary approval.  *Id.* at 236.  The district court denied the plaintiffs' class certification motion for a litigation class, and subsequently denied preliminary approval of the settlement without directly considering the separate settlement motion.  *Id.*  The Second Circuit vacated the ruling, making clear analyzing Rule 23(b)(3)'s predominance requirement in the context of a settlement class is a radically different animal than doing so for a litigation class, as the difficulties of individualized questions of proof "disappear." *Id.* at 241, 243 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  In line with this logic, courts routinely approve settlement classes after litigation classes have been denied.[7]  A discussed below, all elements for class certification are present here.  This includes the predominance factor, which, again, was the sole reason the Court did not allow the class to proceed to trial.

---

[7]    *See, e.g.*, Mem. & Order, *AIG I*, No. 1:04-cv-8141-DAB (S.D.N.Y. Sept. 11, 2013), ECF No. 714 (on remand); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2018 WL 3475465 (S.D.N.Y. July 19, 2018); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12333442, at *56 (N.D. Cal. Jan. 8, 2013) (collecting cases); *see also, e.g.*, *Markson v. CRST Int'l, Inc.*, 2022 WL 805615, at *4 (C.D. Cal. Feb. 24, 2022) (in a settlement class, "the Court need not determine the impact of the alleged antitrust violations on each class member"); *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020), *aff'd*, 2022 WL 16959377 (9th Cir. Nov. 16, 2022); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 269 F.R.D 80 (D. Me. 2010); *compare, e.g.*, *In re Capacitors Antitrust Litig.*, 2020 WL 6462393 (N.D. Cal. Nov. 3, 2020) *with* Prelim. Approval Order, *Capacitors*, No. 3:14-cv-3264 (N.D. Cal. Oct. 21, 2021), ECF No. 2827; *In re Domestic Drywall Antitrust Litig.*, 2017 WL 3700999 (E.D. Pa. 2017) *with* Prelim. Approval Order, *Drywall*, No. 2:L13-md-02437 (E.D. Pa. June 6, 2018), ECF No. 743.

### A.     <u>The Requirements of Rule 23(a) Are Satisfied</u>

#### 1.     <u>*The Settlement Class satisfies the numerosity requirement*</u>

In cases like this one involving widely traded financial instruments, the Rule 23(a)(1) numerosity requirement is readily satisfied. *See Wallace v. IntraLinks*, 302 F.R.D. 310, 315 (S.D.N.Y. 2014). Co-Lead Counsel estimate that there are thousands of members of the proposed Settlement Class. *See* Opening Cert. Br. at 8.

#### 2.     <u>*There are questions of law and fact common to all Settlement Class Members*</u>

Rule 23(a)(2)'s commonality requirement is satisfied at least one question exists that is, "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Courts routinely hold commonality exists in antitrust claims where "allegations of the existence of . . . conspiracy are susceptible to common proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007). This case requires resolution of common questions relating to the existence, scope, and effectiveness of the alleged conspiracy, as well as common questions related to whether class members suffered injury in fact and the appropriate measure of class-wide damages. *See* Opening Cert. Br. at 8-9. As such, commonality exists under Rule 23(a)(2).

#### 3.     <u>*Plaintiffs' claims are typical of those of the Settlement Class*</u>

Rule 23(a)(3) requires that, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is satisfied when, "each [class] member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Elec. Books Antitrust Litig.*, 2014 WL 1282293, at *12 (S.D.N.Y. Mar. 28, 2014) (quoting *Brown v.*

*Kelly*, 609 F.3d 467, 475 (2d Cir. 2010)).  Typicality is "not highly demanding," *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015), and is easily satisfied in antitrust cases alleging a conspiracy in violation of Section 1 of the Sherman Act, *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111 (S.D.N.Y. 2010) (collecting cases).  Plaintiffs allege Defendants conspired to boycott all-to-all anonymous trading platforms, causing class members to pay artificially and anticompetitively inflated spreads.  Accordingly, the typicality requirement is satisfied.  *See* Opening Cert. Br. at 9-11.

