**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: INTEREST RATE SWAPS ANTITRUST LITIGATION | MDL No. 2704 Master Docket No.  16 MD 2704 (JPO) |
| This Document Pertains To: ALL CLASS ACTION CASES | Hon. J. Paul Oetken |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENTS, CERTIFICATION OF THE SETTLEMENT CLASSES, AND FINAL APPROVAL OF THE PLANS OF ALLOCATION**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..........................................................................................1

SUMMARY OF THE ACTION AND THE SETTLEMENTS ........................................2

ARGUMENT ...................................................................................................................4

I.     THE SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE, AND
MERIT APPROVAL BY THE COURT ..............................................................4

    A.    Public Policy Favors and Encourage Settlements of Class Actions ........................4

    B.    Class Action Settlements Warrant Approval When They Are Fair,
Reasonable, and Adequate ...............................................................................5

    C.    The Proposed Settlements Are Procedurally Fair ........................................................7

        1.    Rule 23(e)(2)(a)—Plaintiffs and Co-Lead Counsel have adequately
represented the Settlement Classes ................................................................7

        2.    Rule 23(e)(2)(B)—The proposed Settlements were negotiated at
arm's length ...............................................................................................8

    D.    The Proposed Settlements Are Substantively Fair .....................................................9

        1.    The proposed Settlements are adequate in light of the costs, risk,
and delay of trial and appeal...........................................................................9

            (a)    The complexity, expense, and likely duration of the
litigation (Grinnell factor 1) ...........................................................9

            (b)    The reaction of the class to the settlement (Grinnell factor
2) ...................................................................................................10

            (c)    The risk of establishing liability and damages (Grinnell
factors 4 and 5)..............................................................................11

            (d)    Maintaining class action status through trial presents a
substantial risk (Grinnell factor 6) ...............................................12

            (e)    Defendants' ability to withstand a greater judgment
(Grinnell factor 7) ........................................................................12

            (f)    The proposed Settlement Amount is reasonable in view of
the best possible recovery and the risks of litigation
(Grinnell factors 8 and 9) ..............................................................12

        2.    The claims process is fair and rational, and the proposed method
for distributing relief is effective.................................................................13

        3.    The proposed award of attorneys' fees supports final approval.................15

        4.    The parties have no other agreements in connection with the
Settlements..................................................................................................15

        5.    Class members are treated equitably...........................................................16

    E.     The Reaction of the Settlement Class Merits Approval ........................................ 17

II.    THE NOTICE PLAN ADEQUATELY APPRISED MEMBERS OF THE
      SETTLEMENT CLASS OF THEIR RIGHTS .................................................... 17

III.   THE PLANS OF ALLOCATION ARE FAIR AND ADEQUATE ................................ 19

IV.   THE PROPOSED SETTLEMENT CLASSES SHOULD BE FINALLY
      CERTIFIED .................................................................................................... 20

CONCLUSION ................................................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### CASES

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...................................................................... 1, 5-12, 17

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................................................ 8

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) .................................................................... 5, 9

*In re Agent Orange Prod. Liab. Litig. MDL 381*,
    818 F.2d 145 (2d Cir. 1987) .......................................................................... 14

*In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................... 7, 20

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    2019 WL 2554232 (N.D. Cal. May 3, 2019) ...................................................... 20

*In re HealthSouth Corp. Sec. Litig.*,
    334 Fed. App'x 248 (11th Cir. 2009) .............................................................. 14

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ..................................................... 20

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) .................................................................... 18

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ..................................................................... 7

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................ 11, 14

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
    2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) .................................................... 19

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................. 11, 15

*In re Veeco Instruments Secs. Litig.*,
    2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ..................................................... 15

*In re Vitamin C Antitrust Litig.*,
   2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ............................................................ 10

*In re Washington Pub. Power Supply Sys. Secs. Litig.*,
   1988 WL 158947 (W.D. Wash. July 28, 1988) ........................................................ 14

*Jermyn v. Best Buy Stores, L.P.*,
   2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) ............................................................ 17

*Moses v. New York Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ................................................................ 5, 6, 16, 17

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ...................................................................... 12

*Oleniak v. Time Warner Cable Inc.*,
   2013 WL 12447094 (S.D.N.Y. Dec. 17, 2013) ........................................................ 8

*Pub. Sch. Teachers' Pension Fund of Chi. v. Bank of Am. Corp.*,
   No. 1:15-cv-9319, ECF No. 1 (Nov. 25, 2015) ........................................................ 2

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................................................... 9, 13

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) .................................................................... 6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................ 4, 5, 10, 17

*Weber v. Gov't Emps. Ins. Co.*,
   262 F.R.D. 431 (D.N.J. 2009) .................................................................... 12

## RULES / STATUTES

Sherman Act §1 ........................................................................................ 11

Fed. R. Civ. P. 23 ...............................................................................*ibid.*

## PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs respectfully request that the Court grant final approval to the Credit Suisse Settlement and the New Settlement Agreement (collectively, "the Settlements"),[1] grant final approval to the Plans of Allocation, and certify the Settlement Classes.

