August 20, 2025

The Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *In re: Interest Rate Swaps Antitrust Litigation*, No. 16-md-2704-JPO; Tera's Opposition to Defendants' Letter Motion Regarding Factual Material in Possession of Daniel Droste. This Document Relates to *Tera Group, Inc., at al. v. Bank of America Corp., et al.*, No. 16-cv-02858-JPO.

Dear Judge Oetken:

    On behalf of Platform Plaintiffs Tera Group, Inc., Tera Advanced Technologies, LLC, and TeraExchange, LLC (together, "Tera"), we write to oppose Defendants' motion (ECF 1196) ("Motion" or "Mot.") requesting a discovery conference related to Defendants' untimely effort to obtain production of "TeraDirect" source code and a personal laptop computer containing source code that are in the possession of Mr. Daniel Droste, a non-party who resides in Germany.

    The Motion should be denied for several reasons. *First*, the Motion is time-barred because Defendants failed to move to compel Tera to produce the materials at issue prior to the close of fact discovery in May 2019 – more than six (6) years ago. That alone requires denial of the Motion, as Defendants themselves have successfully argued earlier in this case. *Second*, the source code sought is irrelevant and not proportional. *Third*, it is improper to reopen fact discovery for the purpose of rebutting an expert report, which Defendants admit is their objective. *Fourth*, Defendants have failed to carry their burden of proving Tera controls Mr. Droste or his German employer, Spring Trading Germany GmbH ("SGT"). *Finally*, the ultimate relief Defendants seek against Tera is unprecedented, disproportionate and prejudicial.

    **Relevant Background and Timeline.** Mr. Droste is a software developer in Germany who developed a front-end (*i.e.*, user facing) execution management system in the late 1990s called "Trade Project," which allowed retail traders licensing Mr. Droste's technology to trade in multiple asset classes ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[1]

    On April 18, 2016, Tera filed the present action following the demise of Tera's IRS trading business due to Defendants' group boycott. By such time, Mr. Droste was no longer a Director of Tera. On September 20, 2017, Tera served its Initial Disclosures identifying persons Tera "may use to support its claims," which at the time did not include Mr. Droste since Tera's claims concern Defendants' collusion, not Tera's technical functionality. *See* Exh. A hereto.

---

[1] ECF 1196-1 at 31:25-37:12; 38:6-45:16; 46:24-47:9; 63:9-14; 64:18-65:19; 66:25-68:9.

On August 17, 2025, Defendants requested Tera's documents concerning, *inter alia*, Tera's "development or attempted development of technologies for Your Trading Platform, including . . . a front-end execution management system,"[2] a request covering the Tera source code being sought here.[3] Tera objected and did not produce software source code or application releases for its Tera Direct front-end or any other component of its platform. Exh. C hereto. Tera did, however, make a substantial production of emails and related documents concerning the development, testing and deployment of component parts of the TeraExchange platform, including approximately *6,000* emails to or from Mr. Droste that fully disclosed his conduct and role. Yet, not once during fact discovery did Defendants contend Mr. Droste should be added as an ESI custodian for Tera, that Tera should collect and produce documents directly from Mr. Droste in Germany, or that Tera should produce Mr. Droste for a deposition. Without Defendants showing any interest in Mr. Droste at all, fact discovery ended on May 28, 2019.

During fact discovery, Defendants' focus included the technical functionality of the Plaintiff Platforms. Thus, following the unexpected death of Tera's CEO, Christian Martin, who would have been a witness for such matters, with leave of Court, Tera served a Supplemental Initial Disclosure identifying two new individuals, Mr. Droste and Tera's Chief Technology Officer Paul Jenkins. Tera also made a supplemental document production from its email archives for these individuals, including more than 800 additional Droste emails, and each witness appeared for a deposition. Demonstrating that Tera does not control Mr. Droste like Defendants contend, Mr. Droste did an about face on whether he would travel to New York for his deposition. Mot. 2. At Defendants' request, Tera prevailed upon him to travel to New York, which he ultimately did. The deposition occurred on December 4, 2024.[4]