>    4.    *The Settlement Class is fairly and adequately represented*

As discussed *supra*, in Section I.C.1, Plaintiffs and Co-Lead Counsel have fairly and adequately represented the Settlement Class as required by Rule 23(a)(4).

>    **B.    The Requirements of Rule 23(b)(3) Are Satisfied**

Rule 23(b)(3) permits a case to be litigated as a class action if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Both requirements are met here.

>    1.    *Common questions of law and fact predominate*

In the context of a settlement-only class, the "'intractable management problems'" that must be considered for a comparable litigation class "drop out of the predominance analysis because 'the proposal is that there be no trial.'"  *AIG*, 689 F.3d at 240 (quoting *Amchem*, 521 U.S. at 625).  Rather, in settlement class certifications the focus shifts to "'whether a proposed class has sufficient unity so that absent class members can fairly be bound by decisions of class representatives.'"  *Id.* at 239 (quoting *Amchem*, 521 U.S. at 620).

Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized

proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). It weighs considerations such as class members' interest in individually litigating their claims, and the desirability of concentrating litigation in one forum, and the difficulties of managing a class action, which, again, drop out of the calculus in a settlement-only class. Fed. R. Civ. P. 23(b)(3). In a settlement class, "the certifying court must still determine whether the 'legal or factual questions that qualify each class member's case as a genuine controversy' are sufficiently similar as to yield a cohesive class." *AIG*, 689 F.3d at 240 (quoting *Amchem*, 521 U.S. at 623). "[Predominance] is a 'test readily met in certain cases alleging . . . violations of the antitrust laws.'" *Id.* (quoting *Amchem*, 521 U.S. at 625).

Here, there is no question that the class "has sufficient unity so that absent [class] members can fairly be bound." *Id.* at 239 (quoting *Amchem*, 521 U.S. at 621). All class members' potential individual actions share the same common question of liability for antitrust violations that is being settled here, and all would face nearly identical questions (and risks) in proving antitrust injury and damages, subject to proof through essentially the same transaction data backing Plaintiffs' class certification motion. Thus, the issues resolved classwide by this settlement predominate by far over class members' individual interests in litigation (which would also not be prejudiced, given their opportunity to opt out of the class).

### 2. *A class action is the superior method for resolving this case*

Finally, a case satisfies the superiority test if "the class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims." *Chhab v. Darden Rests., Inc.*, 2016 WL 3004511, at *3 (S.D.N.Y. May 20, 2016). Superiority is an "'explicitly comparative' inquiry, requiring the court

to consider alternatives to class settlement." *GSE Bonds*, 414 F. Supp. 3d at 702 (quoting *In re Petrobras Sec.*, 862 F.3d 250, 268 (2d Cir. 2017)).[8]  Where, as here, the significant cost of prosecuting the case would render individual litigation uneconomical for many plaintiffs, proceeding as a class is the superior to alternative methods of resolution.  *See Elec. Books*, 2014 WL 1282293, at *23; *see also* Opening Cert. Br. at 59-60; Reply Cert. Br. at 73-74.  Moreover, the sheer size of the geographically disbursed Settlement Class, which contains thousands of members, renders resolution as a class superior.  *See GSE Bonds*, 414 F. Supp. 3d at 702.

      **C.**     **Quinn and Cohen Should Be Appointed as Counsel for the Settlement Class**

"An order that certifies a class action . . . must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B).  For the reasons discussed *supra*, in Section I.C.1, Plaintiffs request that Quinn Emanuel Urquhart & Sullivan, LLP and Cohen Milstein Sellers & Toll PLLC be appointed as counsel for the Settlement Class.  Copies of our firm resumes were previously submitted in connection with the Credit Suisse settlement.  *See* ECF Nos. 979-2, 979-3.

**III.**    **APPOINTMENT OF ESCROW AGENT, SETTLEMENT ADMINISTRATOR, AND RELATED RELIEF**

As part of the Preliminary Approval Order, Plaintiffs seek the Court's preliminary approval of Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator.  *See* Preliminary Approval Order ¶ 12.  As discussed in connection with the Credit Suisse settlement, Epiq is a nationally-recognized settlement administrator with a wealth of experience in administering settlements involving complex financial instruments, including credit default swaps, interest rate swaps and derivatives, and foreign exchange contracts.  *See* Epiq Firm Resume, ECF No. 979-4.