The Settlements represent an excellent recovery for the class given the current procedural posture and the challenges and uncertainties of further litigation. The settlement is the product of extensive arm's-length negotiations between experienced counsel. Based on our experience and knowledge of the claims and defenses at issue, Co-Lead Counsel believe that the settlements are in the best interests of the Settlement Class, and the Named Plaintiffs fully support the settlements. The Settlements are fair, reasonable, and adequate. They satisfy the requirements of Rule 23(e)(2) as well as each of the applicable factors under *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), the Second Circuit's seminal decision on settlement approval standards.

The proposed Plans of Allocation have been drafted by experienced and informed counsel, and they efficiently and equitably distribute the settlement funds to qualified members of the Settlement Classes. As described more fully in the Plans of Allocation themselves, class members will be allocated proceeds *pro rata* based on the notional value of their qualifying activity, adjusted by a factor accounting for legal risks associated with certain kinds of claims, based on transaction type and transaction date. As more fully detailed below, similar notional-

---

[1]  All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulations and the April 16, 2025 Joint Declaration of Daniel L. Brockett and Michael B. Eisenkraft (the "Joint Declaration" or "Joint Decl."), submitted herewith.

value-and-risk based plans of distribution in financial services antitrust class actions have been regularly approved in this District.

Finally, as this Court recognized when granting preliminary approval, the Settlement Classes meet all requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—as well as the predominance and superiority requirements of Rule 23(b)(3). The preliminarily certified Settlement Classes should therefore be granted final certification for settlement purposes under Rules 23(a) and 23(b)(3).

## SUMMARY OF THE ACTION AND THE SETTLEMENTS

Following a proprietary investigation undertaken without the benefit of any government action, Cohen Milstein Sellers & Toll PLLC and Quinn Emanuel Urquhart & Sullivan, LLP ("Co-Lead Counsel") filed an initial complaint in November 2015 on behalf of Public School Teachers' Pension and Retirement Fund of Chicago alleging a conspiracy among major dealers in interest rate swaps ("IRS") to jointly boycott efficient, all-to-all trading platforms then emerging in the industry. *Pub. Sch. Teachers' Pension Fund of Chi. v. Bank of Am. Corp.*, No. 1:15-cv-9319, ECF No. 1 (Nov. 25, 2015). Several similar complaints were later filed in this Court and the United States District Court for the Northern District of Illinois, as well as complaints by the allegedly boycotted platforms, all of which were consolidated with this litigation before Judge Paul A. Engelmayer. *In re: Interest Rate Swaps Antitrust Litig.*, No. 1:16-md-2704, ECF No. 1 (June 3, 2016).[2] The Court appointed Cohen Milstein and Quinn Emanual to serve as Interim Co-Lead Counsel for the proposed class. ECF No. 99.

After two amended complaints and extensive briefing on Defendants' motions to dismiss, the Court granted Defendants' motions in part and denied them in part. ECF No. 237. A Third

---

[2] All subsequent ECF references are to docket numbers in this MDL.

- 2 -

Amended Complaint later added named plaintiff Los Angeles County Employees Retirement System, as well as additional fact allegations.  ECF No. 336.

Over the course of discovery, Co-Lead Counsel reviewed millions of pages of produced documents, took and defended over 140 depositions, and synthesized and analyzed several independent data sets covering more than 6 billion IRS transactions and $684 *trillion* of notional value.  Joint Decl. ¶ 7.

Plaintiffs moved for class certification in March 2019, supported by the expert reports of two world-renowned expert economists:  Prof. Mark Grinblatt of the UCLA Anderson School of Management, author of many papers touching on derivatives valuation including a seminal paper on valuation of IRS; and Prof. Darrell Duffie of the Graduate School of Business at Stanford University, a world-renowned expert on derivatives market microstructure.  ECF No. 722.  Prof. Grinblatt's damages analysis was backed by extensive data processing and analysis from a leading litigation support firm.  Joint Decl. ¶ 61.

While the parties briefed class certification, Plaintiffs also filed the presently operative Fourth Amended Complaint, adding additional allegations.  ECF No. 748.

The parties completed briefing on class certification, including a sur-reply, in late 2019. ECF No. 891.  In January 2022, while the class certification motion was pending, Plaintiffs settled with Defendant Credit Suisse and related entities for $25 million, and sought preliminary approval of the settlement.  ECF No. 977.

On December 15, 2023, the Court issued an opinion and order denying Plaintiffs' motion for class certification.  ECF No. 1054.  Plaintiffs timely filed a petition in the Second Circuit seeking permission to appeal the Court's decision under Fed. R. Civ. P. 23(f).  Plaintiffs also subsequently sought leave from this Court to file a motion to certify an issue class under Fed. R.

Civ. P. 23(c)(4), which the Court denied as moot in light of the present settlement. ECF Nos. 1063, 1086.