Mr. Droste testified that in Germany (i) he possessed a hard drive containing a copy of the source code underlying the TeraDirect application and (ii) he had an unopenable, old personal laptop (circa 2001) on which he had conducted a small amount of TeraDirect source code development. Meanwhile, Plaintiffs' also served opening expert reports on October 27, 2024, including for Julian Jacobson who opined ███████████████████████

███████████████████████████████████████████████████[5]

███████[6]

---

[2] Exh. B hereto at Request No. 10 (emph. added). Similar requests also were served upon Javelin and trueEX.
[3] Defendants' Exh. 2 (3/14/25 letter at p. 2 (TeraDirect source code in possession of Mr. Droste "is responsive to, at a minimum, Request No. 10")).
[4] *See* Defendants' Exh. 2 at 1-4. Defendants' claim that Tera "has fallen short" of its "commit[ment]" at the January 10, 2024 status conference to "'work with the defendants' to reach agreement on the scope of discovery for" Messrs. Droste and Jenkins (Mot. 2) misstates the record. Tera's counsel simply stated, "[W]e will work with the defendants to have them depose those witnesses." ECF 1061 at 8:10-12. Similarly, Defense counsel stated in turn, "We are happy to confer with any plaintiff and among the parties about any narrow question of supplementation of witness lists. And I trust we'll reach agreement on that, on the scope of any appropriate supplementation." *Id*. at 29:25-30:4. Beyond that, Defendants' position at the conference was that "as a general matter, *fact discovery is over*." *Id*. at 29:24-25 (emph. added).
[5] ECF 1196-4 at ¶ 97 (in section of report entitled, "Backend System Design" (¶¶94-97), as contrasted with section of report entitled "Application Interfaces" that encompasses TeraDirect (¶¶ 98-99 & n. 149)).
[6] ECF 1196-1 at 92:3.

More than four (4) months after Mr. Jacobson's opening report and Mr. Droste's deposition, Defendants suddenly demanded that Tera procure from Mr. Droste and produce to Defendants the source code, which has led to the current impasse. To be clear, Tera's counsel has asked Mr. Droste whether he would be willing to provide the source code and the personal laptop, but he has declined, invoking protections against such a request under German law.

**Defendants' Motion Is Time-Barred.** Despite Tera producing a trove of discovery about Mr. Droste well before the close of fact discovery, Defendants showed no interest in Mr. Droste at that time. Likewise, Defendants made no effort to obtain platform source code from Tera or the other two Platform Plaintiffs. Now, however, Defendants contend Mr. Droste possesses responsive source code that Defendants did not previously receive from Tera directly, for which Tera should somehow be sanctioned by precluding Mr. Droste as a potential witness. Defendants' gambit should be rejected. Within the fact discovery period, Defendants could have moved to compel its production (from any available Tera source) before discovery closed—but they did not. Defendants cannot seek to compel Tera to do so now. *See, e.g., Saray Dokum Ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics Inc.*, 335 F.R.D. 50, 53 (S.D.N.Y. 2020) ("The request to reopen discovery for the production of responses to the November 2018 requests is denied because, to the extent that [Saray] unsuccessfully requested the production of these documents from [MTS], the appropriate response would have been a motion to compel. . . . Any motion to compel was required to be filed before the discovery period closed—not more than 18 months later.") (quotations and citations omitted). Defendants cannot now bootstrap such a demand (*e.g.*, for the source code underlying Tera's front-end) to Mr. Droste's testimony. Defense counsel has admitted as much.[7] Moreover, Defendants have successfully made the very same argument earlier in this case to defeat Plaintiffs' February 2022 motion (ECF 985) asking to be allowed to serve three spoliation-related interrogatories, asserting, *inter alia*, Plaintiffs should have sought any discovery on the subject by the discovery deadline and "their failure to do so bars this motion." ECF 991 at 3; *see also* ECF 1007 (Order denying Plaintiffs' motion "[f]or substantially the reasons outlined in the JPMorgan Defendants' written submission (Dkt. No. 991))." Defendants cannot have it both ways.