---

[8] In the settlement context, the superiority inquiry does not require analysis of the manageability of case at trial.  *See Amchem*, 521 U.S. at 620.

Plaintiffs also ask that the Court approve the appointment of The Huntington National Bank ("Huntington") as the Escrow Agent. *See* Preliminary Approval Order ¶ 13. Huntington is part of Huntington Bancshares, Inc., which is a large bank holding company and listed among the S&P 500. Huntington's National Settlement Team is one of the leading settlement account programs in the country and has handled escrow accounts in countless class action settlements. The Court should further approve the Settlement Fund as Qualified Settlement Funds ("QSFs") pursuant to Internal Revenue Code §468B and related Treasury Regulations. *See id.* ¶ 14.

Finally, Plaintiffs ask that the Court approve disbursements from the Settlement Fund for purposes of paying costs (other than attorneys' fees) incurred in preparing and providing the Settlement Class notice and paying other administrative expenses, including notice and administration expenses incurred by the Claims Administrator up to $2.5 million prior to effective date. *See* Preliminary Approval Order ¶¶ 15-16.[9] Such funds are not recoverable if the settlement is terminated or does not become final. *Id.*

## CONCLUSION

On the basis of the foregoing, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval of the New Settlement Agreement and enter the Preliminary Approval Order also appointing the Escrow Agent and the Settlement Administrator, and authorizing payment of certain administrative fees.

Dated: June 27, 2024                           Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By:   /s/ Michael B. Eisenkraft
Michael B. Eisenkraft
Sharon K. Robertson

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:   /s/ Daniel L. Brockett
Daniel L. Brockett
Sascha N. Rand

---

[9] After the Effective Date there are no limitations on Co-Lead Counsel's use of the Settlement Fund to pay reasonable and necessary notice and administration fees. *Id.*

Christopher J. Bateman
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
Fax: (212) 838-7745
meisenkraft@cohenmilstein.com
srobertson@cohenmilstein.com
cbateman@cohenmilstein.com

Carol V. Gilden (*pro hac vice*)
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Fax: (312) 357 0369
cgilden@cohenmilstein.com

Steven J. Toll (*pro hac vice*)
Julie Goldsmith Reiser (*pro hac vice*)
Brent W. Johnson (*pro hac vice*)
Daniel H. Silverman (*pro hac vice*)
Robert W. Cobbs
1100 New York Ave NW, Suite 500
Washington, DC 20005
Telephone: (202) 408 4600
Fax: (202) 408 4699
stoll@cohenmilstein.com

jreiser@cohenmilstein.com
bjohnson@cohenmilstein.com
dsilverman@cohenmilstein.com
rcobbs@cohenmilstein.com

*Interim Co-Lead Counsel and Attorneys for
Public School Teachers' Pension and
Retirement Fund of Chicago and Los
Angeles County Employees Retirement
Association*

Steig D. Olson
David LeRay
Will Sears (*pro hac vice*)
Maxwell Deabler-Meadows
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000
Fax: (212) 849-7100
danbrockett@quinnemanuel.com
sascharand@quinnemanuel.com
steigolson@quinnemanuel.com
davidleray@quinnemanuel.com
willsears@quinnemanuel.com
maxmeadows@quinnemanuel.com

Jeremy D. Andersen (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
jeremyandersen@quinnemanuel.com

*Interim Co-Lead Counsel and Attorneys for
Public School Teachers' Pension and
Retirement Fund of Chicago and Los Angeles
County Employees Retirement Association*

**SUSMAN GODFREY L.L.P.**

William Christopher Carmody
Seth Ard
Cory Buland
Elisha B. Barron
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone: (212) 336-8330
Fax: (212) 336-8340
bcarmody@susmangodfrey.com
sard@susmangodfrey.com
cbuland@susmangodfrey.com
ebarron@susmangodfrey.com

*Attorneys for Mayor and City Council of
Baltimore*