In June 2024, Plaintiffs and the remaining Defendants reached a settlement agreement, disposing of the remaining claims for $46 million. ECF No. 1080-1. The settlement releases all claims on behalf of a Settlement Class comprised of "[A]ll persons or entities who, directly or through an agent, entered into one or more U.S. IRS Transactions with any Defendant during the Settlement Class Period." *Id.* ¶ 1.40. The Settlement Class Period is January 1, 2008 through June 10, 2024. *Id.* ¶ 1.42. Plaintiffs moved for preliminary approval of the settlement on June 27, 2024, ECF No. 1078, and the Court granted preliminary approval of both the Credit Suisse and New Settlements on June 11, 2024, and appointed Co-Lead Counsel for the Settlement Classes, ECF Nos. 1084, 1085.

On October 10, 2024, the Court approved Plaintiffs' proposed Notice Plan and Plan of Allocation for the Settlements. ECF No. 1099. The Settlement Administrator administered the notice plan in accordance with the Notice Order, as discussed in Section II below.

Plaintiffs respectfully refer the Court to the accompanying Joint Declaration for a more fulsome discussion of the factual background and procedural history of the action, the extensive efforts undertaken by Plaintiffs and Co-Lead Counsel, the risks of continued litigation, and a discussion of the negotiations leading to the Settlements.

## ARGUMENT

## I.    THE SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE, AND MERIT APPROVAL BY THE COURT

### A.    Public Policy Favors and Encourage Settlements of Class Actions

"The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005).

The Second Circuit acknowledges the "strong judicial policy in favor of settlements, particularly in the class action context." *Id.*; *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.").

**B.    Class Action Settlements Warrant Approval When They Are Fair, Reasonable, and Adequate**

Final approval of a class action settlement is appropriate where the court determines the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Courts evaluating the fairness, reasonableness, and adequacy of a proposed settlement must consider the four factors outlined in Rule 23(e)(2) holistically . . . [as well as] our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement." *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). Both procedural and substantive fairness are considered in evaluating class action settlements. *See Wal-Mart*, 396 F.3d at 116 ("A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement.").

The revised Rule 23 articulates a four-pronged test to address the procedural and substantive fairness of a proposed class action settlement. Rule 23(e)(2) provides that:

> (2)    *Approval of the Proposal*. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)    the class representatives and class counsel have adequately represented the class;
> >
> > (B)    the proposal was negotiated at arm's length;
> >
> > (C)    the relief provided for the class is adequate, taking into account:
> >
> > > (i)    the costs, risks, and delay of trial and appeal;

> (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)    any agreement required to be identified under Rule 23(e)(3); and

> (D)    the proposal treats class members equitably relative to each other.

The first two of these prongs (Rule 23(e)(2)(A)-(B)) address the "procedural" fairness of the settlement, while the last two prongs (Rule 23(e)(2)(C)-(D)) address the "substantive" fairness. *See* Advisory Committee's Notes to 2018 Amendments to Rule 23.

Courts in the Second Circuit have also traditionally considered the "*Grinnell* factors" to assist in weighing final approval and determining whether a settlement is substantively "fair, reasonable, and adequate":

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.  *See Moses*, 79 F.4th at 243 ("the revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors").  In assessing the fairness of a class action settlement, "[a]ll nine [*Grinnell*] factors need not be satisfied, rather, the court should consider the totality of these factors in light of the particular circumstances."  *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).

In preliminarily approving the Settlements, the Court made initial determinations that it would likely be able to conclude that the Settlements were each fair, reasonable, and adequate,

and satisfied the requirements of Rule 23(e).  As detailed below, there is no reason to backtrack

from that initial determination.

      **C.**      **The Proposed Settlements Are Procedurally Fair**

            *1.*      *Rule 23(e)(2)(a)—Plaintiffs and Co-Lead Counsel have adequately represented the Settlement Classes*

Under the first prong of Rule 23(e)(2), the Court must consider that "the class

representatives and class counsel have adequately represented the class" prior to approving a

proposed class action settlement.  Fed. R. Civ. P. 23(e)(2)(A).  Rule 23(e)(2) overlaps with the

third *Grinnell* factor, which considers "whether the parties had adequate information about their

claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the

strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for

purposes of settlement."  *In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*, 909 F.

Supp. 2d 259, 267 (S.D.N.Y. 2012).

As to Plaintiffs' adequacy, where, as here, Plaintiffs and members of the Settlement Class

share "an interest in proving the existence of Defendants' conspiracy" and "in maximizing the

aggregate amount of classwide damages," the adequacy requirement is satisfied.  *In re NASDAQ*

*Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 513 (S.D.N.Y. 1996).  Plaintiffs have

demonstrated their adequacy to serve by actively participating in the litigation and supervising

Co-Lead Counsel.  For example, they have produced thousands of documents; responded to

interrogatories requests for admission; each prepared and sat for 30(b)(6) depositions; reviewed

pleadings and stayed apprised of case developments; and guided Co-Lead Counsel throughout

the litigation.  Joint Decl. ¶¶ 28, 33, 46, 93.

As described in more detail in the accompanying Joint Declaration, Co-Lead Counsel,

who are highly experienced in antitrust class action litigation, litigated this case fiercely for

nearly nine years—completing fact discovery, class expert discovery, and a lengthy motion for class certification. We estimated class-wide damages with the help of blue-chip experts, responded to Defendants' countervailing arguments, and received this Court's considered assessment of the case's suitability for class treatment. Co-Lead Counsel thus "developed a comprehensive understanding of the key legal and factual issues in the litigation and, consistent with *Grinnell*, had 'a clear view of the strengths and weaknesses of their case' and of the range of possible outcomes at trial" at the time the Settlements were reached. *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *7 (S.D.N.Y. May 9, 2014).