**The TeraDirect Source Code Defendants Seek Is Irrelevant and Disproportional.** As demonstrated by Defendants' own disinterest and inaction throughout the case, the source code underlying TeraDirect is not actually relevant, and its production is certainly not proportional to the needs of the case. Defendants' only specific claim of relevance is that the Platform Plaintiffs' platform technology expert, Mr. Jacobson, stated in his opening expert report that ██████████████████████████████████████████████████████████████████████, Defendants are not permitted to seek additional fact discovery to rebut his opinion after fact discovery has closed. *See PacifiCorp v. Northwest Pipeline GP*, 2011 WL

---

[7] ECF 1061 at 30:23-25 (Defense counsel stating at January 10, 2024 status conference, "On the question of supplemental discovery, we agree with the statement that, as a general matter, fact discovery is over.").

13371602, at *2 (D. Oregon Nov. 9, 2011) (a party "may not . . . reopen fact discovery merely because an expert voiced an opinion which they wish to rebut").

**Defendants Have Failed to Carry Their Burden to Demonstrate Control.** "The party seeking the production bears the burden of demonstrating that the other party has control over the documents sought." *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 180 (S.D.N.Y. 2007). Defendants have not done so. *First*, Defendants completely mischaracterize Mr. Droste's alleged deposition testimony on cooperation with Tera. Mot. 3. As the testimony plainly shows ███████████████████████████████████████████████████████████████████████████.[8] *Second*, Defendants claim "Tera owns the TeraDirect software" and that STG had been "absorbed into plaintiff Tera Advanced Technologies," but ███████████████████████████████████████.[9] *Third*, Defendants offer an interpretation of ███████████████████████████████.[10]

In addition, as a non-party German citizen, Mr. Droste cannot be compelled to give Tera the source code for use in this action. In 1979, when Germany implemented the Hague Evidence Convention, it declared it "will not, in its territory, execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in common law countries." *See Valeo Schalter Und Sensoren GmbH v. NVIDIA Corp.*, 2025 WL 68136, at *4 (N.D. Cal. Jan. 10, 2025). Although Germany modified its position in 2022, it still commands that Letters of Request may be issued only when narrow criteria are met, including the requirement that the discovery must be sought from someone who is "a *party* to the [foreign] proceedings," *id*. (emph. added), which Mr. Droste is not, and the discovery material sought must have "immediate and clearly recognisable relevance," which the source code sought here does not, as shown above.[11]

**The Ultimate Relief Defendants Seek Is Unprecedented, Disproportional and Prejudicial.** To the extent the Court does not deny the Motion as time-barred and directs Tera to make further good faith efforts to procure the source code and laptop from Mr. Droste, Tera will of course do so. However, Defendants' request for relief goes much further, asking the Court to preclude Mr. Droste from being a witness in this case (assuming he would even further cooperate to do so) in the event he refuses Tera's outreach. Such a drastic remedy would be inappropriate for several reasons. *First*, Defendants do not cite any precedential authority for such an order (and we could not find any). *Second*, Tera already has provided substantial Droste documentary and deposition discovery, which is itself fulsome and would fulfill Tera's discovery obligations but for the two irrelevant source code items at issue. *Third*, Tera has acted reasonably and done everything it reasonably could to persuade Mr. Droste to cooperate. Tera should not be sanctioned based on Mr. Droste's uncooperative response that is beyond Tera's control.

---

[8] ECF 1196-1 at 86:22-90:17.
[9] *See* ECF 1196-3 at TERA_00893905 & TERA_00893934.
[10] *See* ECF 1198-6.
[11] Defendants have not demonstrated that *Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*, 176 F.R.D. 75 (W.D.N.Y. 1996) permits a U.S. litigant to circumvent *Valeo*. The *Alcan* Court based its ruling on a detailed analysis of the existing intercorporate relationship between the party and non-party corporations, which has not been shown for any of the Tera entities on the one hand, and Spring Trading Germany GmbH on the other hand. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177 (S.D.N.Y. 2006) is equally inapposite, as it does not concern German law at all and it ordered discovery from a foreign non-party over which it had personal jurisdiction, which is not shown here.

Respectfully submitted,

*/s/ Randall R. Rainer*
Randall R. Rainer
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Tel: (212) 382-3300

*Counsel for Plaintiffs Tera Group, Inc.;*
*Tera Advanced Technologies, LLC; and*
*TeraExchange, LLC*

cc: All Counsel of Record (via ECF)