Thus, the requirements of Rule 23(e)(2)(A) are satisfied and the third *Grinnell* factor weighs in favor of settlement. *See also Oleniak v. Time Warner Cable Inc*., 2013 WL 12447094, at *6 (S.D.N.Y. Dec. 17, 2013) (third *Grinnell* factor weighs in favor of final approval when "over the course of more than a year before entering into settlement discussions, Plaintiffs obtained substantial informal and formal discovery, including documentary evidence, deposition testimony, and data on Class Members' damages").

 2. <u>Rule 23(e)(2)(B)—The proposed Settlements were negotiated at arm's length</u>

Rule 23(e)(2)(b) requires that the Settlements be the result of arms-length negotiations. They are. *See* Joint Decl. ¶¶ 1-5, 75-76. The Credit Suisse Agreement was reached after extensive arm's-length negotiations with Credit Suisse and its counsel, concluding in late January 2022. In the wake of the Court's decision on class certification and the parties' briefing on Plaintiffs' subsequent 23(f) motion, the New Settlement Agreement was reached through intensive settlement negotiations among experienced counsel. Over a series of telephone meetings and emails, the Settling Parties' counsel exchanged views on the strengths and weaknesses of Plaintiffs' case in light of the recent case developments and the Newly Settling

Defendants' defenses, and engaged in significant back-and-forth on the Settlement Amount and other terms of the New Settlement Agreement. This included both calls and emails individually with counsel for certain banks as well as group calls and emails.

**D.    The Proposed Settlements Are Substantively Fair**

At final approval, the Court's role is not to "decide the merits of the case or resolve unsettled legal questions," or "foresee with absolute certainty the outcome of the case," but rather to "assess the risks of litigation against the certainty of recovery under the proposed settlement." *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *10 (S.D.N.Y. Mar. 24, 2014).

*1.    The proposed Settlements are adequate in light of the costs, risk, and delay of trial and appeal*

Rule 23(e)(2)(C)(i) codifies many of the *Grinnell* factors, which guide a court's assessment of the fairness of a proposed settlement in light of the attendant risks. Under Rule 23(e)(2)(C)(i), district courts consider "the costs, risks and delay of trial and appeal," while the relevant *Grinnell* factors overlap and address the risks of establishing liability and damages, taking into consideration: the complexity, expense, and likely duration of the litigation (factor 1); the risks of establishing liability (factor 4); the risks of establishing damages (factor 5); the likelihood of maintaining the class action through trial (factor 6); the ability of the defendants to withstand a greater judgment (factor 7); and the range of reasonableness of the settlement fund in light of the best possible recovery (factor 8) and in light of all the attendant risks of litigation (factor 9). Fed. R. Civ. P. 23(e)(2)(C)(i); *see Grinnell*, 495 F.2d at 463.

*(a)    The complexity, expense, and likely duration of the litigation (Grinnell factor 1)*

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *Advanced Battery*, 298 F.R.D. at 174. Numerous courts have recognized that

"federal antitrust cases are complicated, lengthy, and bitterly fought." *Wal-Mart*, 396 F.3d at

118; *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012)

("Federal antitrust cases are complicated, lengthy . . . bitterly fought as well as costly.").

   This certainly has been true for this matter.  *See generally* Joint Decl. ¶¶ 22-72.  Since the

case was first filed over nine years ago, Co-Lead Counsel have dedicated nearly 200,000 hours

of attorney time to its litigation.  Counsel took and defended more than 140 depositions in three

countries, reviewing millions of pages of documents produced by 11 defendant families and

numerous non-parties.  The class certification motion and attendant briefing encompassed

hundreds of pages of briefing and exhibits, including expert reports by some of the world's

foremost economists.  As detailed in the accompanying fee brief, this effort required

monumental investments in attorney time and up-front expenses, totaling over $100 million in

historic-rate attorney lodestar and over $23 million of expenses—almost all of which went to pay

economic experts and their data analysis teams and to maintain the case's extraordinary

documentary record.  Pursuing the case further would entail millions more in attorney time and

case expenses, with highly uncertain results, potentially over a course of several years.

Accordingly, the complexity, expense, and likely duration of the litigation (*Grinnell* factor 1),

strongly favors approving the Settlements.

<em>(b)     The reaction of the class to the settlement (Grinnell factor 2)</em>

   Plaintiffs will provide updated information with respect to the reaction of the class to

settlement in our reply brief closer to the final approval hearing.  At this point, however, no

objections to the Settlements have been received.

(c)    *The risk of establishing liability and damages (Grinnell factors 4 and 5)*

The Court's role in evaluating the risks of establishing liability and damages is not to evaluate the plaintiffs' likelihood of success, but rather to "balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 37 (E.D.N.Y. 2019).

Defendants have throughout the litigation made clear their intent to challenge, among other things: whether any conspiracy existed at all; the viability of the boycotted all-to-all trading platforms that would allegedly have reduced spreads in the but-for world; and the existence and extent of damages. For instance, as noted above, Defendants filed motions to dismiss, arguing, among other things, that the Amended Complaint: (i) failed to plausibly allege a violation of Section 1 of the Sherman Act; and (ii) failed to adequately allege antitrust standing. *See generally* ECF No. 160 (Dealer Defs.' Mem. in Supp. of Their Renewed Joint Mot. to Dismiss). Although these arguments were largely (and correctly) rejected at the pleading stage, absent settlement, Defendants were prepared to vigorously contest liability and damages on these and other grounds at summary judgment, trial, and on appeal.

It is often said that antitrust cases boil down to a "battle of the experts" at trial on proof of damages. *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998). And it is a known truth that "the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *Id.*

Put another way, there is no doubt that the Defendants, represented by experienced counsel, would present sophisticated arguments to the Court at each step of the litigation. When

- 11 -

weighed against the risks of continued litigation, the significant, immediate, and certain benefits
to the Settlement Class weigh in favor of approval.

> (d)    *Maintaining class action status through trial presents a substantial
> risk (Grinnell factor 6)*

We do not deem it necessary or appropriate to provide a detailed discussion of the risks
flowing from the Court's denial of class certification.  This would only reveal Plaintiffs' strategic
thinking if the settlements are not given final approval.  Suffice it to say that, in light of this
Court's denial of class certification, each of the potential courses of action open to Plaintiffs—
Second Circuit review under Rule 23(f) and permission to seek certification of an issues class
under Rule 23(c)(4)—were highly uncertain.  This factor weighs heavily in favor of approval.

> (e)    *Defendants' ability to withstand a greater judgment (Grinnell
> factor 7)*

"In any class action against a large corporation, the defendant entity is likely to be able to
withstand a more substantial judgment, and, against the weight of the remaining factors, this fact
alone does not undermine the reasonableness of the instant settlement."  *Weber v. Gov't Emps.
Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009).  The financial obligations imposed by the
settlements are substantial.  This factor does not weigh against approval.

> (f)    *The proposed Settlement Amount is reasonable in view of the best
> possible recovery and the risks of litigation (Grinnell factors 8 and
> 9)*

The range-of-reasonableness factor weighs the relief provided in a settlement against the
strength of the plaintiff's case, including the likelihood of obtaining a recovery at trial.  This
factor "recognizes the uncertainties of law and fact in any particular case and the concomitant
risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*,
464 F.2d 689, 693 (2d Cir. 1972).  In applying this factor "the Settlement must be judged 'not in

- 12 -

comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Shapiro*, 2014 WL 1224666, at *11.

Defendants vigorously argued against Plaintiffs' attempt to show substantial damages, and in fact disputed that Plaintiffs were entitled to any damages. *See generally*, ECF No. 815 (Cert. Opp'n). Defendants primarily focused on whether Dr. Grinblatt's methodology for calculating damages supported a finding of classwide impact. But many of those arguments (including those credited by the Court) implicitly attack Plaintiffs' ability to prove damages as well. *See id.* at 20-63; ECF No. 891 (Cert. Sur-Reply) at 7-16. Defendants also sought to limit the type of interest rate swaps that could be included in Plaintiffs' proposed class. If successful, these attacks too would dramatically reduce potential damages. See ECF No. 815 (Cert. Opp'n) at 63-88; ECF No. 891 (Cert. Sur-Reply) at 16-25. And regardless of what Plaintiffs' damages were in the abstract, they were not guaranteed, and proving them in a trial entailed substantial risks and uncertainties. *See supra* § I.D.1.c and I.D.1.d.

As recognized by the Second Circuit, because of the riskiness of litigation, "[i]n fact there is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinell*, 495 F.2d at 455 n.2. Though a $71 million recovery is disappointing relative to the damages Plaintiffs still believe they and class members suffered and could prove, it is an excellent result considering the Court's decision denying class certification and the risky, expensive, and needle-threading path that would be required to secure any recovery at all in the absence of the Settlements.

        2.    *The claims process is fair and rational, and the proposed method for distributing relief is effective*

With respect to Rule 23(e)(2)(C)(ii), Plaintiffs and Co-Lead Counsel have undertaken substantial efforts to ensure that members of the Settlement Classes are notified about the

proposed Settlements.  As an initial matter, the Plans of Allocation here are distinct from the

settlement terms.  *See* ECF No. 979-1 ¶1.27; ECF No. 1080-1 ¶ 1.28.  On such facts, courts can

approve settlements even without any allocation plan.  *See In re Agent Orange Prod. Liab. Litig.*

*MDL 381*, 818 F.2d 145, 170 (2d Cir. 1987) ("The prime function of the district court in holding

a hearing on the fairness of the settlement is to determine that the amount paid is commensurate

with the value of the case.  This can be done before a distribution scheme has been adopted so

long as the distribution scheme does not affect the obligations of the defendants under the

settlement agreement.").[3]  To the extent this factor is relevant to the Settlements here, it favors

approval.

A "claims processing method should deter or defeat unjustified claims, but the court

should be alert to whether the claims process is unduly demanding."  Advisory Committee's

Notes to 2018 Amendments to Rule 23.  As described in Plaintiffs' memorandum in support of

their motion to preliminarily approve the notice and allocation plans (ECF No. 1094, the "Notice

Motion"), the claims process here allows for hardcopy and electronic submissions to the

Settlement Administrator using a simplified Claim form, requiring each member of the

Settlement Classes to provide data regarding their qualifying transactions.  This must be

provided under penalty of perjury, and all claimants must also agree to submit themselves to

---

[3]  *See also, e.g., In re HealthSouth Corp. Sec. Litig.*, 334 Fed. App'x 248, 251, 253-255
(11th Cir. 2009) (rejecting contention that notice was insufficient for not setting for allocation
plan; if class members needed certainty on allocation plan they "could have opted out"); *In re
NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 480 (S.D.N.Y. 1998); *In re
Washington Pub. Power Supply Sys. Secs. Litig.*, 1988 WL 158947, at *3-4 (W.D. Wash. 1988);
2 McLaughlin on Class Actions § 6:23 (18th ed. 2021) ("Because court approval of a settlement
as fair, reasonable and adequate is conceptually distinct from the approval of a proposed plan of
allocation, however, courts frequently approve them separately."); Annotated Manual for
Complex Litig. § 21.312 (4th ed. May 2021 update) ("Often, however, the outcome of objections
. . . and the details of allocation and distribution are not established until after the settlement is
approved.").

audit, including the obligation to provide document and other information upon request.  Thus, this factor supports final approval.  *See also infra* Sections II, III (requesting final approval of notice and allocation plans).

### 3.    *The proposed award of attorneys' fees supports final approval*

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including timing of payment" as part of its adequacy assessment.  Fed. R. Civ. P. 23e(2)(C)(iii).  Again, as an initial matter, the Settlements expressly provide that they are binding even in the absence of any fee request.  *See* ECF No. 979-1 ¶ 8.4; ECF NO. 108-1 ¶ 8.4. Even that aside, Co-Lead Counsel's fee request should not delay approval of the Settlements themselves.

While Co-Lead Counsel's *combined fees and expenses* may represent a substantial portion of the common fund, the vast bulk of that request is for *expenses*.  Expenses are refunded to counsel "as a matter of course."  *See In re Veeco Instruments Secs. Litig.*, 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007).  Though large in absolute terms, these expenses were reasonable in light of the anticipated damages as well as the work necessary to move for class certification in a case of this magnitude and complexity.  The *fee* request—which is what Rule 23(e)(2)(C)(iii) on its face refers to—is only about 17% of the common fund, and only a small fraction of the lodestar Co-Lead Counsel expended in pursuing this case over the last nine years.

Thus, our separate fee request should not hold up approval of the Settlements themselves. If anything, this factor also weighs in favor of approval.

### 4.    *The parties have no other agreements in connection with the Settlements*

Rule 23(e)(2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)" that is, "any agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(2)(C)(iv) and 23(e)(3).  No agreement outside of the Settlements exists.  While it may

not be relevant to this factor, as disclosed in moving for preliminary approval, the Settlements include terms (so-called "blow provisions") under which certain relief can be requested by the Settling Defendants based on the number of exclusion requests received. The Settlements also include a judgment-reduction term relevant to the value of claims to be pursued against any non-settling defendant—which would be mooted of course, if both Settlements are given final approval. As no agreements exist outside of the Settlements, this factor strongly weighs in favor of final approval.

5.   *Class members are treated equitably*

The final factor, Rule 23(e)(2)(D), looks at whether members of the Settlement Classes are treated equitably. *See Moses*, 79 F.4th at 245 ("It bears emphasis that Rule 23(e)(2)(D) requires that class members be treated equitably, not identically."). The proposed Settlements are designed to do precisely that.

With respect to the Plans of Allocation, as discussed in Section II below, the Plans treat all class members in a similar manner: everyone who submits a valid and timely Proof of Claim and Release form, and who does not exclude himself, herself, or itself from a Settlement Class, will be subject to a common set of rules for "multiplier" and then will receive an adjusted *pro rata* share of the Net Settlement Funds or a standard alternative minimum payment.

To the extent found relevant here, the requested service awards of $25,000 for each class representative (also known as "incentive awards") are also in line with principles of equitable treatment. As recently recognized by the Second Circuit:

> [T]he equitable-treatment requirement protects the interests of class representatives who play an active role in the litigation—often providing the background information that forms the basis of the lawsuit, engaging in fact discovery, and devoting considerable time and effort into the settlement process— "from having absent class members free ride on their efforts." 5 Newberg and Rubenstein on Class Actions §§ 17:3-4 (explaining that "if the class representatives face particular risks in serving the class and/or undertake valuable

> work on behalf of the class but cannot recover any of the costs of those efforts
> through an incentive fee award, they have a fair argument that the settlement is
> not treating them equitably relative to the absent class members").

*Moses*, 79 F.4th at 245.  Here, as described in the fee brief, the proposed service awards are

reasonable and promote equity between the named plaintiffs and absent class members.

Thus, this factor also militates in favor of granting final approval of the proposed

Settlements.

### E.    The Reaction of the Settlement Class Merits Approval

"A favorable reception of the settlement" is "strong evidence" that a proposed settlement

is fair.  *Grinnell Corp.*, 495 F.2d at 462.  Plaintiffs will update the Court as to any objections or

exclusion requests received in their reply papers.

## II.    THE NOTICE PLAN ADEQUATELY APPRISED MEMBERS OF THE SETTLEMENT CLASS OF THEIR RIGHTS

At the preliminary approval stage, after a careful review the Court found that the

proposed notice plan was the "best notice practicable" and was "reasonably calculated, under the

circumstances, to apprise members of the Settlement Classes" of their rights.  *See* ECF No. 1099

(Notice Order) ¶ 9.  "There are no rigid rules to determine whether a settlement notice to the

class satisfied constitutional or Rule 23(e) requirements; the settlement notice must 'fairly

apprise the prospective members of the class of the terms of the proposed settlement and of the

options that are open to them in connection with the proceedings.'"  *Wal-Mart*, 396 F.3d at 114.

Actual notice to every class member is not required; rather, counsel need only act "reasonably in

selecting means likely to inform the persons affected."  *Jermyn v. Best Buy Stores, L.P.*, 2010

WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010).

Courts in the Second Circuit have held that notice plans are adequate when they combine

first-class mail with extensive publication notice.  *See Wal-Mart*, 396 F.3d. at 104.  Notice is

- 17 -

adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008).

As described first in Plaintiffs' Notice Motion, the notice materials and the method utilized to disseminate the materials to potential members of the Settlement Classes satisfy these standards. The notice materials informed class members of, among other things, (i) the nature of the lawsuit; (ii) the claims involved and the parties' positions; (iii) what it means for the Settlements to have been reached; (iv) a summary of the terms of the Settlements, including the monetary relief, and scope of the release; (v) the definition of the Settlement Classes; (vi) a description of the Plans of Allocation and where on the settlement website to find more detailed information about Settlement Fund allocations; (vii) the procedures and deadlines for submitting a Claim Form in order to receive a payment from a Settlement Fund; (viii) the deadlines and procedures for exclusion from the Settlement Classes, objecting to the Settlements, and attending the Fairness Hearing; (ix) that members of the Settlement Classes may, but need not, appear through their own counsel at the Fairness Hearing; (x) the binding effect of participating in the Settlements; (xi) the identity of Co-Lead Counsel; and (xii) Co-Lead Counsel's intention to move for an award of fees, expenses, and incentive awards. The Court, after reviewing the versions of the notice materials, approved the Notice Plan and found the documents to amply apprise members of the Settlement Classes of their rights. ECF No. 1099.

Pursuant to the Notice Order, the Court-approved Settlement Administrator timely sent around 187,000 notice packets to potential members of the Settlement Classes based on name and address information that was primarily obtained from the Defendants' business records. Using its proprietary, curated database, the Settlement Administrator also sent notice materials

directly to around 1,000 financial institutions so that those institutions could provide them directly to potential members of the Settlement Classes. *See* April 16, 2025 Declaration of Morgan Kimball ("Kimball Decl.") ¶¶ 3-6.[4]

In addition to the direct notice by mail, publication notice was also disseminated through placement of advertisements in several national and global print publications. *See id.* ¶¶ 9-13. Online ads were placed on pre-vetted websites, and on search engines based on relevant keyword searching, generating around 28 million impressions by the target audience of potential class members. *Id.* ¶¶ 9, 11. A press release was also disseminated. *Id.* ¶ 12. A dedicated settlement website, telephone line, and email address were also established for potential members of the Settlement Classes to easily and efficiently obtain information relating to the Settlements, access important documents, ask questions, and to submit electronic proof of claim and release forms. *Id.* ¶¶ 14-19.

This combination of individual First-Class Mail to all members of the Settlement Classes who could be identified with reasonable effort through Defendants' transactional data, supplemented by mailed notice to brokers and nominees and publication of the short-form notice in a relevant, widely-circulated publications, was "the best notice . . . practicable under the circumstances," and satisfies Rule 23 and due process. Fed. R. Civ. P. 23(e)(2)(B).

## III.    THE PLANS OF ALLOCATION ARE FAIR AND ADEQUATE

Though the Plans of Allocation are separate from the Settlements themselves, the standard for approving a plan of allocation is the same used to evaluate whether to approve a settlement—that is, the Plans must merely be fair and adequate. *See, e.g.*, *In re Payment Card*

---

[4] When notice materials were returned as undeliverable, reasonable efforts were made to find alternative addresses so that the Notice Packet could be re-sent. *See* Kimball Decl. ¶ 7.

*Interchange Fee and Merch. Disc. Antitrust Litig.*, 2019 WL 6875472, at *20 (E.D.N.Y. Dec. 16, 2019).

The Plans of Allocation, which are described in the notice materials and made available in full on the settlement website, are crafted based on the knowledge and experience of Co-Lead Counsel. For the reasons set forth in the Notice Motion, the plans are a fair method to apportion the Net Settlement Fund among Authorized Claimants based on, and consistent with, the claims alleged and their relative strengths and weaknesses. *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *10 (S.D.N.Y. Dec. 19, 2014) ("A reasonable plan may consider the relative strength and values of different categories of claims."). The Net Settlement Funds will be distributed to Authorized Claimants, *i.e.*, members of the Settlement Classes who submit timely and valid Proofs of Claim and Release that are approved for payment from a Net Settlement Fund pursuant to the relevant Plan.

Co-Lead Counsel believe that the Plans are fair and reasonable and respectfully submit that they should be approved by the Court.

## IV.    THE PROPOSED SETTLEMENT CLASSES SHOULD BE FINALLY CERTIFIED

The Court's preliminary approval orders preliminarily certified the Settlement Class. *See* ECF Nos. 1084, 1085. There have been no changes that would undermine the Court's initial determinations that certification of the Settlement Classes is appropriate under Rules 23(a) and 23(b). *See Bear Stearns*, 909 F. Supp. 2d. at 264 (finally approving settlement where there "have been no material changes to alter the proprietary of [the court's] findings" at the preliminary approval stage); *see also In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2019 WL 2554232, at *1 (N.D. Cal. May 3, 2019) ("The Court analyzed these factors in its Preliminary Approval Order and finds no reason to disturb its earlier conclusions.

The requirements of Rule 23(a) and Rule 23(b)(3) were satisfied then and they remain so now.").
For all of the reasons detailed in preliminary approval papers and in the Court's preliminary
approval orders, the proposed Settlement Classes satisfies all requirements of Rule 23(a)—
numerosity, commonality, typicality, and adequacy—as well as the predominance and
superiority requirements of Rule 23(b)(3). The preliminarily certified Settlement Class should
therefore be granted final certification for settlement purposes under Rules 23(a) and 23(b)(3).

<u>**CONCLUSION**</u>

Based on the foregoing, Plaintiffs request that the Court certify the Settlement Classes;
find the proposed Settlements to be fair, reasonable and adequate; approve the Settlements; and
enter the relevant Final Judgments. Plaintiffs also request that the Court find that the proposed
Plans of Allocation are fair, reasonable and adequate, and enter orders approving the Plans of
Allocation, which will govern distribution of the proceeds from each Settlement. Co-Lead
Counsel will submit proposed orders and judgments in connection with our reply papers.

DATED: April 16, 2025

Respectfully submitted,

*I certify that this brief contains fewer than
8,750 words, in compliance with LCR 7.1(c),
and is fewer than 25 pages, in compliance
with the Court's Individual Rules and
Practices in Civil Cases §2.B.*

**COHEN MILSTEIN SELLER & TOLL
PLLC**

By: */s/ Michael B. Eisenkraft*
Michael B. Eisenkraft
Sharon K. Robertson
Christopher J. Bateman
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
meisenkraft@cohenmilstein.com
srobertson@cohenmilstein.com
cbateman@cohenmilstein.com

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

By: */s/ Daniel L. Brockett*
Daniel L. Brockett
Sascha N. Rand
Steig D. Olson
Jonathan B. Oblak
William R. Sears
David LeRay
Anna Deknatel
Maxwell Deabler-Meadows
295 Fifth Avenue

Carol V. Gilden (*pro hac vice*)
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com

Steven J. Toll (*pro hac vice*)
Julie Goldsmith Reiser (*pro hac vice*)
Brent W. Johnson (*pro hac vice*)
Daniel H. Silverman (*pro hac vice*)
Robert W. Cobbs
1100 New York Ave NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
stoll@cohenmilstein.com
jreiser@cohenmilstein.com
bjohnson@cohenmilstein.com
dsilverman@cohenmilstein.com
rcobbs@cohenmilstein.com

*Interim Co-Lead Counsel and Attorneys for*
*Public School Teachers' Pension and*
*Retirement Fund of Chicago and Los Angeles*
*County Employees Retirement Association*

New York, New York 10016
Telephone: (212) 849-7000
danbrockett@quinnemanuel.com
sascharand@quinnemnuel.com
steigolson@quinnemanuel.com
jonoblak@quinnemanuel.com
willsears@quinnemanuel.com
davidleray@quinnemanuel.com
annadeknatel@quinnemanuel.com
maxmeadows@quinnemanuel.com

Jeremy D. Andersen (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
jeremyandersen@quinnemanuel.com

*Interim Co-Lead Counsel and Attorneys for*
*Public School Teachers' Pension and*
*Retirement Fund of Chicago and Los Angeles*
*County Employees Retirement Association*

**SUSMAN GODFREY L.L.P.**

William Christopher Carmody
Seth Ard
Cory Buland
Elisha B. Barron
560 Lexington Avenue, 15th Floor
New York, New York 10022
Telephone: (212) 336-8330
Fax: (212) 336-8340
bcarmody@susmangodfrey.com
sard@susmangodfrey.com
cbuland@susmangodfrey.com
ebarron@susmangodfrey.com

*Attorneys for Mayor and City Council of*
*Baltimore*